RECEIVED
SDNY PRO SE OFFICE

2020 NOV -4  AM 11: 39

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CEDRIC REID

Write the full name of each plaintiff.

\_\_\_\_\_CV_____

(Include case number if one has been assigned)

-against-

THE CITY OF NEW YORK
MARTHA W. KING
CYRUS R. VANCE, Jr.
    see attached

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes    ☒ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 5/20/16

Names of Additional Defendants In All

THE CITY OF NEW YORK
MARTHA W. KING
CYRUS R. VANCE, Jr.
LISA FRANCHINI
SECURUS TECHNOLOGIES,
In Their Official and
Individual Capacity,

Defendants.

Page 1 attachment

## I.   LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☒ Violation of my federal constitutional rights

☐ Other: _____

## II.   PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

Cedric            Freddie            Reid
First Name          Middle Initial          Last Name

My First Name is being incorrectly spelled "Cedrick"

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

NYCDOC Book & Case No. 241 16 06623, then-Pre-trial Detainee.
NYSID# 04552074P

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Great Meadow Correctional Facility,   Current DIN 18A1936
Current Place of Detention

11739 State Rt. 22, P.O. Box 51
Institutional Address

Washington/Comstock        New York        12821
County, City                State              Zip Code

## III.   PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐ Pretrial detainee

☐ Civilly committed detainee

☐ Immigration detainee

☒ Convicted and sentenced prisoner

☐ Other: _____

## IV.   DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:  The City OF New York

First Name    Last Name              Shield #

Law Department

Current Job Title (or other identifying information)

100 Church Street

Current Work Address

New York, NY        New York       10007-2601

County, City        State          Zip Code

Defendant 2:  Martha W. King

First Name    Last Name              Shield #

former Executive Director, Board OF Corrections

Current Job Title (or other identifying information)

1 Centre Street, Room 2213

Current Work Address

New York, NY        New York       10007

County, City        State          Zip Code

Defendant 3:  Cyrus R. Vance, Jr.

First Name    Last Name              Shield #

Head District Attorney, N.Y. County of N.Y.C.

Current Job Title (or other identifying information)

One Hogan Place

Current Work Address

New York, NY        New York       10013

County, City        State          Zip Code

Defendant 4:  Lisa Franchini

First Name    Last Name              Shield #

Assistant District Attorney, N.Y. County of N.Y.C.

Current Job Title (or other identifying information)

One Hogan Place, 9th Floor

Current Work Address

New York, NY        New York       10013

County, City        State          Zip Code

additional page DEFENDANT INFORMATION

Defendant 5:        Securus Technologies
                    Law Department
                    100 Church Street
                    New York, NY   New York      10007-2601

Page 3 attachment

## V.   STATEMENT OF CLAIM

Place(s) of occurrence: New York City Department Of Correction

Date(s) of occurrence: October 31, 2017 and March 28, 2018

FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

   Plaintiff, Cedric Reid (hereinafter "Reid" or Plaintiff), contends that the below named Defendants violated Reid's Constitutional rights at: Municipal Liability, Due Process, Procedural Due Process, Equal Protection Clause Violation, Conspiracy, Conspiracy to Interfere with Civil Rights, Action For Neglect to Prevent, Failure to Intervene, Failure to Train or Supervise; and Unconstitutionally Vague statute.

   1. The City Of New York (the "City"), by way of the New York City Department Of Correction ("DOC"), Martha W. King ("King"), the Executive Director of the New York City Board Of Correction ("BOC") and SECURUS Technologies ("SEC. Tech"), a Private Entity, implemented an unconstitutional municipal policy regarding monitoring and recording of detainees outgoing non-privileged jail calls to detainees friends and Family, would violate the constitutional rights of pre-trial detainees, such as the Plaintiff, whom was detain-

ed pending trial due to Reid's inability to post bail, which was set at $75,000 at the Plaintiff's 03/13/2017 arraignment, regarding Indictment No. 0078/2017 of County of New York, Supreme Court - Criminal Term.

The caused policy :

> All calls, except for calls with your attorney or other privileged calls may be monitored and/or recorded by the Department for security purposes. (stated in relevant part)

See Exhibit A, DOC's INMATE HANDBOOK, Revised 12/07, page 42 TELEPHONE CALLS, at pg. 43 (bottom paragraph).

(a) The following Defendants, the City, King, and SEC. Tech., took part in "a practice so consistent and widespread" that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials -- that the intention of the City's regulation regarding monitoring and recording detain-

Page 4 a

ees (such as the Plaintiff) outgoing NON-privileged jail calls, to friends and family, is to create and collect information strictly for use by the prosecutor against a detainee (criminal defendant, such as Reid), in an up-coming criminal trial. In other words, the monitoring and recording of NON-privilege jail calls are being motivated by something other than "jail security and order."

## Due Process Violation

2. The Plaintiff charges Defendants, the City, King and Lisa Franchini ("**Franchini**"), Assistant District Attorney ("**ADA**"), of New York County, in the City of New York, whom was Plaintiff's criminal-prosecuting attorney, concerning Indictment No. 78/2017, under the conditions hereinabove described, violated the Plaintiff's Due Process rights under the 14th Amendment of the U.S. Constitution, where those restrictions were designed arbitrarily, only to serve some function irrelevant, or more burdensome than necessary to secure the detainees presence at trial, was constitutionally impermissible.

Page 4b

## Procedural Due Process

**3.** The following Defendants, i.e., the City, King and Franchini, violated the Plaintiff's Procedural Due Process, under the Fourteenth Amendment, where 40 RCNY § 1-10(i)(1), was not properly carried out, as no determination was ever made in accordance with 40 RCNY § 1-10(i)(1)(i), where no written notification was provided, yet the Plaintiff's outgoing non-privileged jail calls were released and produced at the Plaintiff's Criminal trial, as if the Plaintiff violated no set rules, whatsoever.

## Equal Protection Clause

**4.** The following Defendants, the City, King and Franchini, based on differential treatment, treated the Plaintiff (a protected class - member of arrested persons (pre-trial detainees) [or] class of one) differently than others **similarly situated** individuals without a rational basis for the difference in treatment, where **First**: the Plaintiff charges

Page 4c

that pre-trial prisoners at DOC are denied Equal Protection of the Laws in contrast to defendants in criminal cases that remain at liberty pending trial because they can afford to post bail. Poverty can also be considered in an Equal Protection Clause violation. Rather, pre-trial detainees are part of a class of arrested persons in whom the State's only legitimate interest is to insure presence at trial. Moreover, those criminal defendants at liberty pending trial are not having their outgoing/incoming telephone calls recorded and monitored, without a warrant, willie-nelly, unlike the Plaintiff a pre-trial detainee confined within DOC. **Second**: Sentenced prisoners outgoing non-privileged jail calls to friends and family, were not being collected (recorded and monitored) as evidence and handed over to the former prosecutor (following conviction). Except for the right to come and go as he pleases, a pre-trial detainee retains all of the rights of a bailee, and Plaintiff's rights may not be ignored because it is expedient or economical to do so. **Third**: the Plaintiff was obstructed from preparing a pro se defense, gathering witnesses, alibi, unlike sentenced prisoners.

Page 4 d

# Conspiracy

**5.** The following Defendants, i.e., the City and ADA Franchini, whom was the designated Criminal-prosecuting attorney in the Plaintiff's then-up-coming criminal trial, concerning New York County, Indictment # 78/2017, Supreme Court, New York State. Conspired sometime before October 21, 2017, there was an agreement (some sort of discussion) that the Plaintiff's non-privileged outgoing jail calls to family and friends, would be provided to ADA Franchini, under pseudo grounds of security NOT initially raised by DOC, but by Franchini herself, after DOC provided the monitored and recorded outgoing non-privileged jail calls, conversations.

   **(a).** At no time was it determined in accordance with 40 RCNY § 1-10(i)(1), that the Plaintiff's telephone calls, constituted a threat to the safety or security of the facility [or] an abuse of written telephone regulations, which was a strict prerequisite, that Defendants, the City, King, SEC.Tech. and Franchini all violated, or disregarded.

Page 4 e

(b). Defendant Franchini, on October 27, 2017, intro-
duced Plaintiff's monitored and recorded, outgoing
non-privileged jail calls, into evidence, at the Jury
Trial, of the following dates and times:

10/09/2016 (at 9:47 a.m.), 10/10/2016 (at 8:59 a.m.),
10/20/2016 (at 6:03 p.m.), 10/26/2016 (at 16:02 a.m.),
01/24/2017 (at 10:46 a.m.), 01/26/2017 (at 8:39 p.m.),
02/07/2017 (at 9:07 a.m.), 02/14/2017 (at 10:36 a.m
), 05/03/2017 (at 9:04 a.m.), 05/12/2017 (at 9:18
a.m.), 05/20/2017 (at 6:55 p.m.), 05/20/2017 (at
7:51 p.m.), 06/05/2017 (at 11:30 a.m.); and 06/
30/2017 (at 8:15 p.m.).

(c). Defendant Franchini, also on same Oct. 27th
moved to have the Jurors provided with transcripts
of the above Jail calls as a listening aid upon an
audio recording, plays aloud in open court, with
the Court's approval.

(d). The Plaintiff on Oct. 31st, was convicted and
found "guilty," which was highly attributed to

Page 4 f

the Jail calls, which were prematurely released, absent any security concerns raised by DOC, but released by DOC to Franchini, whom was the prosecuting attorney, ADA, in the Plaintiff's criminal trial.

(e). On March 28, 2018 the Plaintiff was sentenced to 15 years, plus 5 years PRS, all stemming from Ind. No. 78/2017.

Page 4 F-1 (addition)

## Conspiracy to Interfere with Civil Rights

**6.** The following Defendants violated 42 U.S.C. § 1985(3), where the City and King, conspired directly, to deprive a class of persons, known as "pre-trial detainees" (aka arrested persons), the Plaintiff, whom are poverty-stricken (poor persons) held in the custody of DOC, of the Equal Protection of the Laws, where out-going non-privileged Jail calls, to Plaintiff's friends and family, are being recorded and monitored by DOC and SEC. Tech., and harvested as evidence against the detainee(s) (such as the Plaintiff) in an up-coming criminal trial, as what was produced against the Plaintiff, whom was injured in his person and deprived of his rights (e.g., due process, equal protection clause) of a citizen of the United States, where the Jail calls was produced at the Plaintiff's criminal trial, where Reid was convicted and found guilty at his trial on October 31, 2017, where the Jail calls played a major role in Plaintiff's conviction. Sentenced (15 years) March 28, 2018, plus 5 years post release supervision.

Page 4g

# Action for Neglect to Prevent

**7.** Defendant, Cyrus R. Vance, Jr. ("Vance"), District Attorney ("DA"), of New York County, in the city of New York, violated 42 U.S.C. § 1986, where Vance was aware of the policy, custom, practice or usage, where DOC's 40 RCNY § 1-10(h), **see** also Ex. **A**, was being employed — to create and collect information from pre-trial detainees (aka arrested persons) (poverty-stricken, poor persons) such as the Plaintiff, from the monitoring and recording of out-going NON-privileged jail calls to friends & family, strictly for the use by prosecutor(s) whom were/are assigned to the same criminal defendant (such as the Plaintiff) whom is/was in the custody of DOC, in an up-coming criminal trial(s), Defendant Vance as the head DA, of New York County, knew or should have known of the wrongs conspired to be done and mentioned in 42 U.S.C. § 1985(3) are about to be committed and had power (authority) to prevent or aid, neglected to do so.

Page 4h

# <u>Failure to Intervene</u>

8. The Plaintiff under duress, was without an alternative, but to contact friends & family, by way of telephone (outgoing jail calls) NON-privileged, while in custody of DOC, to investigate/discover, by way of deception, what was the name of the inmate whom was using the Plaintiff's personal identification number ("PIN"), to make calls to the recipient of the accepted telephone call, using the Plaintiff's funds, on several occasions without the Plaintiff's consent.

(a). The following Defendants, i.e., the City, King and SEC.Tech., served as agents of the government when they refused to intervene into handling serious complaints regarding security, safety, as well as criminal acts of extortion, theft of personal information, i.e., the Plaintiff's PIN:

(i) The City failed to properly investigate the following complaints at the administrative level, made by the Plaintiff: Grievance Nos.: 31638; dated 05/01/2017, 38967; dtd.:05/26/2017, 45487 dtd. 07/05/2017.  This includes 3-1-1 Call Center,

Page 4i

complaints that were subsequently referred to DOC **(1)** SR# 1-1-1388141337; dtd.: 04/02/2017, **(2)** SR# 1-1-1427772748; dtd.: 07/01/2017 **(3)** SR# 1-1-1441308173; dtd.: 08/01/2017 **(4)** SR# 1-1-1442209191; dtd.: 08/03/2017, **(5)** SR# 1-1-1442702161; dtd.: 08/04/2017 **(6)** SR# 1-1-1455542785; dtd.: 09/01/2017 **(7)** SR# 1-1-1460134466; dtd.: 09/12/2017 **(8)** SR# 1-1-1462238487; dtd.: 09/17/2017 **(9)** SR# 1-1-1470961440; dtd.: 10/07/2017; and **(10)** SR# 1-1-1473423601; dtd.: 10/13/2017.

**(ii)** Defendant King, would also fail to investigate the following complaint before Reid's criminal trial, BOC Complaint #2017/1716 and after the criminal trial, BOC Complaint #2018/0711, dtd.: 04/13/2018. <u>See</u> Exhibit <u>B</u>.

**(iii)** Defendant SEC.Tech., received Plaintiff's May 19, 2017 complaint to SEC.Tech's Securus Correctional Billing Services (**"SCBS"**), requesting a Fraud Investigation and attached DOC's Inmate Phone Report of several unfamiliar telephone numbers of accepted calls. SEC.Tech. would respond and return the

Page 4 j

documents and suggest that it be referred to the current facility. <u>See</u> Exhibit <u>C</u>.

## <u>Failure to Train or Supervise</u>

9. The City's policymaker was deliberately indifferent, in its "**failure to train or supervise,**" those whom were responsible for the possession of pre-trial detainees recorded and monitored outgoing non-privileged Jail call-conversations with friends and family members of the Plaintiff, which was released by those employees designated, without it ever being determined that the Plaintiff violated safety or security concerns of the facility or an abuse of written telephone regulations within 40 RCNY § 1-10 (i)(1), (i), which resulted in unregulated release of the Plaintiff's communication rights, to the Plaintiff's up-coming trial prosecuting-attorney, i.e., ADA Franchini.

Page 4 K

# Unconstitutionally Vague

10. The City Policymaker's Construction of 40 RCNY § 1-10(h), which expressly authorizes it to "**listen to**" or "**Monitor**" inmate telephone conversations, as permitting it to record such conversations, is not unreasonable or irrational, but, what is unreasonable and/or irrational, is that -- "**legally sufficient notice**," is not being transmitted to the detainee-caller, that his or her non-privileged jail calls, can [or] will be sent to the prosecuting attorney, i.e., handling your criminal case, absent security concerns [or] upon his or her (prosecuting attorney) own initiative, as unconstitutionally vague.

Page 4L

# Clarifications

I. The Plaintiff stemming from a parole violation occurring on September 16, 2016, resulting in Warrant # 754908, in the county of the Bronx, Bronx II Parole Division, by Parole Officer ("PO") Ronnesia Campbell ("Campbell"), Shield No. 2293.

II. The Plaintiff was escorted by a team of P.Os' to the Bronx Criminal Court building, to be processed as a parole violator, whom was under post release supervision ("PRS") following his release from prison on 02/28/2014 then-until 03/20/2019 (maximum expiration date).

III. The Plaintiff while still at the Bronx Criminal Court building, was served with his Notice of Violation, and requested a scheduled Preliminary Hearing for 09/22/2016 to be held at Rikers Island Judicial Center ("RIJC") and a follow up Final Hearing (if then-necessary) for 10/04/2016 at 9:30 a.m.,.

Page 4 M

IV. The Plaintiff was transported by DOC to one of it's Correctional Facilities in the Bronx County, named Vernon C. Bain Center ("VCBC") (aka "The Boat"), where the Plaintiff was first issued Book & Case No. ("B&C#") 241-16-06623, <u>see</u> Exhibit D. (Property Receipt A № 1510047)

V. The Plaintiff pled "Not guilty," and was subsequently represented by the Legal Aid Society ("LAS") Parole Revocation Unit, where on 09/22/2016 Plaintiff's preliminary hearing commenced, probable cause was found.

VI. The Plaintiff's Final Hearing was scheduled for 10/04/2016 commencement, but was rescheduled for 10/05/2016.

VII. The Plaintiff's Final hearing was adjourned several times without a decision, for the following dates: 11/08/2016, 11/18/2016, 12/13/2016, 01/06/2017 and again 01/31/2017. No decision was rendered in regards to the final hearing.

Page 4 N

VIII. The Plaintiff was a pre-trial detainee from September 16, 2016 until October 31, 2017 under the Custody of DOC.

IX. On March 13, 2017 the Plaintiff was arraigned in New York County, Supreme Court - Criminal Term, Case # (Indictment) 0078-2017, under six (6) Criminal Charges, Warrant Vacated, bail set at $75,000.

X. On October 23, 2017, the Plaintiff's Dunnaway, Mapp and Wade Hearing began regarding the above Indictment No.,.

XI. On October 24, 2017, there was a Void Dire regarding the above Indictment No.,.

XII. On October 25-27, 30, 31, 2017 the Plaintiff's trial began and ended.

XIII. On October 31, 2017 the Plaintiff was found guilty by his peers at a trial at 111 Supreme Court, Part 66, before the Honorable Judge Ruth Pickholz, of New York County, Supreme Court.

Page 4 a.

XIV. On March 28, 2018 the Plaintiff was sentenced to 15 years plus 5 years PRS.

XV. The Plaintiff remained at DOC up until May 14, 2018, where he was housed along with other pre-trial detainees, whom were not sentenced as the Plaintiff was.

Page 4 p

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

On March 28, 2018, the Plaintiff was sentenced to 15 years, plus 5 years PRS, after a trial finding the Plaintiff (then-criminal defendant) guilty on October 31, 2017, where NON-privileged jail calls, were wrongfully used against the Plaintiff.

## VI.   RELIEF

State briefly what money damages or other relief you want the court to order.

Plaintiff seeks $375,000.00 against the City
Plaintiff seeks $375,000.00 against King
Plaintiff seeks $125,000.00 against Vance
Plaintiff seeks $500,000.00 against Franchini
Plaintiff seeks $50,000.00 against SEC. Tech.

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| October 26, 2020 | Cedric Reid |
|---|---|
| Dated | Plaintiff's Signature |

| Cedric | F | Reid |
|---|---|---|
| First Name | Middle Initial | Last Name |

11739 State Rt. 22, P.O. Box 51
Prison Address

| Washington, Comstock | New York | 12821 |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: Oct. 27, 2020

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 27 day of October , 20 20.

| | |
|---|---|
| Signature of Plaintiff | Cedric Reid |
| Inmate Number | 18 A 1936 |
| Institution Address | 11739 State Route 22 |
| | P.O. Box 51 |
| | Comstock, New York |
| | 12821 - 0051 |

Note:   All plaintiffs named in the caption of the complaint must date and sign the complaint and provide their inmate numbers and addresses.

I declare under penalty of perjury that on this 27 day of October , 20 20 I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff:   Cedric Reid

Exhibit
A

# NEW YORK CITY
# DEPARTMENT OF CORRECTION



# INMATE HANDBOOK

Copies of New York City Board of Correction & State Commission
Minimum Standards are available in all Facility Law Libraries.

**REVISED 12/07**

# INTRODUCTION

This Handbook will inform you about many of the programs and services available to you. The rules that you must follow will be published in an Inmate Rulebook, under separate cover.

When you come into a Department of Correction jail (DOC, Department), you will be given a DOC ID number, called a "book and case" number. You will also get an ID card, which you must have with you at all times, and have clipped to your clothes so that it can be easily seen any time you leave your housing area.

You have the right to be safe in jail. If you are the victim of any threats or actual violence, or you feel unsafe, or you think you may hurt yourself, the DOC has ways to help you. (Read the section in this Handbook on "Safety & Victims' Services" for more information.)

Although safety and security always come first in jail, you should also know that the DOC offers many valuable programs and services to you while you are incarcerated, including health, educational, vocational, work, and counseling programs. Remember that not every program is available to every inmate and may not be offered in every facility. This introduction mentions some of those programs and services; the Handbook describes them in more detail; you can also learn more about them in the Programs Office of your facility. To go to the Programs Office, ask your Housing area Officer for an interview slip, which you should fill out and return to him

**The programs and services that you can use while you are in a Department jail, include:**

**Medical/Mental Health Services.**

You can see a doctor or physician's assistant, a mental health professional, or a dentist by signing up for sick call. In an emergency, ask your housing officer to help you get to a doctor immediately. If you are HIV positive or want to take a voluntary HIV test, your facility has an HIV counselor who can help you arrange for a test or get medications. (For more information, read the **"Health Services"** section of this Handbook.)

**Education**

- If you are under 21 years old, you may go to school; in fact, if you are 16,17 or 18 years old, and do not have a high school diploma or a GED, you must go to school while you are in jail. Some facilities have adult education programs for students over 21 years old. (Read the **"Educational Services"** section of this Handbook to learn more.)

**Family Events**

- If there is an important event in your family (like a death or very serious illness), if you wish to get married, or if you want to visit with your children in foster care, you may contact the Counselor in your facility. (See the **"Family Events"** section of this Handbook; also see the **"Counseling Services"** section to learn how the counselors can help you.)

2

**Religious Services**

- Chaplains from the Jewish, Muslim, Catholic, and Protestant faith groups work for the Department in each of the jails. Each facility has regular services for all four faiths. If your faith is not represented, contact your facility chaplain and he or she will make the necessary arrangements. (Read the "**Religious Rights**" section of this Handbook for more information.)

**Law Libraries**

- You can do legal research while you are in jail. Every facility has a Law Library that you are entitled to use for two hours a day, five days a week, Tuesday through Saturday. The Law Library also has copies of the rules and court orders that describe your rights in jail, including the New York City Board of Correction Minimum Standards and the New York State Commission on Correction Minimum Standards. (Details about how to get to the Law Library, including the hours when it is available, are in the "**Law Library**" section of this Handbook.)

**Grievance Process**

- If you have an issue that cannot be resolved after you have spoken with your Housing Officer, Counselor, Legal or Grievance Coordinator, you may present a complaint in writing to the Grievance Coordinator in your facility who will guide you through the steps to a formal resolution. You may submit a complaint about things that directly affect you such as Department policies, how the policies are carried out or someone else's behavior, including an officer. (See the **Grievance Procedures** section of this Handbook.)

**Discharge Planning**

- Finally, the Department wants to help you to avoid coming back to jail and help make it easier for you to transition back to your community. This help is called discharge planning. You should have received a copy of the *Connections* guide when you were first admitted to the Department. This resource guide lists programs and services that are available to you in New York City and also has a section to help you obtain a job after your release.

- If you did not receive *Connections* at intake, ask your Correctional Counselor for a copy. All Law Libraries also have copies of *"The Center for Community Problem Solving Reentry* Guide" available for your use If you are a sentenced inmate who is housed in either the Rose M. Singer Center or the Eric M. Taylor Center, your facility offers discharge planning services that focus on helping you get a job and housing, and to stay off drugs and alcohol. (See the "**Discharge Planning**" section of this handbook to find out more.)

We hope that this Handbook will help you to take advantage of the Department's programs and services and avoid acting in ways that threaten your own safety, the safety of staff or other inmates. If you have a question about Department programs or rules, ask any uniformed staff member.

**Frequently Asked Questions:**

Here are some questions that inmates often ask, and where to find the answers in this handbook.

1. How can my family or friends put money into my account? (11)
2. How often can I use the phone? (42)
3. What can I do if I don't feel safe? (38)
4. What clothes am I allowed to wear? What can't I wear? (30)
5. What items am I allowed to have with me? (30)
6. What kind of packages and mail am I allowed to receive? (31)
7. Does anyone read my mail before I open it? (25)
8. What help can I get and whom do I contact if I have a disability (14)
9. What do I do if I have a disability that prevents me from getting into the Shower? (14)
10. Is there a program available to help me prepare for life after jail? (14)
11. How many visits can I have in a week? (44)
12. Am I locked into my cell the whole day? (25)
13. Can I work on my case while I'm in jail? (23)
14. Is smoking allowed in jail? (42)
15. What is considered contraband? (See Inmate Rule Book)
16. What happens if I get caught with contraband? (See Inmate Rule Book)
17. What happens if I get caught with a weapon? (17)
18. Why does someone get written up for an infraction (violating a Department rule)? (See Inmate Rule Book)
19. What happens if I receive an infraction? (See Inmate Rule Book)
20. Where and how often can I buy food or deodorant or other items? (11)
21. Is it possible to receive a special diet? (20)
22. What should I do if I feel sick? (21)
23. How often is outside recreation? (36)
24. Can my children visit me in jail? Can my children who are in Foster Care visit me while I'm in jail? (19)
25. How do I apply to get married while in jail? (40)
26. Can I attend a funeral of a family member or visit a very ill relative? (13)
27. Whom do I talk to if I have a complaint? (20)
28. What does my security classification mean? How does someone get classified as a "High Security" inmate?  Is there any way to change this? (22)
29. After I get out, how do I pick up my money and property? (35)
30. Can I attend regular worship services while in jail? (36)
31. Can I work on getting my G.E.D. while I'm in jail? (16)
32. How do I apply for release before I complete my sentence? (13)
33. How can I vote? (45)
34. How do I sign up to work while I'm in jail? (15)

4

## TABLE OF CONTENTS

Page Number

ADDRESSES AND TELEPHONE NUMBERS                              6
ATTORNEY VISITS                                             7
BAIL PAYMENT                                                7-8
CENTRALLY MONITORED CASES
8
CLOSE CUSTODY HOUSING                                      9-11
COMMISSARY AND ACCOUNT DEPOSIT SERVICES                    11-12
CONDITIONAL RELEASE                                        13
COUNSELING SERVICES                                        13-14
DISABILITY RIGHTS                                          14
DISCHARGE PLANNING                                         15-16
EDUCATIONAL SERVICES                                       16
EMPLOYMENT WHILE INCARCERATED                              16
ENHANCED RESTRAINT AND RED ID STATUS                       17-19
FAMILY EVENTS                                              19-20
FOOD SERVICES -- SPECIAL DIETS                             20
GRIEVANCE PROCEDURE                                        20-21
HEALTH SERVICES                                            21-22
HIGH SECURITY CATEGORIES                                   22-3
LAW LIBRARY:  LEGAL REFERENCE MATERIAL AND SUPPLIES        23-24
LOCK-IN AND LOCKOUT                                        25
MAIL (CORRESPONDENCE)                                      25
MEDIA ACCESS                                               27
MENTAL HEALTH DISCHARGE PLANNING                           26-27
MEDIA ACCESS                                               27
NON-DISCRIMINATORY TREATMENT                               27
NURSERY PROGRAM                                            28
PACKAGES                                                   28-30
PERMISSIBLE ITEMS                                          30-34
PERSONAL HYGIENE                                           34
PROGRAM SERVICES                                           34-35
PROPERTY                                                   35
RADIO AND TELEVISION USE                                   36
RECREATION                                                 36
RELIGIOUS RIGHTS                                           36-37
SAFETY & VICTIMS' SERVICES                                 38-40
SANITATION                                                 40
SIGNIFICANT FAMILY EVENTS                                  40-41
SMOKING BAN/ADDICTION HELP                                 42
SUICIDE PREVENTION                                         42
TELEPHONE CALLS                                            42-43
VISITS                                                     44-45
VOTING                                                     45

## ADDRESSES AND TELEPHONE NUMBERS

Listed below are addresses and telephone numbers, Voice and TDD #s for some agencies and persons that you may wish to contact at some point during your incarceration.

- Administration for Children's Services (ACS) Office of Advocacy's Parents' and Children's Rights Helpline (collect), 212-619-1309
- Americans with Disabilities Act Disability Rights Coordinator, 60 Hudson Street, New York, N.Y. 10013, (212) 266-1039
- Legal Aid Society Prisoners' Rights Project, 199 Waters Street, NY, NY 10038, (212) 577-3530
- New York City Board of Correction, 51 Chambers Street, Rm. 923 NY, NY 10007, (212) 788-7840
- New York City Department of Correction Intelligence Unit hotline (718) 728-4652
- New York City Department of Investigations (Inspector General) (212) 266-1900
- New York State Commission on Correction, 163 West 125th Street, 12th Floor, New York, NY 10027, (518) 485 2346
- Office of Compliance Consultants, 14-14 Hazen Street, E. Elmhurst, NY 11370, (718) 728-6505
-

**Information Hotline:**

Within the Housing areas, the Program Services areas, the Visit areas, and the Intake areas you will find posters advertising the telephone numbers to the "Information Hotline" assigned to each facility.  You can also ask any staff member to provide you with the number upon request.

The "Information Hotline" is a telephone line that enables you, staff, visitors and the general public to provide information about illicit activities, potential crimes **and/or any other concerns** that might occur within or outside of the facilities that would have a negative impact **on you** or the good order and security of the facility.  The information is kept confidential and is only disclosed on a needed basis.

Note: All telephones designated for you in your housing area have the capability of reaching the Information Hotline without a telephone charge to your money account.

The telephone numbers in each facility are as follows:

| | | | |
|---|---|---|---|
| AMKC | 718-204-0835 | RNDC | 718-204-0362 |
| EMTC | 718-204-0341 | RMSC | 718-204-0734 |
| GMDC | 718-204-0243 | VCBC | 718-589-4463 |
| GRVC | 718-204-0263 | WF | 71 8-204-0472 |
| MDC | 212-964-5936 | | |
| NIC | 718-204-0281 | | |
| OBCC | 718-204-0396 | | |

## ATTORNEY VISITS

- Your attorney, a paralegal or social worker who works with your attorney, may visit you 7 days a week from 8 am to 8 pm in the jail where you are housed. Your attorney may also ask that you be produced in a courthouse for an attorney visit, or request a video-teleconference meeting with you. A video teleconference allows you to see and talk to your attorney on a television screen in a jail while your attorney is in a courthouse. When you need to see your attorney, you must speak with him and request that he visit you. These visits do not count against the number of visits you are allowed.

*Note:* Attorney visits will not be conducted during the afternoon count, which occurs at 3 pm.

## BAIL PAYMENT

### How To Pay Bail

Bail will be accepted in any of the following forms, in the exact amount of the bail only:
- Cashier's/Tellers' check, in any amount not exceeding the bail figure;
- Bank money order, up to $1,000 per money order;
- Federal Express money order, up to $1,000 per money order;
- U.S. Postal money order, up to $1,000 per money order;
- Travelers Express Company money order up to $1,000 per money order;
- Western Union money order, up to $1,000 per money order.
- Checks issued by a DOC facility (e.g. from your account)
- Checks issued by NYC Department of Finance for a refund of bail
- Checks issued by the Veteran's Administration, U.S. Government or NYS Government up to $1,000 per check

If you or someone else is paying bail at any Borough facility, make checks or money orders payable to that facility, regardless of where you are housed. If you are housed on Rikers Island and you or someone else is paying bail on Rikers Island, then all checks must be made out to RICC (Rikers Island Central Cashier). There is no need to spell it out; RICC is acceptable. Checks or money orders made out to the Department of Correction will **not** be accepted. The person posting bail must present personal identification and must provide the New York State Identification (NYSID) number of the person to be bailed.

You or someone on your behalf may pay your bail with any needed number of money orders or cashier's/teller's checks as long as the total value of all money orders and acceptable checks and any cash totals the exact amount of your bail, and no single form of payment is

7

for more than $1,000.  The Department does NOT give change in bail transactions. (See section on **Commissary and Account Deposit Services.)**

**Where To Pay Bail**

Bail payments can be made at the Rikers Island Central Cashier's Office and any Borough Facility, regardless of where the inmate is housed. Only the facility named on the check/money order can accept payments for bail.  Checks or money orders made out to the Department of Correction or to a jail other than the one at which they are presented will **not** be accepted.  If the person seeking to pay bail chooses to go to Rikers Island, the payer must go to the Rikers Island Central Cashier window in the Rikers Island Visit Building that can be accessed only by the Queens Transit Q101R-Rikers Island bus.

**The Department will NOT accept personal checks, whether certified or not, for any amount, will not accept money orders for any amount over $1,000.**

*Note:* The information provided here is intended for general guidance and does not cover all the rules, regulations, laws, ordinances and standards relating to posting bail for an inmate. Please ask your attorney if you have questions that are not answered here.

## CENTRALLY MONITORED CASES

If the Department believes that you should be watched carefully because of how the Department expects that you will act, or how others will act towards you, the Department may identify you as a Centrally Monitored Case (CMC) and closely watch your movements both in the jail and during transportation outside the jail. If you are identified as a CMC, you may also be placed in additional restraints when you move from one place to another inside or outside the jail.

8

When you are first identified as a CMC, the Department will inform you of that decision in writing within 72 hours. You will receive a "Notification of CMC Determination" form that will describe why you were identified as a CMC and what evidence was used to make that decision. The form will also explain how you can appeal that decision if you choose.

Your case will be automatically reviewed every 4 weeks.

You may appeal your CMC status, in writing at any time either to the Commissioner or to the Assistant Chief of Special Operations. There is no form for this purpose. You will still be a CMC while you are appealing. You will receive a written decision within 15 days after your written appeal is received, not counting weekends and holidays. The decision will be on a "Notification of Appeal Review Decision" form.

## CLOSE CUSTODY/PROTECTIVE CUSTODY HOUSING

The Department maintains Close Custody Housing Units to house inmates for their own protection, or for the safety and security of other inmates and/or staff.

Within 2 business days of your placement in close custody the Chief of Facility Operations will determine whether continued Close Custody housing is necessary, or whether there is other less restrictive housing (such as administrative escort, general population escort or general population) that meets your safety needs and the safety and security needs of other inmates and/or staff. **(See Section on "Safety and Victim's Services.)** If the Chief determines that close custody is necessary you will be interviewed by a Captain. You must tell the Captain whether you agree or not to that housing. If you do agree, you must sign a waiver (Form 6006B). By signing this form, you waive your right to a due process hearing.

### Due Process for Involuntary Placement in Close Custody Housing

If you do not agree to continued placement in close custody, staff will provide you with a written notice of the placement. This written notice will describe:
- The reasons for the placement
- The evidence that was used. The Department is not required to provide you with the source of the evidence.
- Your right to a hearing before an impartial Captain; and
- What your rights are at the hearing.

You are entitled to the following rights at the hearing. The right to:

- Appear personally
- Be informed of the evidence that resulted in the designation, and to review any evidence submitted by the Department in support of its decision to place you in Close Custody Housing.

- Make statements.   You will be informed that if you are subject to a subsequent criminal prosecution, the statements that are made by you may be used against you in a subsequent criminal trial; and that you may remain silent, and your silence will not be used against you.
- Call both inmate and staff witnesses – within the discretion of the Adjudication Captain
- Present evidence; and
- A written decision including the reasons for the decision.

If you do not understand the process, the Captain may appoint a "Hearing Facilitator," who is a civilian staff member in the Department, to assist you.

If you do not understand English, an interpreter will be provided for you.

The hearing must be held no sooner than twenty-four (24) hours after you receive the written notice of Close Custody Security Designation, and no later than three (3) business days after you receive the written notice of the Close Custody designation.   You may choose to waive the notice periods, but it may be extended for the following reasons: When you:

- have a court appearance
- are hospitalized or transferred out of the facility for a hospital or clinic appointment
- leave the facility for an attorney interview
- are transferred to another facility; or
- are not available due to your absence from the facility for other purposes.

You will receive copies of the written notice and the Adjudication Captain will make certain that you understand what it says.   If there is documentary evidence that will be considered at the hearing, but was not in the written notice, you must be given the opportunity to review that evidence before or at the beginning of the hearing.   Confidential information to protect someone's personal safety or facility security may be left out.

### Twenty-eight (28) day Review of Placement in Close Custody Housing

While in Close Custody housing, your Close Custody status will be reviewed at least every twenty-eight (28) days.   Five (5) business days before each review you will receive a "28-day Close Custody Status Review Form."   The "28-day Review" determination is made by the Chief of Facility Operations.   If you are voluntarily placed, you must indicate on the form whether or not you want to remain.   If you are involuntarily placed, you may provide information to support your transfer back to regular housing.   You may choose not to complete the form and the Housing Area Officer will note that on the form.   Upon completion of the form, give it to the Housing Officer who will return it to the Deputy Warden.

If it is decided that you should no longer remain in Close Custody Housing, you will be transferred, and given a written copy of the decision from the Chief's office.   This decision is final.

10

If it is decided that you should stay in Close Custody Housing you are entitled to a written copy of the decision within one (1) business day from the time the decision is rendered.

If you are involuntarily placed in Close Custody and this placement in Close Custody housing will be continued based on new evidence, you will be provided with the new evidence and allowed a due process hearing. You will be given a new form "Notice of New Evidence/Right to Due Process Hearing" to complete. Return the completed form to your Housing Officer for submission to the Adjudication Captain.

The Adjudication Captain will ask you if you wish to waive your hearing. If you wish to do so then you will sign the form stating that. If you do not wish to waive the hearing, the Adjudication Captain will conduct the hearing, document the recommendations and forward it to the appropriate staff for a final decision.

If you voluntarily entered Close Custody Housing you may request to be removed by submitting an interview slip to the Deputy Warden for Security.

## COMMISSARY AND ACCOUNT DEPOSIT SERVICES

Your jail has a store called a "commissary", where you may buy things like soap, toothpaste, deodorant, food, drinks, and stationery. You can see one sample of each product that you can buy, displayed in the commissary area. A commissary schedule is posted in your housing area, and a list of available products is posted in the commissary. If you are scheduled for court on your commissary day, you will be eligible for "recall," that is: another time to go to the Commissary when your facility can arrange for you to go. Look at the posted schedule to find out the day and time your housing area goes to commissary.

If you are assigned to a special housing area, you may not be allowed to go to the commissary yourself. In that case you will fill out a commissary form in your housing area, and the products you order will be sent to your housing area.

In order to pay for these items, as well as for telephone calls, you will have a commissary account. Your account is kept under your book and case number in the cashier's office at your facility. If you are transferred to another facility, your money will follow you to your new location. If your money is not in your account after your transfer, contact a member of the Counseling staff to follow up.

Your friends and family may deposit money into your commissary account, either when they come to visit or through the mail. A visitor may deposit cash to your account when they visit you and those funds will be available for your use the next day. Money sent to you through the mail must be a money order, mailed to **(YOUR NAME)**. All types of money orders are accepted in all denominations. Upon delivery, your mail will be opened and will be inspected in your presence. The mail officer will give you a receipt as proof that you received money and it was deposited into your account. Money sent as a money order will be available 5 business days after its receipt.

11

**While you are incarcerated, you must pay for some services such as haircuts and long distance telephone calls.  If at the time of service you do not have any funds in your commissary account, and you are discharged from the Department, if you are ever re-incarcerated, with funds now in your account, the funds you owed the department will be taken from your new commissary account.**

## DEPOSIT SERVICES

**Background**

The DOC is making arrangements with several money transfer agents to accept deposits for inmate accounts. Instead of going to one of the cashier offices, friends and family members can use these services. So far, there are three providers: JPay, Western Union and ICSolutions. Others will be added.

**Methods of Deposit**

Depending on the provider, deposits can be made online or by phone, at a walk-in location or by using a kiosk at one of the DOC cashier offices. Depositors must be able to provide the inmate's first and last name, and BAC ( Book and  Case number) .

|  | *JPay* | *Western Union* | **ICSolutions** |
|---|---|---|---|
| Online deposit:  credit or debit card | Available | Available | Available |
| Deposit by phone:  credit or debit card | Available | Available | Available |
| Walk-in locations: credit or debit card, cash | Available | Available | Available |
| Cashier office kiosk:  cash only | Available | TBD | Available* |

* IC Solutions kiosks accept credit cards

*Fees*

There are fees for all deposit services. They vary from one provider to another.

**Contact Information**

The DOC does not recommend any one provider over another. There is a link from the DOC website to each of the providers' websites; for callers who have online access you can simply refer them there for further information. If the caller requests a specific provider, here is the contact information.

|  | *JPay* | *Western Union* | *IC Solutions* |
|---|---|---|---|
| Phone number | (800) 574-JPAY | (800) 634-3422 | (888) 888-8413 |
| Website address | www.jpay.com | www.westernunion.com | www.icsdeposits.com |

## CONDITIONAL RELEASE

If you are serving one, or more than one definite sentence of imprisonment with a term or an aggregate term in excess of ninety (90) days you may, upon request and submission of the Local Conditional Release (LCR) application, be considered for release by the Board of Parole. Applications will only be considered if you have been in local custody for at least thirty (30) days. In order to be conditionally released from the local correctional facility, you must serve at least sixty (60) days of the definite term.

You must fill out a written application for Local Conditional Release and submit the completed application to the New York State Division of Parole. An application can be obtained in the Law Library at the correctional facility where you are housed. You must read the application very carefully and make sure that you fully understand the conditions governing your release and your obligations under supervision after release.

You must mail your application to:

NYS Division of Parole
845 Central Avenue – East 2
Albany, NY 12206
Phone: (518) 457-7566
Fax: (518) 485-8950

If it is decided that you are eligible for consideration, an officer from the Division of Parole will interview you at your facility. You must be prepared to fully participate in the interview with the officer; you must provide answers to questions from the officer; and you must also provide court documents, probation records, and criminal history information upon request. If the officer approves your LCR application, the application will be submitted for consideration to the New York State Board of Parole. You will be provided with a copy of the Parole Board's decision.

## COUNSELING SERVICES

Department of Correction Counselors can provide you with social service assistance, which includes help maintaining connections with your family, getting information about your Social Security or SSI benefits upon discharge, and providing counseling during times of crisis. Counselors can help you visit at the hospital with family members who are critically ill and expected to die, or attend the wake or funeral of family members.

If you or your family member is deaf, or has a speech impairment, is visually impaired or blind, or has a mobility impairment and must use a cane, crutches, walker or wheelchair, Counselors can help you access the Department of Correction's programs, services and facilities and provide assistance when you contact your family. (See section on **Disability Rights.**)

Counselors can also help your children who are in foster care visit with you, and provide you with referrals to programs. They can help you get to child custody court dates. (See the section on **Family Events**) They can provide verification of incarceration letters you can

## DISCHARGE PLANNING

When you were admitted to the Department of Correction, you were asked questions about your housing, work and family situation, and possible addiction problems. Your answers to these questions will help the Department help you plan for your release and address some of the issues that brought you into jail, and possibly help to keep you from coming back to jail. Your answers will also help the Department to understand what programs/services are most important, and attempt to insure that they are made as available as possible. .

There are two resource guidebooks with listings of agencies that provide information to help people returning from jail to their communities available in DOC facilities. One book, *Connections and the Job Search,* should have been given to you upon your admission. If you did not receive a copy, ask your Counselor for one which you may take with you when you are either discharged or transferred. The other book, *Center for Community Problem Solving Reentry Guide,* can be found in the Law Library or the Counselor's office where you can borrow it and find the information that you need. You should start planning now for your release, and use your time in jail to arrange for whatever help you will need when you leave.

The Rikers Island Discharge Enhancement (RIDE) program helps city-sentenced inmates make connections to employment, housing, and substance abuse treatment opportunities in the community before discharge. If you are sentenced and working in a facility other than EMTC or RMSC, ask the Housing Officer to call the RIDE program to make a referral for you.

If you are housed at **EMTC or RMSC,** information is posted throughout the facility with information on how to contact the RIDE program. RIDE program staff also recruit in the facility on a routine basis, or you can ask your housing area officer or any other staff member to contact the program for you. Also, while at EMTC you can use the telephone helpline in each housing area to contact the RIDE Program staff.

In any facility where you are housed, there is information on various types of benefits that you may be eligible for, and for which you can apply. This information can be found in the Law Library and the Programs area in your facility located in pockets of a large "Benefits Board" erected on the wall. Take the form that you need and follow the instructions, or ask your counselor for help so that you may begin the process to get help when you leave.

If you are in the RIDE program, you can get help obtaining identification documents that you will need to get a job, drug treatment, housing and other services. Your family may drop off documents you may have at home (e.g., birth certificate and/or social security card) in any of the "Drop Boxes" in the facility visit area, or they can fax them to RIDE/EMTC (718) 546-5931 or (718) 546-7644 at RIDE/RMSC with your name, book and case number, and date of birth noted.

Whatever ID documents you have at Intake will be carefully noted on your Property Receipt form so that they can be used in your discharge planning. If you do not have ID, you need to begin working with the RIDE program to get it immediately so you can use it to get the services you need when you are released. You must have ID to get most jobs or services, even if you have signed up for a program to go to after you are discharged. If you have been released and could not get discharge planning help in jail, you may still get assistance by calling 311 and saying "Jail Release Services." You will be asked some questions to allow the operator to refer you to the appropriate service.

The Fortune Society which is located in the Perry Building, - which is the last building you will enter as you leave Rikers Island if you are being bailed out, - offers program services to

anyone who is discharged. Services include career development, AIDS/HIV assistance, treatment for substance abuse issues, education, counseling and more. Before you leave Rikers Island, stop in their Office where you can receive information about these services and also can be transported directly to their site in the community.

Another benefit of involving yourself in programs that can assist you with discharge planning if you are a city-sentenced inmate is helping you to keep in touch with your family and/or to help you to become reunited with family upon discharge. Being in the RIDE program, you can be part of family day social events on non-visit days where you can be with your family and talk about plans for life after jail. Family support is very important to help you do well after jail; participating in these activities can help you keep in touch and show family members how you are using your time wisely by becoming involved in programs. Sign up in your facility's program office to join the RIDE program.

## EDUCATIONAL SERVICES

If you are 16, 17 or 18 years old, and do not have a high school diploma or a GED, you **must** attend school while in a DOC facility.

If you are 18 or older and, on September 1st of the applicable school year, you were under 21 (or under 22 if you are entitled to receive special education), and you do not have a high school diploma or a GED, and you have been in jail or expect to be in jail for 10 or more calendar days, you are entitled to educational services and you may attend a school at a facility on Rikers Island.

If you are between 18 and 21 there is a process for you to be offered these services: If you want to go to school, fill out the "Request for Educational Services Form" which you should get at intake, or will find at the "A" post in each housing area, Counseling (Social Services,) Law Library or Chaplains' areas, and put it in the box in the housing area marked "Grievance/Education". The correction officer in the Programs area will make sure that the form is delivered to the principal of the Department of Education's school in your facility.

The Department of Education (DOE) provides educational services that can lead to a high school diploma, a GED, or a Regents diploma. DOE also provides vocational training, counseling and discharge planning. Tell your housing area officer or Counselor, the Captain for Programs, or the Deputy Warden for Programs in your jail that you want to go to school, and they will get you appropriate forms and information on what is available. The forms are also available in your housing area and your facility's law library, and program areas.

## EMPLOYMENT WHILE INCARCERATED

If you are a sentenced inmate, you are required to work. Detainees who desire to work may be considered for employment. Job postings and application forms will be placed in your housing areas, libraries, social service offices, grievance offices, and where you receive orientation. You must complete "Section One" of the "Inmate Job Application" and give the completed form to your Housing area officer if you are interested I in working. Your application will be reviewed by the appropriate staff and if you are approved for assignment,

you will receive a copy of the approved application form, and called for work. You may not be eligible for a particular job assignment. Staff will direct you to apply for another job. You will be paid according to the wage for your particular assignment, and the funds will be applied to your commissary account. You will be reassigned to different tasks on a rotating basis. If for any reason such as safety or security concerns it is determined that you are not suited to a particular assignment, you will be reassigned.

## ENHANCED RESTRAINT AND/OR RED ID STATUS

**Red ID Status:** If you are caught with a weapon or you use a weapon while you are in jail, or you used a weapon and injured someone in a Department jail within the past five years, you will be given a special red ID card and put in extra restraints when you travel outside the jail, for example, when you go to court. Extra restraints can include side or rear cuffs, mitts, a waist chain, and leg irons.

There are three levels of Red ID status:

- Code 3 – Caught as a weapon carrier during current incarceration;
- Code 2 – Used a weapon to injure other(s) within the past five (5) years; and
- Code 1 – Used a weapon to injure others two (2) or more times within the past five (5) years.

**Enhanced Restraint Status:** If you:
- assault or attack staff or another inmate,
- are violent in a way that does substantial property damage and that places any person at risk of harm, or
- exhibit violent behavior and try to assault or attack staff or another inmate, placing that person at imminent risk of harm, either during this incarceration or when you were in a Department jail in the past;

You will be put in enhanced restraints when you go from one place to another in your jail and outside the jail.

The initial decision to place you in Red ID and/or Enhanced Restraint Status must be made by a supervising officer.

**Notice:** You must be given a written notice when you are first placed in either Red ID or Enhanced Restraint status. The notice should say very clearly why you were placed in that status, and tell you that you have a right to a hearing before an impartial Adjudication Captain within 72 hours, excluding weekends and holidays. The Adjudication Captain will decide if the evidence and witnesses you want are appropriate, that is, relevant and not repetitive of other evidence or witnesses. If you are placed in enhanced restraints, the notice will tell you what level of restraints are being applied. Levels of enhanced restraints may include waist chains or leg irons, and may include restraint during a program service.

**Hearings:** Unless there is a stated good cause for delay, the hearing must be held within 72 hours after you receive the notice. You have a right to review the evidence that will be used against you. At the hearing, you have a right to make your own statement and to present evidence, including testimony from staff and inmate witnesses, at the discretion of the Adjudication Captain. If you are deaf or have a speech impairment, you may request a Sign Language interpreter. If you wish to have a witness called to testify for you, you must tell the Adjudication Captain specifically why you want that witness to testify, so that the Adjudication Captain can determine if the witness should be called or not. You have a right

17

to have help from a person known as a "counsel substitute" if you cannot read, if the case is very complicated, or if there is some other reason that prevents you from understanding the witnesses or documents. When you are served with the infraction, the Adjudication Captain will explain to you how to request a "counsel substitute" if you need one.   If you cannot speak English, you may have an interpreter.

**Written Decision:** If the Department decides to continue your Red ID or Enhanced Restraint status, you must receive a written decision saying so within 72 hours after the hearing is finished, not including weekends and holidays, unless something unexpected happens such as you having to appear in court, to delay your receiving the decision.  A decision to continue the Enhanced Restraint or Red ID status must be based on a "preponderance of the credible evidence."

**Appeal:** If you believe the decision to keep you in Red ID and/or Enhanced Restraint status is wrong, you have a right to appeal that decision to the Deputy Warden of Security at your facility within 21 days after you get the decision, or at any time if you have a good reason and supporting facts, including new evidence or a change in circumstances.

Appeal forms are kept in the Law Library.  If you want to appeal, you must fill out the Appeal form explaining why you think you should not be in Red ID or Enhanced Restraint status.  You must file the completed and stapled form(s) in the locked box marked "Red ID/Enhanced Restraint Appeals" in the Law Library.  Staff from the jail's Security Office will collect the contents of the locked box daily from Tuesday through Friday.

You may mention improved conduct on your part as a reason to remove you from Red ID or Enhanced Restraint status.  The Deputy Warden of Security will review the specifics of your appeal as well as all documented information and the circumstances surrounding your placement.  The Deputy Warden of Security has 7 days after receiving the appeal to render a written decision.  Then you must receive the written decision within 24 hours excluding weekends and holidays.  If you want to challenge the Deputy Warden's decision, you can bring an Article 78 proceeding in New York State Supreme Court.

**Note:** - An Article 78 (Article 78 of the Criminal Procedure Law Review (CPLR)) proceeding is the method by which you request judicial review of administrative actions. The Forms are located in the Law Library where a Legal Coordinator will assist you.

You must retain a copy of the appeal for your records, and you must send a copy of the appeal to:

The Office of Compliance Consultants (O.C.C.)
J.A.T.C.
14-14 Hazen Street, 2nd Floor
East Elmhurst, N.Y. 11370

You can make copies in the Law Library.  If you are in the Central Punitive Segregation Unit (CPSU), you may get a copy of the appeal form from the CPSU Law Library officer.  You must give the officer the completed form.  The officer will put the form in the locked box in the law library.  You will be given a copy of your appeal.

**Medical Review:** The medical staff must conduct a physical examination of every person placed in Enhanced Restraint or Red ID status within 24 hours after placement in order to decide if the enhanced restraints are likely to have a substantial medical effect ("significant adverse medical consequence") on you or worsen an existing medical condition. In addition,

18

the medical staff must review the medical records of those in Enhanced Restraint and Red ID status once each month, to make sure that the restraints are not causing significant harm. You will not have a physical examination every month unless medical staff determines that you need one.

If the restraints are causing you physical harm, you may ask to see medical staff without waiting for the monthly review. If medical staff finds that the enhanced restraints are causing a considerable negative medical consequence or irritating a pre-existing medical condition, they must notify the Department in writing and ask that the Department use different restraints on you. The Department and the medical staff must agree on the different restraints

## FAMILY EVENTS

### Child Custody Issues and Foster Care Visits

Even though you are incarcerated, it is very important that you actively plan for your child's future by being involved in his/her foster care case and remain in contact with the caseworker. In order for you to reunite with your child after your release, you have to show that you are a responsible parent, are involved in your child's life, and are addressing the issues that led to your child being placed in foster care.

**If your child is in foster care, you have the right to:**
- Be notified of any upcoming Family Court dates
- Be produced for all Family Court proceedings
- Have an attorney assigned to represent you in Family Court proceedings involving your foster care case
- Have at least monthly visits with your child unless the Court has ordered otherwise. These visits are arranged weekly through the Administration for Children's Services and the Foster Care caseworker. Ask the Counselor to help you contact your caseworker.

**If you have an upcoming Family Court date:**
- Family Court judges are supposed to issue an "Order to Produce" to the Department of Correction (DOC) to make sure that you can appear in court. Sometimes this doesn't happen – even if the court fails to issue an order to DOC, you can still take steps on your own to make sure you get to court.
- As soon as possible, you can:
  - Give the order to the Counselor if it was sent directly to you.
  - Talk to your lawyer, your child's caseworker and your Counselor to request that you be produced.

- Write to your Family Court Judge to request that you be present at all court dates involving your child (you can ask your Counselor for a sample letter)
- Make sure that the Counselor is aware of these dates as soon as possible after you are notified if you want to be taken to court.
- Also, make sure that the *Order to Produce* gets sent to the Chief Clerk on Rikers Island (and the Inmate Records Office if you are in a State Facility), and **not** to YOU. If an order gets sent to you directly it is legally useless. You can give the original order to the Counselor who will give it to the Chief Clerk of your facility. Upon verification you will be taken to court. **If you want more information on Child Custody and Foster Care Issues:**

19

- Request a copy of the BOOKLET: "Out of Sight, Not Out of Mind: Important Information for Incarcerated Parents whose Children are in Foster Care" from the Counselor or the Administration for Children's Services.
- Request to view the VIDEO "Out of Sight, Not Out of Mind" from your Counselor
- CALL the ACS Office of Advocacy's Parents' and Children's Rights Helpline collect at: 212-619-1309

## FOOD SERVICES – SPECIAL DIETS

You are allowed to have a therapeutic diet prescribed by a physician or physician's assistant. If you believe your medical condition warrants a therapeutic diet, you should arrange with your housing area officer for an appointment with the medical staff.

You are allowed to observe reasonable dietary laws or fasts established by your religion. The department will provide you with the appropriate foods consistent with the established religious dietary laws as sanctioned by Ministerial Services.

## GRIEVANCE PROCEDURE

The Department's Inmate Grievance Resolution Program is available to you if you have a complaint or concern about anything involving your incarceration. If you cannot resolve issues of concern by speaking with those involved, you may submit a complaint to the Inmate Grievance Resolution Committee (IGRC). The grievance procedure is not an adversarial process, but an attempt to resolve disputes fairly and equitably within existing regulations. You may use the grievance procedures to resolve issues related to a specific incident or related to Department policies or how the policies are carried out, or the fact that there is no policy or rule about something affecting your incarceration.

**How to Submit a Grievance**

Complete an "Inmate Grievance Interview Slip" (Form #143) or an "Inmate Grievance Form" (Form #7101), which are available through Inmate Grievance Resolution Committee staff members and office, Housing Area Officers, Law Libraries and the Counseling Office.

Submit the grievance by giving it to an Inmate Grievance Resolution Committee staff member, dropping the grievance in the Grievance Box or bringing it to the Grievance Officer.

In the event you cannot access the Grievance form (Form #7101), a complaint can be write on any paper and will be transferred onto the appropriate form when Grievance personnel interview you.

**Time Deadline to Submit Grievance**

You must submit your grievance within 10 days (excluding weekends and holidays) of the time the event or issue you are complaining about occurred, or the issue came to your knowledge.

20

**How the Grievance Procedure Works**

**Step 1:** The IGRC will investigate and try to resolve your grievance without a hearing. If you are not satisfied with the informal resolution, or do not receive a response to your grievance from the IGRC within five days (excluding weekends and holidays), you may request a formal hearing.

**Step 2- Warden Level:** If you are not satisfied with the determination from a hearing, you may appeal to the Warden.

**Step 3 – Central Office Review Committee (CORC):** If you are not satisfied with the Warden's decision, you may appeal to the CORC.

**Step 4 – Board of Correction (BOC):** If you are not satisfied with the CORC decision, you may appeal to the BOC.

**Additional Information About the Grievance Procedure in Directive 3375R**

If you do not receive a response to your grievance at any step of the Grievance Procedure within the time period required in Directive 3375R-A, you may proceed to the next step of the Grievance Procedure.

More detailed information on the timeframes and process for all the steps in the procedure is included in Directive 3375R. Copies of this Directive are available at the Grievance Office and the Law Library.

**Confidentially and Accessibility**

Grievance files are confidential and are kept in a locked area for use by IGRC staff. Inmates, who do not speak or write English, and inmates with disabilities, will be provided with necessary assistance to use the grievance procedure.

**Non-Grievance Complaints**

Some issues are not grievable. These include complaints of assault or harassment by a staff person, which the IGRC will refer to the commanding officer for necessary action, issues that are in litigation and issues that do not directly affect you. If you are unsure whether an issue is grievable, you should file a grievance. The IGRC will then determine whether the complaint is grievable.

# HEALTH SERVICES

Regular medical, mental health, and dental services, as well as specialty medicine and dental services, medical and mental health counseling, methadone maintenance, detoxification, and other substance abuse services are available to you while you are incarcerated in the N.Y.C. Department of Correction, Monday through Friday. Emergency services are available at any

time, 24 hours a day, 7 days a week. These services are provided by the NYC Department of Health and Mental Hygiene and by contractors hired by that agency.

You can get to any of these health services by signing the daily sick call sign-up sheet posted in your housing area.   If you are blind or visually impaired, you may ask for assistance with signing the sheet.

If you sign the daily sick call sign-up sheet, you will be brought to sick call on the following day.

If you are HIV positive or want to take a voluntary HIV test, your facility has an HIV counselor who can help you obtain medications or help you arrange for a test.

If you have not signed up for sick call but at any time have a medical, mental health, or dental emergency, tell your housing area officer who will make sure you get emergency care.

If your condition requires that you be hospitalized, you will be transferred to a hospital with a Prison Ward where you will receive needed treatment.

### HIV Counseling, Testing and Discharge Planning

Individuals who have or may be at risk for HIV may contact the HIV counselor in his/her facility to talk about discharge planning by signing up for sick call.  An HIV counselor is available in all facilities.  All sessions and results are completely confidential.

### Transitional Health Care Coordination

Transitional Health Care Coordination staff of the Department of Health and Mental Hygiene are available to its patients in City jails, their visitors at the Central Visit Center and to those re-entering the community and their families in community-based offices. List of community-based sites are available in each facilities health clinic.  Their mission is to promote better access to health care and health insurance services in the community.

*The Central Visit Center Health Station at Rikers Island* offers health information and screenings to families and visitors and, through referrals, is an avenue to community programs.  The Correction-Community Linkage Program provides linkages for those leaving DOC facilities and their families in the communities of greatest need: Central/East Harlem, Central Brooklyn and the South Bronx.

You may access these services by reaching out to a transitional health care staff member or by asking a Correction Officer to make that contact for you.

## HIGH SECURITY CATEGORIES

The Department may place you in a restrictive security group such as General Population Escort or a housing area such as Close Custody without your consent.

Either before, or immediately after you are placed in high security restrictive housing, you will be given the following information:

- The reasons for the placement in that group/housing area
- The evidence relied upon to make that decision

If this happens, you have the right to a hearing before an impartial Adjudication Captain who is independent of the facility.

If you request a hearing you have the following rights:

- You are allowed to be at the hearing
- You must be told of the evidence against you
- You may make a statement
- You may call staff or inmate witnesses and present reasonable and relevant documentary evidence, at the discretion of the Adjudication Captain; and
- If you cannot read, are visually impaired, or if your case is very complicated, the Adjudication Captain may appoint an Inmate Hearing Assistant to assist you.

The Adjudication Captain will keep notes of what takes place at the hearing to provide a basis for the decision.

The hearing will be held within 72 hours after you receive the written notice of your placement. If a holiday or weekend intervenes, the Department may hold the hearing on the next business day after you receive the written notice of your classification.

If you turn down your opportunity to have a hearing after initially being placed in a high security group or restrictive housing area, you have the right to a hearing at a later date if you request to be removed from restrictive housing. The procedures and time frames are identical to those described above with regard to hearings upon placement.

If the Adjudication Captain decides that you belong in a high security group/housing area, he/she will explain the decision in writing to the Warden within twenty-four (24) hours after the hearing. Within the next twenty-four (24) hours, the Warden will decide whether he/she agrees or disagrees with the Adjudication Captain's decision. You will receive a copy of the Warden's decision in writing.

If you are placed in a high security group/housing area, the Department will review your case every twenty-one (21) days to see if your classification should be changed. You will be notified of the results of that review.

If the Adjudication Captain determines that you do not belong in a high security group/housing area, you will be moved to another area and your records will be updated.

Nothing in this procedure requires the Department to tell you the name of anyone who provided the Department with information on a confidential basis.


## LAW LIBRARY:
## LEGAL REFERENCE MATERIALS AND SUPPLIES

Unless you are in a hospital prison ward, your jail has a full law library that has updated research and reference materials, blank legal forms, a photocopy machine, paper, and typewriters. Hospital prison wards have mini-law libraries. If you need material not

23

contained in the mini law library before your return to a facility with a full law library, ask the mini law library officer for assistance.

The law library is run by a trained civilian legal coordinator to help you find the legal materials you need.

You may go to the law library for at least two (2) hours each day that the law library is open (Tuesday through Saturday). You will be called to the law library when your housing area is scheduled A copy of the law library schedule is always posted in each jail's law library and in all housing areas.

You may ask for extra law library time. If you ask, you will get as much extra law library time as space permits unless you did not pay attention earlier to a warning to stop misusing the law library. Inmates with an immediate need for additional time, such as a court deadline coming up, will get preference for extra law library time.

To ask to go to the law library, you must sign up during lockout periods. When you put your name on the sign-up sheet, you are signing up for law library the next day that the law library is open.

If you miss you're regularly scheduled law library period due to a legitimate conflict with another institutional activity, medical or legal proceeding, you will be recalled automatically for the required two (2) hours later that same day or at the next recall period.

The Correction Officer assigned to your housing area will alert you when it is time for law library. If you are there when the announcement is made and do not answer or choose not to attend, you will not be entitled to a recall.

If you return to your housing area from court after the law library sign-up sheets have been removed (i.e. after midnight), and you ask your housing area officer to go to law library the next day, you will be allowed to go the next day the law library is open, as if you had signed the sign-up sheet.

Each law library has trained inmate legal assistants and inmate typists to help you prepare legal papers. Some of those assistants speak Spanish.

Each jail offers legal research classes for general population inmates four times a year. If you are in a special housing unit, you may ask for legal research training materials, and you will receive independent study with the assistance of the Legal Coordinator during regular Law Library sessions.

If you do not follow the law library rules, you disrupt the orderly functioning of the law library, or you use the law library for some purpose other than legal work, you may be removed from the law library for the rest of your law library period. You may also be infracted and kept from the law library for a longer period of time.

24

## LOCK-IN AND LOCKOUT
(Times when you are permitted to be in or out of your assigned cell.   )

If you are not in punitive segregation status, Close Custody lock-in status, or medical isolation, you will not be confined to your cell except during the following times:

- At night, for no longer than 8 hours, beginning no earlier than 11:00 p.m.;
- During the daytime, for no longer than a daily total of 2 hours in any 24-hour period;
- Whenever the institutional count cannot be verified and recounts must be taken;
- When necessary for the safety and security of the facility or the Department.

## MAIL (CORRESPONDENCE)

You are allowed to send mail to anybody and to receive mail from anybody unless a court order limits your sending or receiving mail.  You are allowed to send and receive as much mail as you want.  You may write and receive mail in any language.  If you have a visual impairment or are blind and need help reading or writing your mail, you may ask a volunteer or an assigned inmate to assist you, or ask the Housing Officer to assign an inmate to assist you.

Mail that you send out, and mail that is sent to you, may not be opened or read if you are not present, unless that is specifically allowed by a lawful search warrant.  However, the Department will inspect, feel, or bend your mail without opening the envelope, even if you are not there.

If contraband **(items not allowed in a jail; check list of contraband in your rulebook)** is found in your mail, the Department will tell you what was found but will not allow you to have the item(s).  As long as the item is not dangerous or illegal, you may decide if you want to: have the item destroyed, donate it to an outside charity, or pay to have it returned to the person who sent it to you.

To send mail, buy stamps in the commissary and money will be deducted from your account.

If you have no money in your commissary account, the Department will provide you with free stationery, envelopes, regular first class stamps for all letters to attorneys, courts, and public officials, as well as two other letters each week.    If money is deposited in your account within 7 days after you have received free stationery, the money will be recouped from your account.

You must pay to send certified mail. If you are required by a law or rule to send mail certified but you have no money in your account, the Department will pay for you to send that certified mail.  The Correction Officer will collect and record your outgoing certified mail and then drop it in the outgoing safe, which will be picked up later for processing.

You must address and seal the mail you want to send out. You must include the following information on the upper left-hand corner of the envelope:

- Your name,
- Your book and case number, and
- Either your jail's street address or your home address. Ask your Housing Area Officer for the address of the jail where you are located.

If you do not put that information on the envelope, the Department will give you back the mail.

To mail a letter out, you should put it in one of the locked mailboxes in your jail. As mentioned above, you can buy stamps in the commissary.

## MENTAL HEALTH DISCHARGE PLANNING

If you are receiving mental health care while in jail, you may be eligible for discharge planning services and benefits under the <u>Brad H</u> court settlement. Your mental health clinician or a mental health discharge planner will help you prepare a comprehensive treatment plan.

If you are released directly from court, you can visit a SPAN (Service Provider Assistance Network) office that is located within walking distance of each courthouse.

**Office locations are:**
- Manhattan SPAN Office
  80 Centre Street, Room 200-B
  New York, NY 10013

  Telephone # (212) 732-7906          Fax # (212) 732-7908
  Hours: 10:00 AM – 8:00 PM

- Bronx SPAN Office
  1000 Grand Concourse, Suite 2-E
  Bronx, NY 1O451

  Telephone # (718) 590-1235          Fax # (718) 538-0165
  Hours: 10:00 – 7:00 PM

- Brooklyn SPAN Office
  408 Jay Street, Suite-203
  Brooklyn, NY 11201

  Telephone # (718) 625-9736          Fax # (718) 626-9739
  Hours: 10:00 AM – 7:00 PM

- Queens SPAN Office
  125-10 Queens Blvd. Suite-224
  Kew Gardens, NY 11415

  Telephone # (718) 897-1854          Fax # (718) 897-2731
  Hours: 9:00 AM – 7:00 PM

The SPAN staff will help you complete your discharge plan, as well as provide you with any prescriptions or information you may need.

## MEDIA/PRESS CONTACTS

You are allowed to talk to reporters or the media, that is, newspapers, magazines, book publishers or other publications, and licensed radio and television stations, under the rules described in this Handbook.

You are allowed to be interviewed by a media representative who shows the Department the required media identification, if you agree to be interviewed in writing through your facility Counselor.

If you are a detainee and a court order requires you to be examined to decide if you are competent to stand trial, the Department will not schedule the media interview unless your attorney agrees.

If you are under 18 years old, the Department may require that a parent, legal guardian, or your attorney agree before you will be allowed a media interview.

If the Department agrees to allow a media interview, the interview will generally be scheduled within 24 hours of the request for a time between 8:00 a.m. and 4:00 p.m. The Department will take into consideration any mandated appearances or services you must attend, and schedule your appointment so that you do not miss them.

If the Department decides that your having a media interview will threaten safety or security, a media interview may be limited, denied, or permission may be revoked. The decision will be made by the Deputy Warden for Programs, who will inform you and the media representative in writing and will give you a chance to respond to his/her decision.

If your interview or request for an interview has been limited, denied, or revoked, you may appeal to the N.Y.C. Board of Correction. If you appeal, you must write to both the Board of Correction and the Warden of your jail.

## NON-DISCRIMINATORY TREATMENT

The Department will not discriminate against you based on your race, religion, nationality, sexual orientation, age, disability, or political belief.

The Department will give you equal opportunity with others when it makes decisions including work assignments, classification, and discipline, and when you are considered for available programs. The Department will take into account reasonable operational and security concerns in making those decisions.

The Department will provide publications and newspapers printed in English and Spanish, have Spanish-language books and materials available in your jail's library, and make it possible for you to hear radio and television programs broadcast in Spanish. **A copy of this Handbook in Spanish and in Braille** is available in NIC's, RMSC's and RNDC's Law Libraries.

You may talk or write in any language to other inmates and to persons outside the institution, by mail, by telephone, or in person, and you may read and receive written materials in any language. Other rules about mail, telephone, and personal communications still apply.

## NURSERY PROGRAM

If you are pregnant, give birth, or are a female inmate with a child under one year of age while incarcerated, you may apply to the RMSC nursery to keep your baby with you until the child is one year old. If you are accepted into the program, the baby will be allowed to remain with you in the nursery for up to one year. Ask your counselor for an application form.

## PACKAGES

These rules apply to all facilities except the hospital prison wards and outposts, where the quantities of packages may be limited.

**Package Rules**

You are allowed to receive packages from and send packages to any person, including other incarcerated inmates, but not including Department employees, or employees of any organization that works officially with the Department on the care, custody and control of inmates.

The Department will deliver your packages to you as soon as possible, but no longer than within 48 hours of receipt.

You must pay to send packages out. If you have a package to go out, take it to the mailroom, the mailroom officer will put the package in a box, weigh it and you must give the Officer the needed stamps based on the weight of the package.

The Department will not accept or let you send packages C.O.D. (cash on delivery).

The Department will examine packages to make sure that nothing illegal or dangerous comes into or leaves a jail.

You are not allowed to send or receive any package whose contents are illegal or threatens the public safety or the security or welfare of the jail or anyone in it.

**Package Specifications**

No packages being sent or received may weigh more than 15 pounds. All packages must be less than 24" wide, 12" high and 24" deep (4 cubic feet).

If something is sent to you that is not allowed by Department rules, you may choose whether you want to donate it to a charity, have it destroyed, or pay to return it to the sender. You must sign a dated log to confirm how you want the Department to handle the package.

**The following are not permitted in packages to or from inmates:**
- Foods, baking and/or cooking ingredients
- Vitamins, pills, drugs or medications of any kind
- Can-type containers with metal parts
- Metal, ceramic or glass containers
- Aerosol type containers
- Trigger type apparatus
- Pinhole squeezable containers
- Any other items that the Department decides may by its contents or design threaten the safety of the jail or anyone in it

**Incoming Packages**

You may receive packages by U.S. Mail or delivery service, or by delivery by a visitor to your facility during regularly scheduled visiting hours. With permission from your jail, you may also receive packages at other hours. In this case, you would have to write a letter to your jail's Warden and request delivery of the package.

If you need clothes for a court appearance on the next day, clothing packages may be hand delivered at any time between 8 A.M. and 9 P.M. and during any additional hours that the Department decides are appropriate. Packages containing clothing needed for when you have to go back to court, or for other emergencies (e.g. Significant Family Event) may be delivered to you as long as the package is received at the housing facility at least two (2) hours before the time you are scheduled to leave for court. If you need clothing for a court appearance, you may also ask your housing area officer to try to find you clothing. It is important that you ask at least two days before your court appearance.

All packages received at the facility for you must have the sender's name, (and book and case number, if an inmate) address and the recipient's name and book and case number clearly marked on the outside.

A separate receipt for a package and its contents will be provided for each personally delivered package received from a visitor.

If a package for you also includes mail, it will be delivered to you with the opened, inspected package. If the mail is sealed, it will be opened in your presence. However, including sealed or unsealed mail in packages sent by U.S. Mail is against U.S. Postal Service regulations, and may be reported to the postal authorities.

When any item found in an incoming package involves a criminal offense, it will be confiscated, identified and forwarded to the appropriate authority for possible criminal prosecution of the parties participating in the offense. These items will not be returned to you.

When a non-permissible item is discovered in any incoming package delivered by a visitor that does not constitute a criminal offense, the item(s) will be removed and returned to the visitor. When the package has been delivered by mail or delivery service, or the visitor is not present, the item(s) will be returned to the sender at your expense, or donated to an outside charitable organization, or destroyed, as you choose. A record of all such transactions will be entered into a permanent, dated log and verified by your signature.

When a package is received after your release, the package will not be accepted, or it will be returned to the sender. When a package is received and you have been transferred to another facility within the Department, the package will be time stamped and forwarded promptly to the facility to which you were transferred.

**Appeal**

If you wish to appeal the removal of any item(s) from a package, you should address the matter via the Inmate Grievance Resolution Program (I.G.R.P.) (See the **"Grievance Procedure"** section of this handbook for more information about how to use that program.)

## PERMISSIBLE ITEMS

While you are incarcerated, you are allowed to have the items of clothing and other items listed below, only in the amounts listed. If you have more than the permitted number of any of these items, the additional items will be taken from you and stored for you until you leave the Department. The Department will give you a receipt for any such item it takes from you. You may have such items that are taken from you mailed out or given to visitors if you pay the cost to do so.

You are allowed to receive the items listed below in incoming packages unless otherwise noted.

The quantities of items listed below apply to all jails except the hospital prison wards, which are governed by a court order in the case of Reynolds v. Sielaff. These quantities may be changed if the Department decides that the listed quantities specifically threaten the safety of the jail staff or other inmates. Notice of any such changes will be posted in all inmate-housing areas, visiting areas, dayrooms, and the receiving room of the jail.

Sentenced inmates shall be required to wear institutional clothing, except when making an appearance in court or attending a permitted significant family event.

If you are housed in a Mental Observation (M.O.) unit or you are considered a suicide risk (as determined by a physician) you will not be allowed belts, ties, shoelaces, or other items that a physician determines would pose a risk to your well-being; and other articles of clothing may be removed from your possession if warranted by a mental health evaluation.

**Note:** Items marked with an asterisk (*) are not allowed for any sentenced inmate unless you are scheduled for court or attending a permitted significant family event.

**Personal Clothing**

> 1 Bathrobe
> *1 Belt (non-elastic, max 1 ½" wide, small buckle, 2 ¼" max) – Not allowed for Mental Observation inmates
> *4 Blouse/shirt (non-uniform type, not white or blue)
> One pair only of the following: rubbers, galoshes (overshoes)
> *1 Coat (no leather, Carhartt, camouflage, blue or uniform type)
> One pair of gloves (for outdoor cold weather wear)
> *2 Hats/caps (non-uniform type)
> *2 Jackets (no leather, Carhartt, camouflage, dark blue or uniform type)
> 2 Pairs of pajamas
> *4 Pairs of pants/slacks (no dark blue or uniform type)
> 1 Raincoat (no black or uniform type)
> 2 Pairs of shoelaces - Not allowed for Mental Observation inmates
> 2 Pairs of shorts or cut-off long pants
> 1 Pair of slippers (no hollow, platform soles or heels, no velcro)
> 4 Pairs of sneakers, shoes, or a combination (no hollow, platform soles or heels)
> 4 Pairs of socks
> *2 Sweater/sweatshirts (or combination of the two; no hood or pockets)
> *1 Tie (not black) – Not allowed for Mental Observation inmates
> 4 Sets of undergarments – in accordance with your sex unless approved otherwise by medical staff.

**Personal Clothing– Females Only, May have these items in addition to the list above.**

> *4 Dresses
> *4 Skirts (no dark blue or uniform type)
> 1 Housecoat
> 2 Nightgowns
> 4 Pairs stockings, pantyhose, or knee-hi's
> 1 "scrunchie" ponytail holder
> 2 Boxes feminine hygienics – You can only purchase these items in the commissary, you cannot receive it from a visitor or have any mailed to you in a package.

**Toilet Articles**

> No metal, glass, ceramic, aerosol, trigger or plunger type containers are allowed. Plastic containers and parts are preferred. All powdered toilet articles must be purchased at the Commissary. Your facility will replace health care items such as soap, toothbrush, toothpaste, drinking cup and toilet paper. Feminine hygiene products shall be replaced as needed by the facility.

> <u>MAY BE SENT IN PACKAGES</u>:
> 1 Afro comb/pick (pliable rubber or plastic, non-folding type)
> 1 Comb (standard pocket type, rubber or plastic type, no metal)
> 1 Hair brush (non-metal, bristle only – I piece composition)
> 2 Packages eyeglass tissue
> 2 Boxes facial tissue

NOT ALLOWED IN PACKAGES; MUST BE BOUGHT AT COMMISSARY:
1 Cocoa butter
1 Pack cotton balls
1 Deodorant (stick/liquid type, no roll-ons)
Hair cream dressing (non-alcoholic, plastic container)
1 Unitdepilatory
2 "Fostex" soap bars
10 "Claraseptic" lozenges
2 Lanolin (tubes)
2 "Kaopectate" (plastic bottles only)
1 Tinactin cream
12 "Tylenol" (tablets)
2 "Noxzema" (plastic tubes)
1 Pack "Q-tips" (no hollow or wooden shafts)
1 Shampoo (liquid, cream, medicated-plastic container)
1 Shaving brush (non-metal, bristle only)
1 Shaving cream (plastic tube)
1 Shaving Soap
5 Soap (bar, face, in addition to "Fostex" soap)
Soap dish (plastic)
1 Styptic pencil
1 Toothbrush (Department issue only)
Denture adhesive, powder cleaner (no metal container)
Tinactin powder
1 Each powder (after shave, baby, body, face, foot, medicated, talcum, tooth)
1 Each powder (mitts, pads, puffs- females only)
2 Tubes toothpaste (Commissary issue only)

## Linen, Bedding and other items issued by the Department

**1 Washcloth+**
2 Sheets
**2 Towels+**
1 Pillow (with fire retardant cover)
1 Pillow case
1 Fire retardant covered mattress. Sufficient blankets to provide comfort and warmth
1 Plastic utility tub/commissary bucket (approximately 18 qt. capacity)
1 Two-oz. package of cold water laundry detergent (2 packages weekly)

+ These numbers reflect Department-issued quantities only. You may possess up to 4 towels and 4 washcloths, which may include a combination of personal (non-white) and Department-issued towels, and washcloths. However, in no event may you possess Department-issued towels, and washcloths in excess of the above listed amounts.

## Educational Items

MAY BE SENT IN PACKAGES:
6 Charcoal sketch pencils
3 Composition books
2 Erasers (gum, rubber or ink)
6 Pencils (without erasers)
1 Ruler (no metal or metal edge)
1 Legal size cardboard portfolio

NOT ALLOWED IN PACKAGES; MUST BE BOUGHT AT COMMISSARY:
4 Pens (ballpoint, non-metal inserts; Commissary issue only)
1 Clipboard (non-metal, 9" X 15" max)
6 Pads (drawing, legal, writing)
1 Pack writing paper

**Publications**

You may have up to 1 cubic foot (12" X 12" X 12") of printed materials including soft and hard covered books, magazines, newspapers, periodicals, pamphlets, advertisements and other printed articles, etc. (any combination). These items must be neatly stored so that they do not create a health or fire hazard.

There is no limit to the quantity of legal materials you may have.

**Recreational Items**

NOT ALLOWED IN PACKAGES; MUST ONLY BE BOUGHT AT COMMISSARY:
2 Board games (no dice)
1 Box dominoes
Jigsaw puzzles
Decks of playing cards (decks or packages must be sealed upon receipt, no stiff plastic or plastic coated cards are permitted)

**Photographs**

Photographs may be hung only on the inside of locker doors or placed on the tops of desks, provided they are not held up with toothpaste or any material that could attract insects or rodents. Nude photographs may not be displayed in an area that is visible to persons passing by your cell or living area.

**Food Items**

The only food you may keep in your housing area are those items bought at the commissary. All food must be stored in your Commissary bucket. Be very careful not to keep food items beyond their expiration date, or opened too long, so that they do not spoil or attract insects or rodents.

**Miscellaneous Items**

MAY BE SENT IN PACKAGES
1 Calendar
1 Pair of Prescription eyeglasses

NOT ALLOWED IN PACKAGES; MUST BE BOUGHT AT COMMISSARY:
1        Drinking cup (Department issue only)
10       Envelopes (legal, plain stamp embossed)
          (Mental Observation cases may be restricted by medical personnel)
10       Greeting cards
6        Paper plates
1        Shoe brush (non-metal, bristle only)

| 1 | Liquid shoe polish (neutral color: commissary issue only) |
| 1 | Instant shoe polishing cloth or sponge (neutral color; Commissary issue only) |
| 1 | Sponge (hand) |
| 1 | Spoon (soft plastic only) |
| 10 | Stamps |
| 1 | AM/FM personal stereo (walkman style with headset, Commissary issue only) |
| 1 | 8 ft. length of 8 ply, #1 cotton twine (17 lb. breakaway) for drying clothes, supplied by the Department. (Not available if you are housed in a M.O. unit or are identified by mental health staff as being a suicide risk). |

### Religious Articles

You may wear and possess religious articles including clothing and hats as long as the articles do not threaten the safety or security of the institution.

## PERSONAL HYGIENE

Showers with hot and cold water will be made available to you daily. You may be required to shower periodically as consistent with institutional health requirements.

Certain personal hygiene items will be provided to you when you are first incarcerated. You can buy additional personal hygiene items from the Commissary, and they will be provided free if you have no money in your Commissary account, but the funds will be taken from your account when you get money in it.

You may shave daily in your housing area with Department-issued shaving items, by presenting your identification card to the housing area officer and following his/her instructions. You will not be allowed to use shaving items if the Department has decided that your using those items threatens your own safety or the safety or security of the institution.

Your facility provides barber and/or beautician services Monday through Friday, at a cost of $2 per visit. You may buy a voucher for barber services at the Commissary. If you have no money in your Commissary account you may still obtain a haircut, but the cost of the haircut will be taken from your account when you get money in it.

Check the posted schedule to see which day and time your housing area receives these services. In addition to your regular schedule, you may request a haircut on the workday prior to any scheduled court appearance. Persons capable of using barber tools will cut your hair. Such persons include, but are not limited to licensed barbers, institution staff members, and inmates, as consistent with the safety and security procedures of the institution. Barber tools will be maintained in a safe and sanitary condition.

## PROGRAM SERVICES

The Department of Correction has various programs available to you while you are incarcerated. These include educational, vocational, work, and counseling programs that are described individually in the Introduction and other sections of this handbook. Information

regarding your eligibility and the specific programs available is provided at the facility's orientation session and through the Programs office in each jail. Keep in mind that different programs have different criteria and not every program is open to every individual or available in every jail.

## PROPERTY

When you first come into a jail, all non-permissible property will be taken from you. You are allowed to keep certain things, as listed in the "Permissible Items" section of this Handbook. You will get a receipt for property taken from you, and the Department will store it and return it to you when you are discharged.

If you want to retrieve an item from your property or want someone to pick up your property, ask the Counselor in your facility for a Property Release form and follow the instructions.

Any property taken from you at any time that involves a criminal offense may be sent to a prosecutor, for example: the district attorney's office, the police department, an investigating agency, or any other appropriate law enforcement agency for possible criminal prosecution. If it is against Department rules for you to have that property, you will also be subject to disciplinary action.

Tobacco or tobacco-related products will be destroyed if they are not preserved as evidence in a criminal proceeding. Any money found after you have been processed as a new admission inmate will be taken away from you and will become the property of the City of New York Whenever the Department takes your property from you, you will receive a Property Receipt form #111R B 92, which explains how you can appeal that removal.

If property is removed from an incoming package or piece of mail because you are not allowed to have it while you are in jail, and it does not involve a crime, it will be put in your stored property and you will be told about the removal within 24 hours. (More information about packages is provided above, in the **"Packages"** section.) If an incoming publication is censored or its delivery is held up because it contains prohibited material, you will be notified within 24 hours of that decision. If you have a complaint regarding the receipt of your package you may either file a grievance or lodge a written complaint with the Board of Correction. If you choose to contact the Board of Correction, you will no longer be able to file a grievance. (Check the Section on **Grievances**)

Any personal property that you do not claim within **120 days** of your discharge from the Department is considered abandoned property and will be turned over to the Police Department or another agency for disposal. Upon your discharge from the department, you or someone you designate may return and claim your personal property. You must first call 311 and follow the directions for the information that will guide you on when to return. If you are transferred to another facility, you property will go along with you.

## RADIO AND TELEVISION USE

The Department is required to maintain an environment where the typical noise level does not interfere with normal human activities or present a threat to health or hearing. You may be asked to lower the volume of a radio or television.

Televisions are accessible in the dayroom during all lockout periods. If you are watching television in the day room, you will decide among yourselves what programs to watch. If you cannot decide and there is a problem, the Officer will make the decision for you.

## RECREATION

You will be permitted to have 1 hour of recreation daily. Recreation is available 7 days per week. You will have recreation outdoors except in extremely bad weather. When necessary for the safety and security of the institution, you may be given recreation by yourself and not with other inmates.

Your exercise period may be limited when it is determined that letting you exercise would cause a threat to the safety, security, or the good order of the jail, or any person's safety, security or health.

Any decision to limit your exercise period will be made by the Warden or his/her designee in writing, and will state the specific facts and reasons underlying such decision. A copy of this determination will be provided to you. Prior to such determination, you will be provided with written notice of:

- The specific charges against you
- The names and statements of the charging parties.

You will be given an opportunity to respond to the charges.

You will receive a copy of the written determination and a copy will be forwarded to the Board of Correction within 24 hours.

If the determination is based on a disciplinary proceeding you will be notified when you receive a copy of the "Notice to Inmate, Disciplinary Proceeding Disposition Form". A copy of that form will be forwarded to the Board of Correction within 24 hours.

Nothing in this procedure requires the Department to tell you the name of anyone who provided the Department with confidential information.

## RELIGIOUS RIGHTS

You are allowed to hold any religious belief and to be a member of any religious group or organization. However, you are not allowed to:
1. Try to compel another inmate to become part of a religious group or organization;
2. Try to convince another inmate not to exercise his/her religious beliefs;
3. Influence another inmate to stop being a member of any religious group or organization.

36

During lockout, periods when you are not in your cells, you are permitted to meet with facility chaplains in accordance with institutional procedures. Chaplains in your facility represent the four main faith groups. Catholicism, Judaism, Islam, and Protestantism. If your particular faith is not listed, speak to a Chaplain who will assist you. Chaplains are available for religious instruction, spiritual counseling, referrals to transitional services and discharge planning. A posting with the times of each service is available in your housing area.

When you first come into the Department, you will be asked what religion you belong to so the Department can make it easier for you to observe your religion. Once you have said what religion you prefer, you will be allowed to attend services only for that religion. If you want to change or establish a religious affiliation, you must submit an interview slip or have the housing area Officer contact the Chaplain of the desired faith. The Chaplain will interview you and either approve or disapprove the request. If the request is disapproved, you will be given the reason for the denial in writing.

In the event your religious preference is not represented by the four main faith groups; Catholicism, Judaism, Islam, and Protestantism, make a request to the Administrative Chaplain in your facility to receive a pastoral counsel visit with the clergy of your faith and the Administrative Chaplain will receive the necessary approval. All clergy visits shall last one hour in duration. You will be permitted to attend religious services with general population inmates unless you are found to pose a threat to the safety and security of the jail, including the likelihood that you will disrupt the service. If you did not indicate your faith group when you were admitted, you will not be allowed to attend religious services.

If the Department decides that you may not attend religious services with general population inmates, you will be told the reason at least 48 hours before the scheduled service.

If the Department learns information that causes it to decide that you may not attend that service less than 48 hours before the scheduled service, you will receive the notice less than 48 hours before the service. In that case, you have the right to receive a hearing and decision after the service, but within 48 hours after the determination was made that you could not attend.

If the Department receives such information less than 48 hours before the scheduled service, you will receive the notice, hearing and decision after the service.

You will be given the opportunity to challenge that determination before an impartial Adjudication Captain. You may appeal the Adjudication Captain's decision to the Board of Correction.

If the decision is upheld, you will receive a written notice giving the reasons for the decision and the length of time it will remain in effect.

You have the right to request reconsideration each week and to submit a written statement in support of your position. Your request will be considered by an impartial board or by the Warden, and you will receive a written reply.

Nothing in this procedure requires the Department to tell you the name of anyone who provided the Department with information on a confidential basis.

# SAFETY & VICTIMS' SERVICES

**General Safety Issues**

You have the right to be safe in jail. When you came in to the Department's custody you were asked whether you knew any reason why you may be at risk or need special security or protection from the general inmate population, such as:

- Having been assaulted, harassed, or coerced, sexually or otherwise, while in custody or during prior jail time
- Having been perceived as being gay, transgender, a cross dresser, or visibly feminine (if housed in the male population)
- Any other reason.

Even if you did not say anything when you first came into custody, it is never too late to ask for help. If you feel unsafe for any reason <u>at any time</u>, be sure to tell your housing officer. You can also tell a chaplain, counselor, or any other staff.

The Department has many different ways to address your safety needs in general population. This can include separating you from a specific person or persons who are threatening you, or moving you to a different housing area or jail. The Department also has housing areas called **General Population Escort**, which can be cells or dormitories, where inmates who are at risk for some reason receive all the rights and privileges of general population, but are provided additional safety protections. In these areas, inmates are housed and are escorted whenever they leave their housing area. Except for the escorts, these units are just like regular general population housing areas.

The Department also has **Close Custody/Protective Custody housing**, where inmates are housed in cells and kept safe by keeping them from having physical contact with any other inmates. The inmates get all services individually, often in their cells. Inmates receive at least one hour of recreation and all showers, visits, etc, and also dayroom time. But while they will only be confined to their cells for as much time is necessary to keep them separated from other inmates, they may have to be in their cell for most of the day. This housing is used only when the Department decides that no other housing will meet your safety needs.

If you or the Department thinks you may need housing in general population escort or close custody/protective custody, you will be transferred to close custody/protective custody housing while the Department evaluates your housing needs. A decision will be made within 2 business days as to the type of housing that is best for you. If the Department decides that Close Custody/Protective Custody housing is necessary, you will be asked whether you consent to that housing. If you don't consent, you will have a hearing.
Whether you consent or not, everyone in close custody/protective custody is reviewed every 28 days to determine whether they still need to be in that housing, or can be moved to a less restrictive unit. (See Close Custody for more information)

**You can also help yourself remain safe by:**
- Carrying yourself in a confident manner

- Never accepting gifts or favors from others including food, drugs, tobacco or other contraband
- NEVER accepting offers from another inmate to be your protector
- Finding a counselor, member of the clergy or medical or mental health staff with whom you feel comfortable discussing your fears and concerns
- Being direct and firm if others ask you to do something you don't want to do
- Staying in assigned areas of the institution
- Trusting your instincts. If you sense that a situation may be dangerous, it probably is

## Sexual Abuse

The DOC has a zero-tolerance for sexual abuse. Any type of sexual conduct or behavior is against DOC rules. Other inmates, DOC employees or anyone who works or volunteers in a jail may not ask, demand, force or participate in any sexual act with you.

If staff has any sexual contact with you it is wrong and they will be disciplined, including possible termination, and may be criminally prosecuted. The Department will discipline and prosecute any inmate who demands, coerces or forces you to have sexual contact with him/her. If you consent to sexual contact with another inmate, that sexual contact is against Department rules and both of you will be disciplined.

## What to do if you are the Victim of Sexual Abuse

If you have been or are being sexually abused in any way, by inmates or staff, you should notify the Department immediately so that you can receive help. Tell your housing area officer. You can also tell the Department of Investigation (at 212-266-1900), medical or mental health services, a chaplain, counselor, or any other staff. No reprisals of any kind will be taken against you for good faith reporting of sexual abuse or sexual threats.

You should also report immediately if you have seen or heard about staff having sex with other inmates or if you have seen or heard about someone else being sexually assaulted or threatened by a fellow inmate or staff.

All allegations of sexual abuse are reported to appropriate law enforcement officials and will be thoroughly investigated. Sexual predators will be disciplined and prosecuted.

If you report that you have been sexually assaulted, you will be offered immediate protection and referred for a medical examination and mental health services. Medical staff will check you for the presence of physical evidence of assault. The examination will be conducted privately and professionally. Medical staff also will examine you for injuries that may not be apparent to you. They can also check you for sexually transmitted diseases and will provide appropriate treatment for any injuries, or if you test positive for any STD's. You can access all of these services even if you are too afraid to make a report. You don't need to make a report to obtain help or treatment. You will also be referred to a chaplain.

You may also report the abuse in writing, or at any time after it occurs, no matter how much time has passed; but any delay in reporting an incident will make investigating the incident far more difficult. It is therefore recommended that your written statement follow after an

immediate verbal report.  Also you do not have to name your offenders but the more information you provide, the easier it will be for staff to help you.

Even though you may want to clean up after the assault, it is important to see medical staff **BEFORE** you shower, wash, drink, eat, change clothing or use the bathroom. Also, do not wash, destroy or discard the clothes and underwear you had on at the time of the assault, as these items may be used to collect evidence.

## Counseling for Victims of Sexual Abuse:

People need help to recover from the emotional effects of sexual abuse. If you are a victim of sexual abuse while in jail, or if you were victimized in the past, professional medical and mental health staff are available to provide treatment, as are facility chaplains.  Ask your housing officer or counselor for a referral.

## SANITATION

You must keep your cell and housing area clean.  The Department will provide each housing area with enough brooms, mops, soap powder or detergent, and other materials to clean and maintain the housing area, as long as providing those materials does not threaten the safety and security of the jail. Everyone in the housing area is expected to participate in keeping it clean.

## SIGNIFICANT FAMILY EVENTS

If you want to attend the funeral or wake of a family member or significant other (Eligible family members include: Parents, parents-in-law, grandparents, brothers, sisters, guardians and former guardians, children, grandchildren, children-in-law, spouses, including domestic partners if proof of relationship can be supplied, ancestral uncle or ancestral aunt,) or to visit a seriously sick relative on that list, you may ask the Department to allow you an escorted visit.  You must provide proof of your relationship to the sick or deceased relative. The Chief of the Department or his/her designee will allow you to attend unless the Department determines that you are a security risk.

The Counseling Unit in your jail can help you try to get the permission you need to attend such events.

You will wear civilian clothes when attending funerals or wakes or visiting sick relatives.

You may not attend both the funeral and wake of the same person.  The Chief of Department or his/her designee will consider your request to attend either the funeral or the wake but will make a final decision based on legitimate security concerns.

## SMOKING BAN

Smoking and tobacco related products are prohibited in all Department of Correction facilities. If you are found with any tobacco-related products you will be subject to discipline and possible arrest.

Tobacco related products include items like cigarettes, cigars, loose tobacco, chewing tobacco, and lighting materials such as matches or lighters.

If you experience nicotine withdrawal (sickness or discomfort because you are not able to smoke cigarettes), you can sign the daily sick call sheet in your housing area for medical services and/or counseling. You may be able to receive a nicotine patch from medical staff, which can help you with your nicotine withdrawal.

## SUICIDE PREVENTION

If you feel like hurting yourself, or you're feeling very depressed, or you think you might commit suicide, ask to see Mental Health Services immediately.

The Department of Correction is also asking you to help prevent other inmates from committing suicide. If you believe that another inmate is thinking about killing him or herself, please tell your housing area officer or any Department or medical staff member immediately.

Here are some ways that you can tell that someone might be thinking about committing suicide. He/She may:
- Begin giving things away or saying goodbye
- Try to hurt themselves
- Make threats to kill themselves
- Become depressed
- Have recently experienced the loss of someone close
- Had a romantic relationship end
- Received bad news through a visit or a telephone call.

People who may be at risk for suicide often show these signs after a visit, after court, after mail call, during the holidays, after phone calls, during the change of tour, on the midnight tour, or as a new admission. While the signs may also appear at other times, it is important to pay close attention at these times, as well.

## TELEPHONE CALLS

You may make telephone calls during all periods when you are not locked in your cell. Emergency calls may be made at any reasonable time. If you must make an emergency call to a number outside the United States, you may arrange with the facility's counseling staff to

make that call collect.  If those staff are not available, you may arrange the call through the facility chaplain.

If you receive an emergency telephone call, you will be allowed to take the call or a message will be taken for you and you will be permitted to return the call as soon as possible.

You are permitted to receive incoming calls from your attorney(s) of record regarding pending civil or criminal proceedings (including court-ordered telephone calls) or a message will be taken for you and you will be permitted to return the call as soon as possible.

If you are a detainee, you will be permitted to make one completed local telephone call at the Department's expense upon your admission to an institution.  Long distance telephone calls must be made collect or at your expense.

If you are a detainee and have funds in your commissary account when you make telephone calls the cost of the call will be deducted from your account.  If you have no funds in your commissary account you may make three (3) telephone calls per week unless you are housed in punitive segregation.  The Department will pay for these calls provided they are local and are each no longer than six (6) minutes long.  **The Department will withdraw the amount that you would have paid for those calls from any funds that are put in your commissary account afterwards, or if you are re-incarcerated and housed in a New York City Department of Correction facility.  Long distance telephone calls must be made collect or at your expense.**

If you are a sentenced inmate, you may make up to two (2) local phone calls each week to 212 or 718 area codes unless you are housed in punitive segregation, and if you have funds in your commissary account the cost of the call will be deducted from those funds.  If you have no funds in your commissary account, the Department will pay for these calls provided they are local.  These calls will be cut off after six minutes.  **The Department will withdraw the amount that you would have paid for those calls from any funds that are put in your commissary account afterwards, or if you are reincarcerated.  Long distance telephone calls must be made collect or at your expense.**

If you are in punitive segregation, you may make only one (1) free telephone call each week, excluding calls to your attorney or your attorney's office.  Your telephone rights may be limited if the Department decides that your using the telephone is a threat to the safety or security of the institution, or if you are abusing written telephone regulations.  If the Department decides to limit your telephone rights you will receive a written decision that states specific facts and reasons underlying that decision.

If you receive a decision limiting your telephone rights you may appeal that decision to the N.Y.C. Board of Correction.  You must write to the Board of Correction and the Warden or Commanding Officer of the facility to tell them of your intent to appeal the determination.  Note that you may first file a grievance, but if you appeal to the Board of Correction, your grievance request will not be considered.

All calls, except for calls with your attorney or other privileged calls, may be monitored and/or recorded by the Department for security purposes.  In order for your attorney and other privileged calls not to be monitored you must provide the Department with the phone numbers to which calls should not be monitored, and the Department will check that those numbers belong to attorneys or other persons with privileged contact with you.  Your use of the telephone in a Department facility constitutes your implied consent to such monitoring.

## VISITS

If you are a detainee, you are entitled to three (3) visits per "visit week" (i.e. Wednesday through Sunday) including at least one (1) visit on an evening or weekend. If you are a sentenced inmate, you are entitled to two (2) visits per "visit week", including at least 1 visit on an evening or weekend. Visits will last up to one hour. Additional visits for detainees and sentenced inmates will be provided in cases involving special needs, including but not limited to emergency situations and/or visits involving lengthy travel time.

Detainees and sentenced inmates are allowed to visit with up to three (3) visitors at the same time, without getting the facility's approval, but the number can be limited by the Facility for reasons such as lack of space. If there is a need, you may make a written request to the Warden to visit with more than three (3) visitors during one visit.

Any person that has been properly identified by the Visit Officer by showing valid identification, and who is 16 years of age or older will, with your consent, be permitted to visit.

Children under the age of 16 may visit, provided they are accompanied by a properly identified adult at least 18 years of age, who must remain with them for the duration of the visit. A person 16 or 17 years old may visit, but cannot act as an adult to accompany visitors under the age of 16 unless they are the parent of the child, and the inmate being visited is also the parent of the same child.

Any inmate is entitled to receive a visit within 24 hours after his/her initial admission to the Department's custody.

Visit schedules are posted in the visit rooms of each institution. In addition, the Department provides a means through which visitors may, by telephone, obtain current information about the visiting program, the jail in which you are housed, whether you will be available for a visit on a particular day, and how to reach the facility. The telephone number to call to obtain this information is **(718) 546-0700. Information is also available on the web at www.nyc.gov/boldest** Visitors with disabilities will be accommodated. Para-Transit vehicles are available to transport your visitors from the Control Building to your facility.

Your right to visit with a particular visitor may be denied, revoked or limited if the Department decides that your visiting with that visitor is a threat to the safety or security of visitors or the institution. This determination will be made by the Deputy Warden for Programs who will provide written notification and specific charges to you and your visitor.

Visitors are not permitted to bring into a jail any contraband, including illegal drugs, weapons, tobacco, and anything else that you are not permitted to have in the jail. Your visitors will be searched when they come to visit you, and they will be arrested if they are found with contraband. In addition they may not bring beepers, cell phones, cameras, recording devices, or any other electronic devices, or chewing gum. Lockers are available in front of the main Visit House where visitors can store these items before entering a departmental facility. In the Borough facilities, there are also lockers available at the facility's front gate where visitors can store the items listed above.

Your right to a contact visit may be denied, revoked, or limited when it has been determined that such visits constitute a serious threat to the safety or security of the jail. If the Department decides to deny, revoke, or limit your right to contact visits, you will have the opportunity to have the same number of visits in some other way, including but not limited to

non-contact visits. Before that decision is final, you will be provided with written notification of the specific charges and be afforded an opportunity to respond.

Contact visits between you and all of your visitors throughout the visiting period include holding hands, holding young children and kissing. For non-contact visits, you will speak with your visitor from a booth.

If either your privileges or your visitor's privileges have been denied, revoked or limited, you may appeal to the N.Y.C Board of Correction Any person doing so must give notice in writing to the Board of Correction and to the Warden of the facility. You may first file a grievance, but if you appeal to the Board of Correction as your first choice then you cannot go back and file a grievance.

## VOTING

1,    **YOU MAY VOTE while you are in jail** <u>unless</u>:

    a. You are now serving time for a felony conviction*;
    b. You are now on parole for a felony conviction*; or
    c. You are under 18 years old or not a U.S. citizen

*Your right to vote will be returned automatically when you finish your maximum prison sentence or are discharged from parole.

2.    **TO VOTE** while you are in jail, you must register to vote during the required time period that will be announced on Posters in your housing areas.

3.    **TO REGISTER TO VOTE:**
Voter Registration Forms are available in the Connections Book, the programs area, the chaplains' office, counseling unit, grievance office, the law library, and the program wagon. Fill out a Voter Registration form.

4.    You should put your permanent home address on the registration form, not the address of a correction facility. After you fill out the form, put it in the Outgoing Mailbox. This form does not need a stamp.

5.    **All voting in jail is by absentee ballot.** Absentee Ballot Applications are provided to all facilities prior to each primary and general election. They are available in the program area, the chaplains' office, counseling unit, grievance office and the law library. You must complete and mail applications to the Board of Elections by the due date. The Board of Elections will review their records and determine if you are eligible to vote. If you are eligible, they will issue an absentee ballot that will be delivered to you at the facility. You must complete the ballot and mail it back to the Board of Elections observing the deadline.

Signs are posted in the above areas to let you know when there is an election and the date when voter registration forms, absentee ballot applications and voting ballots must be returned.

Exhibit
B



**City of New York**
**Board of Correction**

## Complaint #2017/1716

### Complaint Information

*Name:* Cedric Reid

*Category:* Other

*Book and Case:* 241-16-06623

*NYSID:* 04552079P

*Description:*
Inmate stated that his pin number has been compromised at least five times and he's sure it must be because of officers giving it out. According to the caller he's had at least $12 used from his account.

*Received Date/Time:*
8/7/2017 8:54:00 AM

*Incident Date/Time:*
8/7/2017 8:54:00 AM

*Facility:*
GRVC

*Location:*

*Location Type:*

*Complaint By:*
Inmate

*Format:*
Phone

*COD #:*

*UOF #:*

*Entered By:*
CSC███

*Entered Date/Time:*
8/7/2017 8:59:45 AM

*Last Updated By:*
CSC███

*Last Updated Date/Time:*
8/7/2017 9:00:16 AM

### Tasks

| Task Type: | Assigned To: | Assigned By: | Priority: | Status: | Entered: |
|---|---|---|---|---|---|
| Investigate | DOI | ███ | Routine | Closed | 8/7/2017 8:59:45 AM |

*Task:*

*Actions:*



City of New York
**Board of Correction**

## Complaint #2018/0711

### Complaint Information

*Name:* Cedrick Reid

*Category:* Telephone

*Description:*
Update: 4/13/18

*Book and Case:* 241-16-06623

*NYSID:* 04552079P

Inmate phoned again to inquire about the status of this complaint. He advised that he was going to file an Article 78 because he has not yet received a response. Inmate noted complaint number, my name and shield number. He does not understand the call monitoring policy regardless of how much I tried to explain. ▮▮

Inmate is concerned that his calls are being recorded. As per the caller he believes that DOC is violating their policy by listening to calls that are not for security purposes.

*Received Date/Time:*
3/9/2018 12:05:00 PM

*Incident Date/Time:*
3/9/2018 12:05:00 PM

*Facility:*
GRVC

*Location:*

*Location Type:*

*Complaint By:*
Inmate

*Format:*
Phone

*COD #:*

*UOF #:*

*Entered By:*
CSC ▮▮▮

*Entered Date/Time:*
4/3/2018 1:58:01 PM

*Last Updated By:*
CSC ▮▮▮

*Last Updated
Date/Time:*
4/25/2018 3:01:56 PM

### Tasks

*Task Type:*
Investigate

*Assigned
To:*
▮▮▮

*Assigned
By:*
▮▮▮

*Priority:*
Routine

*Status:*
Submitted

*Entered:*
4/3/2018
1:58:01 PM

*Task:*
This complaint does not require any follow-up. Per policy, Mr. Reid's phone calls can be allowed by DOC, regardless of reason. There is no need to follow-up on this complaint.

*Actions:*

Exhibit
C

Cedric Reid #241 16 06623
G.R.V.C.
09-09 Hazen St.
E. Elmhurst, NY 11370

May 19, 2017

Securus Correctional
Billing Services
P.O. Box 1109
Addison, Tx   75001

Re. Notice of legal actions, 42 U.S.C. § 1983

Find enclosed are two (2) telephone receipts, the 1st is dated: 4/13/2017 and has nine (9) numbered telephone Nos. that I don't know of and the 2nd is dated: 5/4/2017 (see lower right hand corner), this one made fifteen (15) unapproved calls.

I want to know who made those calls and what house were they made from, what is the inmate's name, that made calls to those numbers, check frequent calls. See U in Court Crooks.

Your useless forms are also enclosed.
Reimbursement will <u>not</u> resolve this matter.

CC: Myself / Encl.

**NYC Department of Correction Inmate Phone Report**

Prepared for: CEDRIC REID
Book and Case Number: 2411606623
Date/Time of Report: 2017-05-04 08:47:10 EDT
This report includes all calls from 2017-04-27 00:00:00 through 2017-05-04 23:59:59

Number of Calls: 26

Total cost to inmate for these calls: $3.15

| Date | Start Time (ET) | End Time (ET) | Call Status | Duration of Call (hh:mm:ss) | Phone Number | Call Type | Cost to Inmate |
|---|---|---|---|---|---|---|---|
| 2017-04-28 | 19:19:35 | 19:20:11 | I | 00:00:00 | (917) 755-5919 | Debit | N/A |
| 2017-04-29 | 12:14:27 | 12:14:40 | I | 00:00:00 | (718) 801-5661 | NYC Free | N/A |
| 2017-04-29 | 12:14:40 | 12:15:04 | I | 00:00:00 | (347) 465-2821 | Option 2 | N/A |
| 2017-04-29 | 12:17:51 | 12:18:38 | I | 00:00:00 | (347) 465-5282 | Option 2 | N/A |
| 2017-04-29 | 12:20:04 | 12:25:40 | C | 00:05:36 | (347) 465-2821 | Option 2 | $0.75 |
| 2017-04-29 | 12:37:33 | 12:37:47 | I | 00:00:00 | (347) 465-2821 | Option 2 | N/A |
| 2017-04-29 | 12:38:07 | 12:38:22 | I | 00:00:00 | (347) 465-2821 | AdvanceConnect | N/A |
| 2017-04-29 | 12:39:01 | 12:39:20 | I | 00:00:00 | (347) 465-2821 | NYC Free | N/A |
| 2017-04-29 | 12:39:20 | 12:39:38 | I | 00:00:00 | (347) 465-2821 | NYC Free | N/A |
| 2017-04-29 | 12:42:34 | 12:43:14 | I | 00:00:00 | (347) 465-2821 | NYC Free | N/A |
| 2017-04-29 | 12:44:54 | 12:50:44 | C | 00:05:50 | (347) 465-2821 | NYC Free | N/A |
| 2017-04-29 | 13:31:31 | 13:31:47 | I | 00:00:00 | (718) 801-5661 | NYC Free | N/A |
| 2017-04-29 | 20:05:44 | 20:06:02 | I | 00:00:00 | (718) 576-8826 | Option 2 | N/A |
| 2017-04-30 | 05:35:41 | 05:36:17 | I | 00:00:00 | (917) 755-5956 | Debit | N/A |
| 2017-04-30 | 05:36:30 | 05:37:34 | I | 00:00:00 | (917) 755-5919 | Debit | N/A |
| 2017-04-30 | 05:59:55 | 06:01:00 | C | 00:01:05 | (212) 266-1900 | Free Call | N/A |
| 2017-04-30 | 11:39:09 | 11:53:40 | C | 00:14:31 | (917) 755-5919 | Debit | $1.20 |
| 2017-04-30 | 13:47:06 | 13:48:16 | I | 00:00:00 | (917) 755-5656 | Debit | N/A |
| 2017-04-30 | 14:10:46 | 14:11:35 | I | 00:00:00 | (917) 755-5919 | Debit | N/A |
| 2017-05-01 | 11:15:26 | 11:16:04 | I | 00:00:00 | (917) 755-5919 | Debit | N/A |
| 2017-05-03 | 05:08:46 | 05:09:25 | I | 00:00:00 | (917) 755-5919 | Debit | N/A |
| 2017-05-03 | 09:00:19 | 09:02:28 | I | 00:00:00 | (646) 796-4795 | Debit | N/A |
| 2017-05-03 | 09:04:14 | 09:19:00 | C | 00:14:46 | (917) 755-5919 | Debit | $1.20 |
| 2017-05-04 | 08:14:27 | 08:14:40 | I | 00:00:00 | (718) 888-8888 | NYC Free | N/A |
| 2017-05-04 | 08:15:46 | 08:16:07 | I | 00:00:00 | (718) 888-8888 | NYC Free | N/A |
| 2017-05-04 | 08:16:20 | 08:16:43 | I | 00:00:00 | (718) 888-8888 | NYC Free | N/A |

N/A = Not Applicable, meaning that the inmate was not charged for the call

Page 1 of 1

**NYC Department of Correction Inmate Phone Report**

Prepared for: CEDRIC REID
Book and Case Number: 2411606623
Date/Time of Report: 2017-04-13 10:25:32 EDT

**This report includes complete calls from 2017-04-06 00:00:00 through 2017-04-13 23:59:59**

Number of Calls: 13

Total cost to inmate for these calls: $8.25

| Date | Start Time (ET) | End Time (ET) | Call Status | Duration of Call (hh:mm:ss) | Phone Number | Call Type | Cost to Inmate |
|---|---|---|---|---|---|---|---|
| 2017-04-06 | 20:05:03 | 20:09:22 | C | 00:04:19 | (917) 755-5919 | Debit | $0.70 |
| 2017-04-09 | 18:49:43 | 19:04:43 | C | 00:15:00 | (917) 518-2704 | Debit | $1.20 |
| 2017-04-09 | 20:42:15 | 20:48:15 | C | 00:06:00 | (347) 984-5606 | AdvanceConnect | N/A |
| 2017-04-11 | 09:51:12 | 09:57:25 | C | 00:06:13 | (646) 943-2524 | Debit | $0.80 |
| 2017-04-11 | 09:58:54 | 10:06:30 | C | 00:07:36 | (917) 755-5919 | Debit | $0.85 |
| 2017-04-11 | 16:21:13 | 16:21:42 | C | 00:00:29 | (718) 928-3704 | Debit | $0.50 |
| 2017-04-11 | 20:09:08 | 20:24:08 | C | 00:15:00 | (347) 465-2821 | AdvanceConnect | N/A |
| 2017-04-11 | 20:26:04 | 20:32:04 | C | 00:06:00 | (347) 465-2821 | Debit | $0.75 |
| 2017-04-12 | 11:11:54 | 11:14:12 | C | 00:02:18 | (347) 465-2821 | Debit | $0.60 |
| 2017-04-12 | 11:19:03 | 11:28:11 | C | 00:09:08 | (347) 465-2821 | Debit | $0.95 |
| 2017-04-12 | 11:29:32 | 11:38:01 | C | 00:08:29 | (347) 465-2821 | Debit | $0.90 |
| 2017-04-12 | 11:55:12 | 11:55:15 | C | 00:00:03 | (347) 465-2821 | Debit | $0.50 |
| 2017-04-12 | 11:56:39 | 11:57:22 | C | 00:00:43 | (347) 465-2821 | Debit | $0.50 |

N/A = Not Applicable, meaning that the inmate was not charged for the call



# Fraud Investigation Form

**Fraud Investigation Form for all calls billed by Securus Correctional Billing Services (SCBS)**

I, _Cedric Reid_ (Print Full Name), am the customer of record and party responsible for telephone service _241 16 06623_ (Telephone Number) located at _G.R.Y.C., 09-09 Hazen St, E-Elmhurst, NY 11370_ (Complete Address).

I hereby affirm that I did not accept charges for, and no other person having access to my telephone account accepted charges for, the calls billed by SCBS and appearing on my above referenced telephone account.

This document authorizes SCBS to conduct a complete investigation to determine why these calls were billed to my account. I understand that in order to fully investigate this matter, SCBS may access call records, call recordings, or other records pertaining to my telephone account, and I authorize SCBS this access.

For security purposes, and to ensure additional calls are not placed against my account, I understand and agree that SCBS has blocked all future calls to my telephone account from correctional institutions served by SCBS. In the future, should I wish this block be removed, I understand I must contact SCBS at 800-844-6591.

I also understand that collection action may be taken for the charges associated with the SCBS calls appearing on my bill pending the outcome of the investigation. When SCBS has completed its investigation, my account will be updated with actions taken to address these disputes. The investigation could take up to 30 days to complete upon receipt of this form.

I understand and agree that completing this form does not absolve me from financial responsibility for the calls being investigated. This form provides the authorization for SCBS to research and investigate the calls appearing on the above referenced telephone account. If SCBS determines that the calls under investigation were accepted, I understand I will be responsible for the call charges. If SCBS determines the calls were not legitimate, proper adjustments will be made to my telephone account to remove the charges.

_Cedric Reid_
Customer of Record Printed Name

_Cedric Reid_                                   Date: _May 18, 2017_
Customer of Record Signature

Please return form:
By Fax: 972-277-0714
By Mail: Securus Correctional Billing Services, PO BOX 1109 , Addison TX 75001
By Email: customer_service@securustech.net
For investigation results, call 800-844-6591

Securus Correctional Billing Services is a division of Securus Technologies, Inc and T-Netix Telecommunications Services, Inc.                    CBSINV_0611

**SECURUS** Technologies
*connecting what matters*

# Inquiry Form

## Inquiry form for all calls billed by Securus Correctional Billing Services (SCBS)

I ___Cedric Reid___ (Print Full Name), am the customer of record and party responsible

for telephone service: _____ (Telephone Number)

located at: __O9-O9 Hazen St., E. Elmhurst, NY 11370__ (Complete Address);

Email Address: _____

I hereby affirm that I did not accept charges and no other person having access to my telephone account accepted charges for, the following calls billed to my above referenced telephone account:

Date:_____ Time:_____ From:_____

Date:_____ Time:_____ From:_____      *See attachment*

Date:_____ Time:_____ From:_____

This document authorizes SCBS to conduct a complete investigation to determine why these calls were billed to my account. I understand that in order to fully investigate this matter, SCBS may access call records, call recordings or other records pertaining to my telephone account and I authorize SCBS the access.

For security purposes, and to ensure additional calls are not placed against my account, SCBS has proposed to block all future calls to my telephone account from correctional institutions served by SCBS. I authorize SCBS to take the following action:

_____Yes, block my phone line from further inmate calls.

__✓__ No, do not block my phone line from further inmate calls, I understand I will be responsible for the changes associated with all accepted calls.

I also understand that collection action may be taken for the charges associated with the SCBS calls appearing on my bill pending the outcome of the investigation. However, payment for all other charges is due by the date listed on my telephone bill. When SCBS has completed their investigation my account will be updated with actions taken to address these disputes. The investigation could take up to 5 days to complete upon receipt of form.

I understand and agree that completing this form does not absolve me from financial responsibility for the calls being investigated. This form provides the authorization for SCBS to research and investigate the calls appearing on the above referenced telephone account. If SCBS determines that the calls under investigation were accepted, I understand I will be responsible for the call charges. If SCBS determines the calls were not legitimate, proper adjustments will be made to my telephone account to remove the charges.

Customer of Record Printed Name: __Cedric Reid__

Customer of Record Signature: __Cedric Reid__

Date: __5/18/2017__

**Submit your form via our website by attaching your form through our Ask A Question page**
**Fax your form to 972-277-0714**
**Mail form to PO Box 1109, Addison, Texas 75001 Attn: Inquiry Department**

®2015 SECURUS Technologies, Inc.

SCBS_FF_InquiryForm_0515



Dear Cedric Reid,

This letter is to inform you that we have received your letter dated 05/19/17.  We are returning your letter as this information is something that needs to be handled from the facility.  If your Pin number and/or Debit account was comprised they will have access to the information or they can request additional information.

Thank you for contacting Securus Correctional Billing Services.

NEW YORK NY 100

19 MAY 2017 PM 3 L

C. Reid #241 16 06623
G.R.V.C.
09-09 Hazen St.
E. Elmhurst, NY 11370

Securus Correctional Billing Services
P.O. Box 1109
Addison, Tx 75001

75001-110809

Exhibit
D

REID, CEDRIC
1000 GRAND CONCOURSE
BX      00000000
     NY    10451
24-JUN-62 B N M 5'8"   223   BRO   BLK
NY   NCIT N    00
REID-ALSTON, CHERYL
1000 GRAND CONCOURSE, , BX, NY
2411606623    04552079P    16-SEP-16

# Property Receipt

## A № 1510047 _____

**year**

- ☐ NYSID # _____
- ☐ Book and Case # _____
- ☐ Sentence # _____

CONTROL/CUFFLOCK#_____

**WHERE WAS PROPERTY TAKEN:**

☐ Admission    ☐ Housing Area - Specify: _____    ☐ Other - Specify: _____

Was this property taken on a search: ☐ Yes / ☐ No

| No. | I. Personal Items — Articles | No. | II. Clothing — Articles | Color | No. | III. Jewelry — Article | Description Y | W | CS |
|-----|------|-----|------|-------|-----|------|---|---|---|
| | Radio | | Coat/Jacket | | | Tooth Cap | | | |
| | Personal papers | 1 | Pants | | | Neck Chain | | | |
| | Pocketbook | | Belts | | | Earring | | | |
| | Gloves | 1 | Shoes/Sneaker | | | Charm | | | |
| | Glasses | 1 | Shirt/Blouse | | | Bracelet | | | |
| | Wig | | Skirt | | | Watch | | | |
| | Wallet | | Boots | | | Ring | | | |
| | Keys | | Hat | | | | | | |

| Identification: ☐ Yes ☐ No | On Person | Same Name? Y | N |
|-----|-----|-----|-----|
| U.S. Passport | | | |
| Green Card | | | |
| Driver's License | | | |
| Other Government-issued photo ID | | | |
| Birth Certificate | | | |
| Social Security Card | | | |
| Other: | | | |

**\*\*Please Note:**
Description Color:
Y-Yellow Metal
W-White Metal
CS-Color of Stone

**INSTRUCTIONS**
1. If you receive more than one (1) item on a line, (e.g., coat/jacket) circle appropriate item then enter the number.

| No. | IV. Miscellaneous — Article |
|-----|------|
| | |
| | |
| | |

☐ NO PROPERTY

**The above item(s) has been received from you because:**

☐ It is not on the list of items which are permitted in this facility
☐ The quantity is in excess of that allowed in this facility.
☐ It may create a health, safety or security hazard, and therefore, you are not permitted to have it in your possession.
☐ You have submitted the item to us voluntarily for safekeeping.
☐ Other _____

Signature of person taking property _____
Shield ID # _____
Print Name _____

X Cedric Reid
Signature of Inmate _____
Date _____
Time _____

**SEE APPEAL AND DISPOSAL PROVISIONS ON OTHER SIDE.**

Distribution:
**White** - Inmate Copy    **Yellow** - Duplicate (TO BE SECURED WITH PROPERTY)
**Green** - Inmate Legal Folder    **Blue** - Discharge Planning Center (UPON CITY SENTENCING)

## INMATE NOTICE OF APPEAL

If you believe the item(s) denied on this form are not related to an inmate and the NYC Department of Correction's policies and procedures, you may file an appeal through the Inmate Grievance Resolution Program using an Inmate Grievance Form. Inmate Grievance Forms are available from Grievance Representatives and/or the Housing Area officer.

## CLAIMING YOUR PROPERTY

You must claim your property and/or funds within 30 days of your discharge from the NYC Department of Correction (NYCDOC).

1. **If you were housed in a facility on Rikers Island** and you were not able to pick up your property and/or funds at the time of your discharge, you may return to Rikers Island at a later time providing you do so within 30 days of your discharge from NYCDOC. You do not need an appointment to pick up your valuable property (unless you were discharged from EMTC). To pick up bulk property and/or funds on Rikers Island you must first schedule an appointment for pick up by calling 311. Appointments are scheduled for three days after your call. If you are no longer in NYC, call 212-639-9675 to schedule the appointment for pick up. **If there is an emergency situation and you cannot wait for the appointment given to you by 311 please inform 311 that you require an accommodation.**

**You will not return to the facility where you were housed.** You will pick up your bulk property and/or funds from the Rikers Island Central Cashiers Office (CCO) and/or your valuable property from the Samuel Perry Control Building Valuable Property Pick up Area (SAM), both located on Rikers Island. The CCO is located inside the Central Visit House on Rikers Island and is open 24 hours a day, 7 days a week. You must pick up your property and/or funds within the 30 days of your appointment or you will have to make another appointment. You will pick up your valuable property 24 hours a day at Samuel Perry Control Building Valuable Property Pick up Area (SAM). The SAM is located inside the Samuel Perry Control Building and is also open 24 hours a day, 7 days a week. You must bring a picture identification (ID) with you to claim your property and/or funds. You may also select someone to pick up your property and funds. To do so, they must present a written authorization (letter) with your notarized signature specifically permitting them to claim your items and they must have a picture ID of themselves.

2. **If you were housed in a borough facility:** Vernon C. Bain Center (VCBC), Manhattan Detention Complex (MDC) or Brooklyn Detention Complex (BKDC) **you must claim your property and/or funds from that borough facility** within 30 days of your discharge from NYCDOC. **You are to contact the borough facility for their hours of operation (VCBC 718-579-8317, 8311; MDC 212-225-7413 or BKDC 718-797-8316)** and go to that borough facility for your property and/or funds. You are not to go to the CCO on Rikers Island for your property or call 311 for an appointment if you were housed in a borough jail. You must bring a picture ID with you to claim your property and/or funds. You may also designate someone to pick up your property and/or funds. To do so they must present a written authorization (letter) with your notarized signature specifically permitting them to claim your items and they must have a picture ID of themselves.

3. **If you were transferred to another jurisdiction or agency:** i.e. New York State Department of Correctional Services (state prison); Department of Homeland Security (formerly known as INS), Federal Bureau of Prisons or extradited to another state or country you must claim your property and/or funds within 30 days of your discharge from NYCDOC. If you are unable to pick up your property and/or funds yourself, you may select someone to pick them up for you. They will require a notarized letter from you authorizing them to pick up your property and a picture ID of themselves.

4. **If you are a relative or a domestic partner or a designee of someone who passed away while in the custody of the NYCDOC** you must claim the deceased's property and/or funds within 30 days of their death. You are to contact the Surrogate Court - Public Administrator, of the borough where the deceased last resided to obtain a Letter of Administration. A Letter of Administration will authorize you to pick-up the deceased inmate's property and/or funds. After obtaining the Letter of Administration you must call 311 to schedule an appointment to pick up the property and/or funds if the inmate was housed on Rikers Island. If the inmate was housed in a borough facility you are to contact the facility.

If the deceased did not reside in the City of New York, a Letter of Administration is to be obtained from the Public Administrator in the county of his/her residence. After obtaining the Letter of Administration you will follow the steps outlined above.

5. **If you are in NYCDOC custody and you would like an authorized individual to pick up your property while you are still incarcerated** you may obtain and complete a Property Release Form which authorizes someone of your choice to pick up your property. The form can be requested from your Housing Area officer, the Inmate Grievance Resolution Program or the Social Services area. Once completed the form can be given to any of the above areas for submission. You will be notified by the facility when approval has been granted for the property to be released. At that time, if you are housed in a Rikers Island facility you can notify your selected individual to contact 311 to schedule an appointment to pick up the property. If you are housed in a borough facility your selected individual is to contact the borough facility for their hours of operation.

---

## AVISO DE APELACIÓN A RECLUSOS

Si cree que el o los artículos indicados al reverso de este formulario no se han relatado de conformidad con las políticas y los procedimientos del Departamento de Correcciones de la Ciudad de Nueva York, puede presentar una apelación a través del Programa para Resolución de Reclamos para Reclusos mediante el Formulario de reclamos de reclusos. Puede obtener dichos formularios con los Representantes de reclamos y/o con el Funcionario del Módulo de Celdas.

## CÓMO RECLAMAR SUS PERTENENCIAS

Debe reclamar sus pertenencias y/o su dinero dentro de 30 días de su liberación del Departamento de Correccionales de la Ciudad de Nueva York (NYCDOC, por sus siglas en inglés).

1. **Si estuvo recluido en alguno de los centros de Rikers Island** y no pudo ir a buscar sus pertenencias y/o su dinero en el momento de su liberación, puede regresar a Rikers Island, siempre y cuando lo haga dentro de los 30 días siguientes a su liberación del Departamento de Correccionales de la Ciudad de Nueva York. No necesita una cita para ir a buscar sus pertenencias de valor (a menos que se le haya liberado del Centro Eric M. Taylor (EMTC, por sus siglas en inglés). Para ir a buscar grandes cantidades de dinero y/o pertenencias en Rikers Island, primero debe programar una cita llamando al 311. Las citas se otorgan tres días después de la llamada. Si ya no se encuentra en la Ciudad de Nueva York, llame al 212-639-9675 para programar la cita para ir a buscar sus pertenencias. **Si se presenta una situación de emergencia y no puede esperar hasta la cita programada por teléfono, informa al 311 para cambiar de día.**

**No podrá regresar al centro donde estuvo recluido.** Deberá ir a buscar su dinero y/o sus pertenencias en grandes cantidades en la Caja Central (CCO, por sus siglas en inglés) de Rikers Island y/o sus pertenencias de valor en el Área de Recolección de Pertenencias de Valor en el Edificio de Control Samuel Perry (o SAM), ambos ubicados en Rikers Island. La CCO está ubicada dentro de la Casa de Visitas Central en Rikers Island y atiende las 24 horas del día, los 7 días de la semana. Debe ir a buscar sus pertenencias y/o su dinero dentro de los tres días siguientes a su cita, de lo contrario, tendrá que programar otra. Puede ir a buscar sus pertenencias de valor en el Área de Recogida de Pertenencias de Valor del Edificio de Control Samuel Perry (SAM). El SAM está ubicado en el interior de Samuel Perry, que también atiende las 24 horas del día, los 7 días de la semana. Debe portar una identificación con fotografía para reclamar sus pertenencias y/o su dinero. También puede autorizar a otra persona para que las retire. Para hacerlo, dicha persona debe presentar una autorización por escrito (carta) con su firma autorizada ante un notario en la que se le autorice específicamente a reclamar sus objetos personales, y debe portar una identificación con fotografía.

2. **Si estuvo recluido en un centro del distrito:** Vernon C. Bain Center (VCBC), Manhattan Detention Complex (MDC) o Brooklyn Detention Complex (BKDC) debe reclamar sus pertenencias y/o su dinero de ese centro del distrito dentro de los 30 días posteriores a su liberación. **Debe llamar al centro del distrito durante su horario de atención (VCBC 718-579-8317, 8311; MDC 212-225-7413 o BKDC 718-797-8316),** acudir a dicho centro a retirar sus pertenencias y/o su dinero. **No debe acudir a la CCO de Rikers Island para retirar sus pertenencias ni llamar al 311 para programar una cita si estuvo recluido en una prisión del distrito.** Debe llevar una identificación con fotografía para reclamar sus pertenencias y/o su dinero. También puede designar a otra persona para que los retire. Para hacerlo, dicha persona debe presentar una autorización notariada por escrito (carta) con su firma en la que se le autorice específicamente para reclamar sus pertenencias, y debe portar una identificación con fotografía de ambos.

3. **Si lo transfirieron a otra jurisdicción o agencia** (es decir, Departamento de Servicios Correccionales del Estado de Nueva York (prisión estatal); Departamento de Seguridad Nacional (anteriormente conocido como INS); Oficina Federal de Prisiones); o lo extraditaron a otro estado o país, debe reclamar sus pertenencias y/o su dinero dentro de 30 días posteriores a su liberación del NYCDOC. Si no le es posible retirar sus pertenencias y/o su dinero, puede elegir a otra persona para que las retire. Necesitará una carta legalizada ante notario en la que usted la autorice a retirar sus pertenencias, y una identificación con fotografía de ambos.

4. **Si es pariente, pareja de hecho o representante de una persona que ha fallecido mientras se encontraba en custodia del NYCDOC,** debe reclamar las pertenencias y/o el dinero del difunto dentro de los 30 días siguientes a su fallecimiento. Debe ponerse en contacto con el Administrador Público del Tribunal testamentario del último distrito donde vivió el difunto para obtener el Auto de autorización del administrador, que lo autorizará para retirar las pertenencias y/o el dinero del recluso que falleció. Después de obtener el Auto de autorización del administrador, debe llamar al 311 para programar una cita para retirar las pertenencias y/o el dinero si el interno estaba recluido en Rikers Island. Si estaba recluido en un centro del distrito, debe ponerse en contacto con dicho centro.

Si el difunto no vivía en la Ciudad de Nueva York, el Auto de autorización del administrador se debe solicitar al Administrador Público del condado de su residencia. Después de obtener el Auto de autorización del administrador, deberá seguir los pasos anteriormente señalados.

5. **Si permanece bajo custodia del NYCDOC y desea que una persona autorizada retire sus pertenencias mientras usted sigue encarcelado,** puede obtener y llenar un Formulario de liberación de pertenencia que autoriza a una persona de su elección para que retire sus pertenencias. Puede solicitar el formulario a su Funcionario del Módulo de Celdas, al Programa de Resolución de Reclamos para Reclusos o al Área de Servicios Sociales. Una vez que haya completado el formulario, debe entregarlo a cualquiera de las áreas anteriores para su envío. El centro le notificará cuando se haya aprobado la liberación de las pertenencias. En ese momento, si está recluido en un centro de Rikers Island, deberá solicitar a la persona que ha elegido que llame al 311 para programar una cita para retirar sus pertenencias. Si está recluido en un centro del distrito, la persona seleccionada deberá ponerse en contacto con el centro del distrito durante su horario de atención.

Cedric Reid # 18 A 1936
Great Meadow C.F.
11739 State Route 22
Box 51
Comstock, New York 12821

October 27, 2020

U.S. Dist. Ct.
S.D. of New York
U.S. Courthouse
500 Pearl Street
New York, NY 10007

Re.: Newly Submitted 42 U.S.C. § 1983

Good Morning!

   Please find enclosed, is a Newly submitted 42
U.S.C. § 1983, with attachment exhibits A-D.
   I thank you for your time and patients in
this matter and I await your response.

PS: Have a Happy Holiday!

CC: Myself

Encl.






C. Reid # 18 A 1936
Great Meadow Corr. Fac.
11739 State Rt 22
PO Box 51
Comstock, NY 12821

United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

LEGAL MAIL

Pro Se    JvR

RECEIVED
SDNY PRO SE OFFICE
2020 NOV -4  AM 11:18

RECEIVED
2020 NOV -2  PM 2:10
CLERK'S OFFICE
S.D.N.Y.