UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CEDRIC REID,

                    Plaintiff,

                    -v.-

THE CITY OF NEW YORK; MARTHA W. KING;
CYRUS R. VANCE, JR.; LISA FRANCHINI;
NEW YORK COUNTY DISTRICT ATTORNEY'S
OFFICE; SECURUS TECHNOLOGIES; and
LAURA S. MELLO, *in their official and
individual capacities*,

                    Defendants.

---

20 Civ. 9243 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

     While awaiting trial in a city jail, Plaintiff Cedric Reid, who is proceeding

*pro se* in this action, made numerous nonprivileged phone calls to friends and

family, all of which were recorded.  The recordings of these calls were later

obtained by the prosecutor assigned to Plaintiff's case, and several of the

recordings were introduced at his trial.  Plaintiff was ultimately convicted, after

which he brought this civil rights action pursuant to 42 U.S.C. § 1983 and 42

U.S.C. § 1985(3), alleging that his phone conversations were recorded and

shared with prosecutors pursuant to an unconstitutional municipal policy

nominally aimed at ensuring jail security, but in fact motivated by a desire to

uncover evidence of crimes and facilitate criminal prosecutions (the "Policy").

     Defendants New York County District Attorney's Office (the "DA's Office"),

Cyrus R. Vance, Jr., and Lisa Franchini (together with the DA's Office and

Vance, the "DANY Defendants"); the City of New York (the "City"), Martha W.

King, and Laura S. Mello (together with the City and King, the "City Defendants"); and Securus Technologies ("Securus," and together with the DANY Defendants and the City Defendants, "Defendants") have filed separate motions to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, the Court grants the DANY Defendants' and City Defendants' motions to dismiss; deems Plaintiff's claims against Securus to be voluntarily dismissed; and dismisses the case in its entirety.

## BACKGROUND[1]

### A.    Factual Background

#### 1.    The Parties

Between September 16, 2016, and October 31, 2017, Plaintiff was a pretrial detainee held at the Vernon C. Bain Correctional Center ("VCBC"), a jail operated by the New York City Department of Correction ("DOC") in the Bronx. (AC I-II, VI).[2]  Plaintiff was initially detained pursuant to a parole warrant on

---

[1]    The facts in this Opinion are drawn primarily from Plaintiff's Amended Complaint (Dkt. #37 ("AC")), which is the operative pleading in this case.  The Court also sources additional facts, as appropriate, from the exhibits attached to the declaration of Robin A. McCabe submitted in support of the DANY Defendants' motion to dismiss ("McCabe Decl." (Dkt. #54)) and from Plaintiff's opposition to the City Defendants' motion to dismiss (Dkt. #70).

For ease of reference, the Court refers to the DANY Defendants' memorandum of law in support of their motion to dismiss as "DANY Br." (Dkt. #53); the City Defendants' memorandum of law in support of their motion to dismiss as "City Br." (Dkt. #58); Plaintiff's memorandum of law in opposition to the DANY Defendants' motion as "Pl. DANY Opp." (Dkt. #68); Plaintiff's memorandum of law in opposition to the City Defendants' motion as "Pl. City Opp." (Dkt. #70); the DANY Defendants' reply memorandum of law as "DANY Reply" (Dkt. #77); and the City Defendants' reply memorandum of law as "City Reply" (Dkt. #79).

[2]    The Amended Complaint begins with 13 "clarifications," which recite the basic factual background of Plaintiff's criminal prosecution, listed using Roman numerals.  (*See* AC I-XIII).  The remainder of the allegations in the Amended Complaint are listed using

September 16, 2016.  (*Id.* at I).  On February 24, 2017, Plaintiff was indicted by a grand jury on several felony counts (McCabe Decl., Ex. 1), and on March 13, 2017, he was arraigned and held on $75,000 bail (AC VII).  Plaintiff's jury trial began on October 25, 2017, and concluded with a guilty verdict on October 31, 2017.  (*Id.* at X–XI).  Plaintiff was later sentenced to 15 years' imprisonment followed by five years' post-release supervision (*id.* at XII), and had his conviction affirmed by a New York appellate court on September 30, 2021.  *See People* v. *Reid,* 153 N.Y.S.3d 468 (1st Dep't 2021).  Plaintiff is currently serving his sentence at the Greenhaven Correctional Facility in Stormville, New York.

At the time of Plaintiff's underlying criminal prosecution, Vance was the District Attorney for New York County charged with overseeing the DA's Office, and Franchini was an Assistant District Attorney who prosecuted Plaintiff's case on behalf of the DA's Office.  (AC 3).  King is the former Executive Director of New York City's Board of Correction.  (*Id.* at 2).[3]  Mello is a former records access officer who, as pertinent to the present case, handled two Freedom of Information Law ("FOIL") requests submitted by Plaintiff to the DOC.  (*Id.* at 2, 4; *see also id.* at ¶ 9).[4]  Securus is a company located in Dallas, Texas, that has contracted with the City to provide phone systems in DOC facilities.  (*Id.* at 3).

---

Arabic numerals.  (*See generally* AC 5–14).  The Court adopts the AC's numbering system when citing to this pleading.

[3]  Per its website, the Board of Correction "is a nine-person, non-judicial oversight board that regulates, monitors, and inspects the correctional facilities of the City."  *See About,* N.Y.C. BOARD OF CORRECTION, https://www1.nyc.gov/site/boc/about/about.page (last accessed July 26, 2022).  Among other mandates, the Board of Correction "[e]valuate[s] the performance of the" DOC.  *Id.*

[4]  *See* N.Y. Pub. Off. Law § 84 (declaring that the public "should have access to the records of government in accordance with the provisions of this article").

3

### 2.      The Policy

While awaiting trial at VCBC, Plaintiff made an unspecified number of

telephone calls to friends and family.  (AC ¶ 1).  On four occasions, prosecutors

in the DA's Office issued subpoenas *duces tecum* for Plaintiff's recorded jail

calls.  (*See* McCabe Decl., Ex. 2).  Only one of these subpoenas, dated

September 13, 2017 (or approximately one month prior to the start of Plaintiff's

criminal trial and one year after Plaintiff was first detained at VCBC), was

signed by Franchini.  (*Id.* at (a)).  In this subpoena, Franchini sought from DOC

"[a]ny and all call records, ... audio recordings, ... and visitor logs" for Plaintiff.

(*Id.*).  Franchini then introduced several of the recordings via a stipulation

signed by Franchini, Plaintiff, and Plaintiff's lawyer, which stipulation provided

that a DOC representative, if called, would testify that the recorded calls were

placed by someone using Plaintiff's jail identification number.  (McCabe Decl.,

Ex. 3; *see also id.*, Ex. 5 (transcript of Plaintiff's trial)).[5]  Plaintiff claims that he

was informed by DOC that his nonprivileged phone calls would be recorded for

security purposes (AC ¶ 1), but that Franchini requested, and the DOC

disclosed, the recordings of his phone calls despite the absence of any

"institutional security concerns" (*id.* at ¶ 5; *see also id.* at ¶ 13).

Plaintiff alleges that the facts of his case instantiate the broader alleged

municipal Policy that is at the heart of this case.  Per the Amended Complaint,

---

[5]      In his opposition to the DANY Defendants' motion, Plaintiff denies that he signed the
stipulation.  (Pl. DANY Opp. 14).  The stipulation does not affect the resolution of
Defendants' motions, and will not be discussed further.

the relevant starting point for understanding the Policy is 40 R.C.N.Y. § 1-

10(h), a provision of New York City's rules and regulations that provides:

> Upon implementation of appropriate procedures, prisoner telephone calls may be listened to or monitored only when legally sufficient notice has been given to the prisoners.  Telephone calls to the Board of Correction, Inspector General and other monitoring bodies, as well as to treating physicians and clinicians, attorneys and clergy shall not be listened to or monitored.

40 R.C.N.Y. § 1-10(h).  (*See, e.g.*, AC ¶¶ 3, 4, 6, 7).  Pursuant to this provision,

Plaintiff alleges that he and other pretrial detainees are informed via the DOC's

Inmate Handbook (the "Handbook") that: "All calls, except for calls with your

attorney or other privileged calls may be monitored and/or recorded by the

[DOC] for security purposes."  (*Id.* at ¶ 1; *see also id.*, Ex. A (Handbook) at 42-

43).  Plaintiff initially asserts in the Amended Complaint that his and other

pretrial detainees' phone calls are recorded not to ensure jail security, but to

uncover "investigative leads and inculpatory material."  (AC ¶ 1(a)).  Both later

in his pleading and in his opposition to the City Defendants' motion, however,

Plaintiff walks back his assertion that the calls are recorded for reasons

unrelated to institutional security, and claims only that the calls are *disclosed*

to the DA's Office and other prosecutors absent institutional security concerns.

(*See id.* at ¶ 5 (alleging that "non-privileged outgoing telephone calls … were

being handed-over to non-prison officials, absent and unrelated to institutional

security concerns"); Pl. City Opp. 7 (claiming that under the Policy, "telephone

recordings of pretrial detainees are provided to the DA's Office … without a

warrant and absent any institutional security concerns); *id.* at 9 (asserting that

"DOC is releasing to the DA and/or ADA … non-privileged outgoing telephone jail calls that are unrelated to institutional security related issues within DOC")).  Plaintiff further alleges in the Amended Complaint that the jail call recordings "can simply be requested and/or provided" to the DA's Office and used against criminal defendants as a matter of course in their criminal prosecutions.  (AC ¶¶ 11, 11(a); *see also id.* at ¶ 6 (alleging that phone recordings are "being released" to prosecutors "in any of the five" boroughs)).

Although Plaintiff does not allege the exact date when he first learned of the Policy, certain exhibits appended to the Amended Complaint suggest that he was informed approximately four days before his trial began that Franchini had acquired recordings of calls he had made at VCBC and intended to introduce them at his trial.  Specifically, the Amended Complaint attaches several emails that were exchanged between Franchini and Plaintiff's former criminal defense attorney, Michael Hurwitz, in advance of Plaintiff's criminal trial.  (*See* AC, Ex. F).[6]  In the first email, dated October 21, 2017, Franchini writes that "[a]s a professional courtesy, I would like to … direct your attention to the jail calls I intend to use on my direct case" and proceeds to list 15 dates and times corresponding to Plaintiff's recorded calls.  (*Id.* at 80).  Hurwitz responds the following day thanking Franchini for her email and asking if she has transcripts of Plaintiff's calls.  (*Id.* at 81).  Franchini then responds a few hours later, explaining that she does not have transcripts but that she is

---

[6]     The emails contained in Exhibit F are part of a single email chain that is not paginated. For ease of reference, the Court cites to these emails using the page numbers assigned by the Court's Electronic Case Filing ("ECF") system.

forwarding to Hurwitz her "rough" notes on the calls. (*Id.*). Lastly, Franchini follows up again that same day to alert Hurwitz that she will also seek "to introduce the call on 4/17/17 at 10:54." (*Id.*). In the call, Franchini explains, Plaintiff "asks his friend to call a phone number and pretend to be a corrections officer on Rikers and report that there has been a tragic accident at Rikers in order to find out who has been using his phone." (*Id.* at 82).

### 3. The Use of Plaintiff's Personal Identification Number

As previewed in Franchini's final email to Hurwitz, Plaintiff also puts forward several allegations relating to an incident involving the unauthorized use of his personal identification number ("PIN") by an unknown inmate during his pretrial detainment. (AC ¶ 10). According to Plaintiff, the City, King, and Securus declined to address these "criminal acts that were occurring directly under the nose of DOC," and his attempts to notify the Bronx District Attorney's Office and the DA's Office of the incident were unsuccessful. (*Id.*). The remainder of Plaintiff's allegations on this score are not entirely clear, but seem to suggest that the City's failure to address the situation "impelled" him "to alert friends and family, by way of telephone calls, to make statements, which may [have] been detrimental[.]" (*Id.*). Specifically, Plaintiff states that his calls "triggered Operations Order 384-395 [(the "Order")], which was [covertly] implemented by the [DA's Office] and carried-out by DOC and

[Securus]." (*Id.*).  Plaintiff does not, however, elaborate as to how his calls triggered the Order, what the Order is, or how the Order affected him.[7]

### 4.    Plaintiff's Freedom of Information Law Requests

Lastly, Plaintiff describes his experience filing two unsuccessful FOIL requests for documents related to the present case.  Plaintiff filed his first request on September 8, 2020.  (AC ¶ 9; *see also id.*, Ex. B at 65-66 (copy of request)).[8]  Among other things, Plaintiff sought the "[r]equest made by ... Franchini, to DOC's Deputy Commissioner for legal matters regarding [Plaintiff's] ... recorded calls[.]" (*Id.*, Ex. B at 65).  In response to this request, Plaintiff received a letter from Mello on September 16, 2020, acknowledging receipt of his request and assigning it FOIL #2021FR0404.  (*Id.* at ¶ 9; *see also id.*, Ex. B at 64 (copy of letter)).  At the time he filed the Amended Complaint, Plaintiff had not received any further correspondence from Mello with respect to this request (*id.* at ¶ 9(d)); but in his opposition brief to the City Defendants' present motion, Plaintiff states that he received responsive documents on September 14, 2021, by way of a response dated August 25, 2021.  (Pl. City Opp. 5; *see also id.*, Ex. 3 (copy of response)).

---

[7]     Plaintiff elaborates on, and purports to attach a copy of, the Order in his opposition brief.  (*See* Pl. City Opp. 27-28; *see also id.*, Ex. 5 (Order)).  Plaintiff asserts that the Order "is considered DOC's 'internal policy'" and that inmates are prohibited from accessing the Order.  (Pl. City Opp. 28).  He further observes that the Order provides that "inmate calls that are recorded and monitored shall be regarded as confidential material and shall not be released to the public." (*Id.*).  The remainder of Plaintiff's discussion of the Order is directed toward his legal claims, without further explanation of the relationship between the alleged misuse of his PIN and the Order.  (*See id.*).

[8]     Just as with the emails included in Exhibit F to the Amended Complaint, the documents comprising Plaintiff's two FOIL requests and the City's responses thereto are unpaginated.  (*See generally* AC, Ex. B-E).  In citing to these documents, the Court again refers to the page numbers generated by the ECF system.

Plaintiff submitted a second FOIL request on September 22, 2020.  (AC ¶ 9; *see also id.*, Ex. C at 68-69 (copy of request)).  As part of this request, Plaintiff sought the date and names of officials who were "involved in Operations Order 384-395 prior to its enactment[.]"  (AC, Ex. C at 69).  On September 28, 2020, Plaintiff again received a letter from Mello confirming receipt of his request and assigning it FOIL #2021FR0477.  (*Id.* at ¶ 9(b); *see also id.*, Ex. C at 68).  Thereafter, on September 28, 2020, Plaintiff received a second letter from Mello, asking him to "clearly explain 'operations order 384-395.'"  (*Id.* at ¶ 9(c); *see also id.*, Ex. D at 72).  Plaintiff responded to Mello's letter on October 12, 2020, but has not received any further correspondence from either her or anyone else.  (*Id.*; *see also id.*, Ex. D at 74).

## B.    Procedural Background

Plaintiff initiated this case with the filing of his initial complaint on October 27, 2020.  (Dkt. #1).[9]  On January 15, 2021, the Court dismissed Plaintiff's claims against Vance and Franchini pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A(a), which tasks district courts with screening complaints brought by prisoners who seek relief against a government entity or an officer or employee of a government entity.  (Dkt. #9).

---

[9]    Plaintiff's case was not docketed until November 4, 2020.  (Dkt. #1).  Under the "prisoner mailbox rule," however, "an inmate's papers are deemed filed the day that they are signed and given to prison officials for mailing."  *United States* v. *Resnick*, 451 F. Supp. 3d 262, 269 (S.D.N.Y. 2020); *see also Walker* v. *Jastremski*, 430 F.3d 560, 562 (2d Cir. 2005) (noting that the prisoner mailbox rule applies to civil complaints).  Thus, the Court deems Plaintiff to have filed the complaint on October 27, 2020, the day he handed the complaint to prison authorities to be mailed, rather than on November 4, 2020, the day the Court received it.  Consistent with the prisoner mailbox rule, the Court refers to the dates reflected on Plaintiff's subsequent filings in this case rather than the date the filings were docketed.

The Court found that Plaintiff's claims against these defendants were barred by prosecutorial immunity because they were based on actions within the scope of their official duties as prosecutors and associated with the conduct of a criminal trial. (*Id.* at 3). Finding no comparable barriers to the balance of Plaintiff's claims, the Court directed the U.S. Marshals Service to effectuate service on Securus and King and requested that the City waive service of summons. (*Id.*).

On March 15, 2021, Plaintiff moved for relief from the Court's January 15, 2021 Order pursuant to Federal Rule of Civil Procedure 60. (Dkt. #14). In a declaration submitted in support of his motion, Plaintiff stated that the Court's order dismissing his claims against Vance and Franchini was based on a "misimpression that said defendants are immune from suit[.]" (*Id.*). "[A] prosecutor is *not* entitled to absolute immunity when he or she is not acting as an officer of the court," Plaintiff asserted, "but is instead engaged in investigative or administrative tasks." (*Id.* (internal quotation marks omitted)). Plaintiff continued that "[h]ere, … the ultimate question is whether the prosecutor[s] have carried their burden of establishing that they were functioning as advocates when they engaged in the challenged conduct." (*Id.* (internal quotation marks omitted)). The Court denied Plaintiff's motion on March 23, 2021, stating that it found no error in its prior determination. (Dkt. #15).

Following the Court's resolution of Plaintiff's motion and the completion of service, the City Defendants filed a pre-motion letter on April 19, 2021,

seeking leave to file a motion to dismiss the complaint on several grounds. (Dkt. #19).  Previewing several of the arguments raised in their present motion, the City Defendants asserted that Plaintiff's claims were time-barred, failed to state a claim under 42 U.S.C. § 1983, and failed to allege King's personal involvement.  (*Id.*).  Securus followed suit on July 2, 2021, filing its own pre-motion letter seeking a conference to address its anticipated motion to dismiss. (Dkt. #26).  On July 6, 2021, the Court ordered the parties to appear for a telephonic pre-motion conference on September 1, 2021.  (Dkt. #28).

On June 28, 2021, Plaintiff filed a motion to amend his complaint and a proposed amended complaint, which motion the Court received on July 12, 2021.  (Dkt. #29).  The next day, the Court stated that it intended to discuss Plaintiff's proposed amended complaint at the conference scheduled for September 1, 2021, and invited Defendants to file a brief response to Plaintiff's request and proposed amended complaint by July 27, 2021.  (Dkt. #30).  Only Securus accepted the Court's invitation, submitting a second pre-motion letter arguing that the amended complaint failed to state a claim for substantially the same reasons as the initial complaint.  (Dkt. #31).

The Court accepted Plaintiff's proposed amended complaint at the telephonic conference held on September 1, 2021, and deemed it to be the operative pleading in this case.  (*See* Minute Entry for September 1, 2021; *see also* AC).  That same day, the Court ordered service of the Amended Complaint on the City Defendants and Securus.  (Dkt. #38).  By separate Order dated September 7, 2021, the Court addressed Plaintiff's reasserted claims against

11

the DANY Defendants.  (Dkt. #39).  In contrast with Plaintiff's initial complaint,
the Court found that the claims stated in the Amended Complaint cleared the
PLRA's screening threshold.  (*Id.* at 2-3 (citing 28 U.S.C. § 1915A)).  More
specifically, the Court found that Plaintiff had adequately alleged that Vance's
and Franchini's actions were "investigatory and administrative in nature and
thus not shielded by absolute [prosecutorial] immunity," such that Plaintiff
could "avoid the 'draconian' measure of pre-service dismissal."  (*Id.* at 3
(quoting *Benitez* v. *Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990))).  The Court
therefore directed the U.S. Marshals to effectuate service upon the DANY
Defendants.  (*Id.* at 3-4).

On October 13, 2021, in response to the DANY Defendants' request for a
conference to address motion practice, the Court dispensed with its
requirement of a pre-motion conference and set a briefing schedule for
Defendants' anticipated motions to dismiss the Amended Complaint.  (Dkt.
#47).[10]  Defendants filed their opening motions and supporting papers on
November 15, 2021.  (Dkt. #52-58, 60-62).  Plaintiff filed a brief in opposition
to the DANY Defendants' motion on January 14, 2022 (Dkt. #68), and a brief in
opposition to the City Defendants' motion on February 7, 2022 (Dkt. #70).  In a
separate motion received on February 18, 2022, Plaintiff moved to dismiss his

---

[10]   Ultimately, the Court granted the parties several extensions of the initial briefing
schedule.  (*See* Dkt. #66, 67, 75).  In large measure, these extensions were occasioned
by Plaintiff's difficulty in receiving appropriate access to his prison facility's law library.
(*See, e.g.,* Dkt. #66, 67, 69).  The Court has striven throughout this case to ensure that
Plaintiff has had sufficient access to the resources he needs to pursue his claims.
Considering the thorough submissions Plaintiff has filed in this case, the Court is
satisfied that Plaintiff received such access.

12

claims against Securus.  (Dkt. #71).  The DANY Defendants and City
Defendants (but not Securus) filed reply briefs on March 21, 2022.  (Dkt. #77,
79).  Accordingly, Defendants' motions are fully briefed and ripe for the Court's
decision.

## DISCUSSION

### A.   Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure
12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to
relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544,
570 (2007).  A claim is facially plausible "when the plaintiff pleads factual
content that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662,
678 (2009).  When evaluating the viability of a plaintiff's claim, the Court must
"draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded
factual allegations to be true, and determine whether they plausibly give rise to
an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir.
2011) (internal quotation marks omitted).  That said, the Court is "not required
to credit conclusory allegations or legal conclusions couched as factual
allegations." *Rothstein* v. *UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

"[C]ourts must construe *pro se* pleadings broadly, and interpret them 'to
raise the strongest arguments that they suggest.'" *Cruz* v. *Gomez*, 202 F.3d
593, 597 (2d Cir. 2000) (quoting *Graham* v. *Henderson*, 89 F.3d 75, 79 (2d Cir.
1996)).  "[D]ismissal of a *pro se* claim as insufficiently pleaded is appropriate

13

only in the most unsustainable of cases." *Sealed Plaintiff* v. *Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (quoting *Boykin* v. *KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008)).  "However inartfully pleaded, a *pro se* complaint may not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief." *Legeno* v. *Corcoran Grp.*, 308 F. App'x 495, 496 (2d Cir. 2009) (summary order) (internal quotation marks and alterations omitted) (quoting *Posr* v. *Ct. Officer Shield No. 207*, 180 F.3d 409, 413 (2d Cir. 1999)). "That said, the liberal pleading standard accorded to *pro se* litigants is not without limits, and all normal rules of pleading are not absolutely suspended." *Hill* v. *City of New York*, No. 13 Civ. 8901 (KPF), 2015 WL 246359, at *2 (S.D.N.Y. Jan. 20, 2015) (internal quotation marks and citation omitted). A *pro se* plaintiff's factual allegations still must at least "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

On a motion to dismiss, the Court may consider any written instrument attached to the complaint as an exhibit, any statements or documents incorporated by reference in the complaint, documents that are "integral" to the complaint even if they are not incorporated by reference, and matters of which judicial notice may be taken.  *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see generally United States ex rel. Foreman* v. *AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (discussing materials that may properly be considered in resolving a motion brought under Fed. R. Civ. P. 12(b)(6)); *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (same).  "In

evaluating the legal sufficiency of a *pro se* plaintiff's claims, a court may [also] rely on the plaintiff's opposition papers" to the extent they are consistent with the operative pleading. *Vlad-Berindan* v. *MTA N.Y.C. Transit*, No. 14 Civ. 675 (RJS), 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014) (collecting cites); *see generally Walker* v. *Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

Here, the Court considers several documents that are attached as exhibits to the Amended Complaint and that are deemed a part of Plaintiff's pleadings. *See* Fed. R. Civ. P. 10(c). These documents include: (i) the Handbook (*see* Handbook); (ii) the letters exchanged between Plaintiff and Mello concerning Plaintiff's two FOIL requests (AC, Ex. B-E); and (iii) the emails exchanged between Hurwitz and Franchini addressing Franchini's intent to introduce certain of Plaintiff's recorded phone calls into evidence at his criminal trial (*id.*, Ex. F). The Court also considers the factual allegations contained in Plaintiff's opposition papers to the extent they are consistent with the allegations set forth in the Amended Complaint.

The DANY Defendants also ask the Court to consider several records related to Plaintiff's underlying criminal case. (*See* DANY Br. 4-5 (arguing that Plaintiff's trial record "may be considered in testing the factual predicate of [P]laintiff's claims")); *see also* McCabe Decl., Ex. 1-5 (Dkt. #54)). These documents include: (i) Plaintiff's indictment (McCabe Decl., Ex. 1); (ii) the subpoenas *duces tecum* issued by Franchini to the DOC for Plaintiff's recorded phone calls (*id.*, Ex. 2); (iii) a stipulation signed by Plaintiff, Hurwitz, and Franchini, dated October 27, 2017, stating that "if a representative from the

[DOC] were called to testify" at trial, the representative would testify that Plaintiff was permitted to make calls using what is known as his "book and case number" and that certain of the calls the prosecutor intended to introduce were made using Plaintiff's book and case number (*id.*, Ex. 3); (iv) a transcript from Plaintiff's pretrial hearings, dated October 23, 2017 (*id.*, Ex. 4); and (v) transcripts from Plaintiff's trial, dated October 27, 2017 (*id.*, Ex. 5).

The DANY Defendants' documents are neither referenced in nor integral to the Amended Complaint, and the DANY Defendants do not identify a basis for the Court's consideration of them.  Nonetheless, the Court finds that the documents are public records and, as such, are proper subjects of judicial notice.  *See Rich* v. *New York*, No. 21 Civ. 3835 (AT), 2022 WL 992885, at *2 (S.D.N.Y. Mar. 31, 2022) (taking judicial notice of state court trial transcripts submitted by defendants as part of their motion to dismiss); *Blount* v. *Moccia*, No. 16 Civ. 4505 (GHW), 2017 WL 5634680, at *2 n.5 (S.D.N.Y. Nov. 21, 2017) (taking judicial notice of indictment).  The Court may consider these documents "not for the truth of the matters asserted in" them, but "rather to establish the fact of such litigation and related filings."  *Glob. Network Commc'ns, Inc.* v. *City of New York*, 458 F.3d 150, 157 (2d Cir. 2006); *see also Garnett* v. *City of New York*, No. 13 Civ. 7083 (JSR), 2014 WL 1383255, at *2 (S.D.N.Y. Apr. 4, 2014) (taking judicial notice of underlying criminal complaint and trial transcript in Section 1983 case and considering them not for their truth, but for the fact that such filings were made).

16

## B.    Analysis

Plaintiff brings claims pursuant to 42 U.S.C. § 1983 against the DANY Defendants and City Defendants for alleged violations of the First, Fourth, Sixth, and Fourteenth Amendments.  Plaintiff also brings (i) a claim for failure to train against the City and (ii) a separate conspiracy claim under 42 U.S.C. § 1985(3) against Vance and the City.  The Court addresses Defendants' separate motions to dismiss these claims in turn.[11]

### 1.    The DANY Defendants' Motion to Dismiss

The Court begins with the DANY Defendants' motion to dismiss all claims asserted against them.  In broad strokes, Plaintiff alleges that Vance is partly responsible for implementing the Policy and that Franchini carried out the Policy by seizing and searching his calls prior to his criminal trial.  The DANY Defendants move to dismiss these claims on several grounds, including that the claims are barred by the Eleventh Amendment and absolute prosecutorial immunity.  Because the Court agrees with the DANY Defendants on these threshold issues, it does not reach their remaining arguments.

---

[11]    In the Amended Complaint, Plaintiff also appears to assert a claim for failure to intervene against the City, King, and Securus based on the incident involving another inmate's use of his PIN.  (AC ¶ 10(a)).  In response to the City Defendants' motion to dismiss this claim (*see* City Br. 16-17), Plaintiff states in his opposition brief that he has "improperly stated a claim for failure to [intervene]" (Pl. City Opp. 16) and that his claim "can *not* stand" (*id.* at 18 (emphasis in original)).  Given Plaintiff's concession that the Amended Complaint does not state a plausible claim for failure to intervene, the Court deems the claim to be abandoned.  Further, Plaintiff has not plausibly alleged an underlying constitutional violation arising out of the alleged misuse of his PIN.  "[B]ecause there can be no failure to intervene where there was no constitutional violation," the Court would dismiss Plaintiff's failure to intervene claim irrespective of whether he abandoned it.  *Hardy* v. *Daly*, 748 F. App'x 379, 381 (2d Cir. 2018) (summary order) (internal quotation marks and alterations omitted).

17

### a.    Eleventh Amendment

The DANY Defendants first argue that all claims asserted against Vance and Franchini in their official capacities are barred by the Eleventh Amendment.  "The Eleventh Amendment generally bars suits against a state in federal court."  *Pikulin* v. *City Univ. of N.Y.*, 176 F.3d 598, 600 (2d Cir. 1999) (per curiam).  "When a defendant is sued in his official capacity, [courts] treat the suit as one against the 'entity of which an officer is an agent.'" *D'Alessandro* v. *City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) (summary order) (quoting *Kentucky* v. *Graham*, 473 U.S. 159, 165-66 (1985)).  "Thus, if a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her official capacity."  *Id.* (citing *Ying Jing Gan* v. *City of New York*, 996 F.2d 522, 536 (2d Cir. 1993), and *Baez* v. *Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988)).  By contrast, "if a suit centers 'on the administration of the district attorney's office' — that is, on the 'office policy' that the district attorney sets — then the district attorney is 'considered a municipal policymaker,' and the Eleventh Amendment does not immunize him from suit."  *Id.* (quoting *Ying Jing Gan*, 996 F.2d at 536).

Here, Plaintiff's claims against Vance arise out of his alleged role in implementing the Policy and thus are not barred by the Eleventh Amendment. *See Ying Jing Gan*, 996 F.2d at 53.  These claims are, however, properly construed as claims not against Vance himself, but against the City.  This is because "[s]uits against officers in their official capacity are directed at the office itself."  *Thomas* v. *DuBois*, No. 19 Civ. 7533 (KMK), 2020 WL 2092426, at

*4 (S.D.N.Y. Apr. 30, 2020) (quoting *Williams* v. *Annucci*, 895 F.3d 180, 187 (2d Cir. 2018)).  And claims against the DA's Office, in turn, "are treated as claims against the municipality itself[.]"  *Rabadi* v. *City of Yonkers*, No. 21 Civ. 1258 (VB), 2022 WL 889734, at *3 (S.D.N.Y. Mar. 25, 2022); *see also Bellamy* v. *City of New York*, 914 F.3d 727, 757-61 (2d Cir. 2019) (holding that the City is the proper policymaking authority for *Monell* claims); *Roland* v. *City of New York*, No. 19 Civ. 2240 (PKC) (SMG), 2019 WL 2357842, at *4 (E.D.N.Y. June 4, 2019) (stating that "[t]hough [p]laintiff focuses his allegations on the actions of the DA's Office, the proper defendant for such a claim is the City of New York"); N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law.").  The Court therefore addresses Plaintiff's claims against Vance based on his alleged role in implementing the Policy together with his identical claims asserted against the City.  *Cf. D'Alessandro*, 713 F. App'x at 8-9 (analyzing claims against a former district attorney "for actions taken administratively as municipal policymaker[ ]" alongside related claims asserted against the City).

On the other hand, Plaintiff's claims against Franchini in her official capacity, which arise out of her conduct in prosecuting his criminal case rather than any policymaking authority, are properly construed as claims against the state and are thus barred by the Eleventh Amendment.  *See D'Alessandro*, 713 F. App'x at 8 (explaining that where an "assistant district attorney acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her

19

official capacity"); *Rich*, 2022 WL 992885, at *5 (observing that "any claims

Plaintiff may raise against" two assistant district attorneys "in their 'official

capacity' would be precluded by immunity under the Eleventh Amendment");

*Nelkenbaum* v. *Jordy*, No. 19 Civ. 7953 (VB), 2020 WL 7630354, at *2 (S.D.N.Y.

Dec. 22, 2020) (dismissing claims asserted against an assistant district

attorney in her official capacity as barred by the Eleventh Amendment).

Accordingly, the Court dismisses Plaintiff's claims against Franchini in her

official capacity.[12]

### b.   Prosecutorial Immunity

Next, the DANY Defendants contend that Vance and Franchini are

absolutely immune from Plaintiff's claims against them in their personal

capacities.  "Prosecutors are generally immune from liability under 42 U.S.C.

§ 1983 for conduct in furtherance of prosecutorial functions that are intimately

associated with initiating or presenting the State's case." *Flagler* v. *Trainor*,

663 F.3d 543, 546 (2d Cir. 2011).  "The rationale for conferring absolute

immunity in such circumstances is that '[t]he public trust of the prosecutor's

office would suffer if [prosecutors] were constrained in making every decision

by the consequences in terms of [their] own potential liability in a suit for

---

[12]     In his opposition brief to the DANY Defendants' motion, Plaintiff seeks for the first time
to assert claims against a previous assistant district attorney assigned to his case, Amy
Hare.  (Pl. DANY Opp. 5-6).  Specifically, Plaintiff alleges that Hare "was also involved …
in a pretrial search and seizure" of Plaintiff's recorded phone calls.  (*Id.* at 5).  The Court
will not permit Plaintiff to name Hare as a defendant in this case because it finds that
any claim against her would be barred by prosecutorial immunity for the reasons just
stated.  *See* 28 U.S.C. § 1915A(a).

damages.'" *Shmueli* v. *City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (quoting *Imbler* v. *Pachtman*, 424 U.S. 409, 423 (1976)).

"In determining whether a prosecutor enjoys absolute immunity against any particular claim for damages, the courts are to apply a 'functional approach,' examining 'the nature of the function performed, not the identity of the actor who performed it.'" *Doe* v. *Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996) (quoting *Buckley* v. *Fitzsimmons*, 509 U.S. 259, 269 (1993)). "Those acts that are intimately associated with the judicial phase of the criminal process [are] shielded by absolute immunity[.]" *Warney* v. *Monroe Cnty.*, 587 F.3d 113, 121 (2d Cir. 2009) (internal quotation marks and citation omitted). By contrast, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are" entitled only to qualified immunity. *Buckley*, 509 U.S. at 273. To illustrate, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case." *Flagler*, 663 F.3d at 547 (internal footnotes omitted). Conversely, "the Court has withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness." *Id.* (internal footnotes omitted).

This case requires the Court to distinguish between a prosecutor's advocacy and investigative functions. As the Second Circuit has observed, not every "act by a prosecutor with the potential of revealing new information is an

investigative act entitled to only qualified immunity." *Giraldo* v. *Kessler*, 694 F.3d 161, 166 (2d Cir. 2012).  For example, acts "generally considered adjunct" to the judicial phase of a criminal proceeding, including "witness preparation, witness selection, and issuing subpoenas," have been found to fall within the scope of a prosecutor's advocacy responsibilities and are thus entitled to absolute immunity.  *See Simon* v. *City of New York*, 727 F.3d 167, 171 (2d Cir. 2013).  On the other hand, "[t]he investigative acts that are entitled to only qualified immunity are those undertaken in the phase of law enforcement that involves the gathering and piecing together of evidence for indications of criminal activities and determination of the perpetrators." *Giraldo*, 694 F.3d at 166.  By way of illustration, the active direction of a law enforcement investigation into a criminal suspect has been found to qualify as an investigatory function entitled only to qualified immunity.  *See Hill* v. *Donoghue*, 815 F. Supp. 2d 583, 586 (E.D.N.Y. 2011) (finding a federal prosecutor not absolutely immune from a claim that he directed law enforcement agents to conduct a warrantless search), *aff'd*, 518 F. App'x 50 (2d Cir. 2013) (summary order).

Here, Plaintiff's claims against Franchini identify only acts that fall comfortably within the range of activities that are "integral to the advocacy function[.]" *See Warney*, 587 F.3d at 115.  Pointing to the emails exchanged between Franchini and Hurwitz, Plaintiff alleges that Franchini "initiated a warrantless 'search and/or seizure' of the Plaintiff's outgoing telephone non-privileged calls … to obtain evidence that can be used against the Plaintiff[.]"

(AC ¶ 13 (citing *id.*, Ex. F)).  As alleged, Franchini's warrantless search and seizure consisted of subpoenaing recordings of Plaintiff's phone calls prior to trial, listening to them, and then successfully admitting them into evidence. (*See id.* at ¶¶ 13-14).[13]  Each of these alleged acts is constitutive of Franchini's role as an advocate of the state and shielded by absolute immunity.  *See Golian* v. *N.Y.C. Admin. for Child. Servs.*, 282 F. Supp. 3d 718, 726 (S.D.N.Y. 2017) (stating that "[i]ssuing a subpoena for a witness at a court hearing is plainly part of the prosecutorial function"); *Delano* v. *Rendle*, No. 13 Civ. 70 (NAM) (TWD), 2015 WL 1506079, at *7 (N.D.N.Y. Mar. 31, 2015) (finding that an assistant district attorney's "request for, and receipt of, Plaintiff's medical records was a part of his trial preparation and thus clearly associated with the judicial phase of the criminal process regarding the indictment against Plaintiff, and not as an investigatory function").  Absent from the Amended Complaint is any allegation that Franchini led or even participated in the investigation that culminated in Plaintiff's arrest, or that she was otherwise

---

[13]   Plaintiff alleges for the first time in his opposition brief that Franchini should further be held liable for abuse of process.  (*See* Pl. DANY Opp. 12-13).  In connection with this purported claim, Plaintiff alleges that Franchini's subpoena for his recorded phone calls improperly directed the recordings to be disclosed directly to the DA's Office on a date on which Plaintiff was not scheduled to appear in court.  (*Id.* at 9-11).  This claim rests on facts not alleged in the Amended Complaint, and as such is not properly before the Court.  *See Vlad-Berindan* v. *MTA N.Y.C. Transit*, No. 14 Civ. 675 (RJS), 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014) (explaining that "a court may rely on the [*pro se*] plaintiff's opposition papers," but only to the extent the factual allegations contained in the papers "are consistent with those contained in the complaint").  Further, in contrast with Plaintiff's cited case, *Rodrigues* v. *City of New York*, 602 N.Y.S.2d 337 (1st Dep't 1993), in which "no Grand Jury had been convened and that defendants are alleged to have used the subpoenas for the purpose of conducting their own investigation into plaintiffs' affairs," Franchini issued the subpoenas in this case after Plaintiff had been indicted and shortly before his trial began.  (*Compare* McCabe Decl., Ex. 2 (subpoena dated September 13, 2017), *with* AC ¶ X (stating that Plaintiff's trial began on October 25, 2017)).

involved in the "gathering and piecing together of evidence for indications of criminal activities and determination of the perpetrators." *Giraldo*, 694 F.3d at 166. For these reasons, Plaintiff's claims against Franchini in her personal capacity are barred by absolute prosecutorial immunity and dismissed.[14]

To the extent Plaintiff has alleged Vance's personal involvement in the conduct discussed above, his claims are barred for the same reasons. *See D'Alessandro*, 713 F. App'x at 8 (dismissing claims against former district attorney in his personal capacity for similar reasons). Thus, the Court also dismisses Plaintiff's claims against Vance in his personal capacity.[15]

### 2. The City Defendants' Motion to Dismiss

The Court now turns to the City Defendants' motion to dismiss. Like the DANY Defendants, the City Defendants move to dismiss each of Plaintiff's claims asserted against them. In contrast with the DANY Defendants, however, the City Defendants do not identify any immunity that would shield them from Plaintiff's claims. Instead, the City Defendants argue that (i) all of Plaintiff's

---

[14]  As above, Plaintiff's claims raised for the first time in his opposition brief against Hare fail for the same reasons. *See supra* n.12.

[15]  Even if Plaintiff's claims against Vance in his personal capacity were not barred by prosecutorial immunity, the Court would dismiss them for lack of personal involvement. As noted in the prior section of this Opinion, Plaintiff's claims against Vance seek to hold him liable for his alleged role in implementing the Policy. (*See* AC ¶ 11). These claims do not suffice to meet Plaintiff's burden of alleging that Vance himself violated his constitutional rights. *See Tangreti* v. *Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020); *see also Falls* v. (*Police Officer) Detective Michael Pitt*, No. 16 Civ. 8863 (KMK), 2021 WL 1164185, at *32 (S.D.N.Y. Mar. 26, 2021) (observing that in *Tangreti*, the Second Circuit did away with "'the special standards for supervisory liability'" set forth in a prior decision that had allowed Section 1983 plaintiffs to state a claim by alleging, among other things, that a defendant created a policy or custom under which unconstitutional practices occurred); *see also Roland* v. *City of New York*, No. 19 Civ. 2240 (PKC) (SMG), 2019 WL 2357842, at *4 (E.D.N.Y. June 4, 2019) (dismissing similar claims brought against district attorney in his personal capacity for lack of personal involvement).

claims are untimely, (ii) the Court lacks jurisdiction over his claims against Mello, and (iii) the remainder of his claims are implausible as a matter of law. As explained below, the Court finds that Plaintiff's claims are timely but inadequately stated.  The Court therefore declines to reach the City Defendants' alternative argument that Plaintiff has not alleged King's personal involvement.

a. **Timeliness**

The City Defendants' first argument is that Plaintiff's claims are untimely.  As all parties in this case agree, Plaintiff's claims under Sections 1983 and 1985(3) are subject to three-year limitations periods.  *See Lucente* v. *Cnty. of Suffolk*, 980 F.3d 284, 308 (2d Cir. 2020) (Section 1983); *Cornwell* v. *Robinson*, 23 F.3d 694, 703 (2d Cir. 1994) (Section 1985).  A claim accrues under both statutes "when the plaintiff knows or has reason to know of the harm." *Helwing* v. *Pszeniczny*, No. 21-843, 2022 WL 610341, at *2 (2d Cir. Mar. 2, 2022) (quoting *Eagleston* v. *Guido*, 41 F.3d 865, 871 (2d Cir. 1994)).[16] In determining when a plaintiff has sufficient knowledge to trigger the accrual of his claim, "[t]he proper focus is on the time of the [unlawful] act, not the point at which the consequences of the act become painful.'" *Ognibene* v. *Niagara Cnty. Sheriff's Dep't*, 117 F. App'x 798, 799-800 (2d Cir. 2005) (summary order) (quoting *Eagleston*, 41 F.3d at 871).

---

[16]     The same federal legal standards govern the accrual of claims brought under both Section 1983 and Section 1985.  *See Cornwell* v. *Robinson*, 23 F.3d 694, 703 (2d Cir. 1994).  Given that the factual allegations underpinning Plaintiff's claims under the two statutes are identical, the Court does not further distinguish between the two claims in this portion of the Opinion.

Plaintiff initiated this case on October 27, 2020, and the parties agree that his claims must therefore have accrued no later than October 27, 2017, to be timely.  The City Defendants contend, however, that Plaintiff's claims accrued far earlier than that date.  (City Br. 6-8).  In their view, Plaintiff's claims accrued more than a year earlier, on October 9, 2016, which is the "first alleged date [Plaintiff] used a DOC telephone and thus consented to its monitoring."  (*Id.* at 7).  Alternatively, the City Defendants argue that Plaintiff's claims accrued on October 21, 2017, when Franchini notified Hurwitz that she intended to introduce Plaintiff's recorded phone calls at trial.  (*Id.*).  "As such," the City Defendants conclude, "Plaintiff knew or should have known of the harm more than three years before he commenced the instant action."  (*Id.*).

In opposition, Plaintiff asserts that his claims did not accrue until October 27, 2017 (*i.e.*, the last possible date when his claims could have accrued and still be timely).  (Pl. City Opp. 2).  According to Plaintiff, it was not until that date that the recordings of his phone conversations were played for the jury at trial and he was able to "actually hear[ ] and recognize[ ]" his conversations with his family and friends.  (*Id.*).  Seeking to brush aside the City Defendants' observation that Franchini had informed Plaintiff of her intent to introduce the recordings prior to trial, Plaintiff asserts that "Franchini merely discussed presenting" the calls, "but no recordings were heard in open court, only times and dates at most, allegations, nothing tangible."  (*Id.*).

At the outset, the Court rejects the City Defendants' argument that Plaintiff's claims accrued at the time he made the phone calls that were

26

recorded and later introduced against him at trial.  The City Defendants contend that because Plaintiff "had notice via his Inmate Handbook" that his conversations would be recorded, his claims arising out of those recordings accrued at the time he made the calls.  (City Br. 7).  But this argument misapprehends the nature of Plaintiff's claims in this case.  Plaintiff is not mounting a facial challenge to the recording of pretrial detainee's phone calls. Rather, he alleges that Defendants have exceeded the scope of their authorization to record such calls for security purposes by disclosing the calls to the DA's Office "absent and unrelated to institutional security concerns." (AC ¶ 5).  In this context, Plaintiff's claims did not accrue when he learned that his calls would be recorded for security purposes, but instead when he later learned that Defendants had exceeded the scope of that stated rationale.

The Court declines to wade further into the parties' warring arguments because it finds that Plaintiff's claims are timely according to either side's account of the relevant events.  Although not discussed in the parties' briefs, Plaintiff's claims are subject to New York's special tolling rules occasioned by the COVID-19 pandemic.  Specifically, on March 20, 2020, "the Governor of New York issued Executive Order 202.8, which tolled 'any specific time limit for the commencement, filing, or service of any legal action' in light of COVID-19." *Rivera* v. *City of New York,* No. 20 Civ. 9968 (GHW), 2022 WL 1523165, at *4 (S.D.N.Y. May 13, 2022) (quoting N.Y. Exec. Order 202.8 (March 20, 2020)). "The tolling period was later extended to November 3, 2020."  *Id.* (citing N.Y. Exec. Order 202.67 (Oct. 4, 2020)).  "[C]ourts in this district have uniformly

concluded that Executive Order 202.8 applies to federal cases applying New York's statute of limitations, including for [Section] 1983 claims." *Rich*, 2022 WL 992885, at *8 (applying the same tolling rule to a claim under Section 1985(3)); *Sher* v. *City of New York*, No. 21 Civ. 1339 (DLC), 2022 WL 1294395, at *3 (S.D.N.Y. Apr. 29, 2022) (explaining that "[b]ecause claims under [Section] 1983 are subject to state tolling rules, the statute of limitations on the plaintiff's claims was tolled during this 228-day period" by Executive Order 202.8). Thus, even assuming the City Defendants are correct that Plaintiff's claims accrued on October 21, 2017, Plaintiff's claims are still timely.

Accordingly, the Court denies the City Defendants' motion to dismiss Plaintiff's claims on timeliness grounds.

### b.    Plaintiff's Claim Against Mello

The City Defendants next challenge Plaintiff's claim based on Mello's alleged failure to respond to his two FOIL requests. (*See* AC ¶ 9). The City Defendants argue that this claim must be dismissed because "it is well established that this Court … do[es] not have jurisdiction over state law FOIL claims." (City Br. 8). Although the Court does not frame its decision in jurisdictional terms, it agrees that Plaintiff's claim must be dismissed.

Preliminarily, the legal basis for Plaintiff's claim against Mello is not immediately apparent. In the Amended Complaint, Plaintiff alleges that Mello violated a provision of the FOIL statute that provides that "[a]ny person who, with intent to prevent the public inspection of a record pursuant to [the statute], willfully conceals or destroys any such record shall be guilty of a

28

violation."  (AC ¶ 9(e) (citing N.Y. Pub. Off. Law § 89(8)).  But Plaintiff does not allege anywhere in the Amended Complaint that Mello actually concealed or destroyed documents.  Instead, his factual allegations suggest only that Mello did not produce any of the documents described in Plaintiff's requests. Plaintiff's opposition brief, meanwhile, alters course and recasts his claim as a claim under the First Amendment based on Mello's alleged withholding of "information that was sought-after in his FOIL."  (Pl. City Opp. 4-6).

Whether construed as a claim under the First Amendment or under the FOIL itself, Plaintiff's claim against Mello must be dismissed.  To the extent Plaintiff alleges that Mello's actions violated his rights under the First Amendment, such a claim is foreclosed by a long line of precedent holding "that FOIL violations do not constitute federal constitutional claims sufficient to" state a claim pursuant to Section 1983.  *Geer* v. *Pheffer*, No. 14 Civ. 2829 (CBA), 2015 WL 332996, at *3 (E.D.N.Y. Jan. 23, 2015) (collecting cites); *see also Ladeairous* v. *Att'y Gen. of N.Y.*, 592 F. App'x 47, 48 (2d Cir. 2015) (summary order) (holding that defendants' failure to respond to plaintiff's FOIL request "did not violate his First Amendment right to petition because "[n]othing in the First Amendment ... suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications"); *Simpson* v. *Town of Southampton*, No. 06 Civ. 6743 (JFB) (WDW), 2007 WL 1755749, at *4 (E.D.N.Y. June 15, 2007) (explaining that "[a] failure to comply with FOIL procedures does not, in and of itself, violate any rights protected by the First Amendment").

Similarly, to the extent Plaintiff bases his claim on a violation of FOIL itself, such a claim also runs afoul of well-settled law.  "Under New York state law, if an agency or government official fails to comply with the provisions of FOIL, the person submitting the FOIL request must pursue an administrative appeal or seek remedies in state court pursuant to N.Y. C.P.L.R. Article 78." *Posr* v. *City of New York*, No. 10 Civ. 2551 (RPP), 2013 WL 2419142, at *14 (S.D.N.Y. June 4, 2013), *aff'd sub nom. Posr* v. *Ueberbacher*, 569 F. App'x 32 (2d Cir. 2014) (summary order); *see also Jaegly* v. *Couch*, 168 F. App'x 480, 482 (2d Cir. 2006) (summary order) (observing that plaintiff "did not appeal the denial of access to any records via an Article 78 proceeding, and thus has failed to state a violation of his constitutional rights").  Here, Plaintiff does not allege that he has pursued either remedy.  Accordingly, the Court grants the City Defendants' motion to dismiss Plaintiff's claims against Mello.

### c.    Plaintiff's Section 1983 Claims

The Court now turns to the heart of the City Defendants' motion.  The City Defendants argue that Plaintiff has failed to plausibly allege a violation of his rights under the (i) First Amendment; (ii) Fourth Amendment; (iii) Sixth Amendment; (iv) Due Process Clause of the Fourteenth Amendment; or (v) Equal Protection Clause of the Fourteenth Amendment.  By extension, the City Defendants contend that Plaintiff's failure to allege a constitutional violation necessarily precludes him from maintaining his derivative failure-to-train and failure-to-intervene claims.  The City Defendants separately argue that, even assuming Plaintiff has alleged a constitutional violation, he has not

30

sufficiently alleged King's personal involvement to maintain his claims against her.

The Court begins by outlining the applicable legal standards before analyzing Plaintiff's claims.  Ultimately, the Court finds that Plaintiff has not pleaded a plausible constitutional violation against the City or King, and therefore dismisses each of his claims asserted under Section 1983.

### i.    Applicable Law

Section 1983 establishes liability against any person who, under the color of state law, causes the deprivation "of any rights, privileges, or immunities secured by the Constitution."  42 U.S.C. § 1983.  Section 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere."  *Swinson* v. *City of New York*, No. 19 Civ. 11919 (KPF), 2022 WL 142407, at *4 (S.D.N.Y. Jan. 14, 2022) (quoting *City of Okla. City* v. *Tuttle*, 471 U.S. 808, 816 (1985)).  A "[Section] 1983 claim has two essential elements: [i] the defendant acted under color of state law; and [ii] as a result of the defendant's actions, the plaintiff suffered a denial of h[is] federal statutory rights, or h[is] constitutional rights or privileges."  *Annis* v. *Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).

"To state a claim for liability under [S]ection 1983 against a government official sued in his or her individual capacity, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *McCluskey* v. *Roberts*, No. 20-4018, 2022 WL 2046079, at *3 (2d Cir. June 7, 2022) (summary order) (quoting *Tangreti* v.

*Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020)).  Failing to allege that a defendant was personally involved in, or responsible for, the alleged constitutional violation renders a complaint "fatally defective on its face." *Alfaro Motors, Inc.* v. *Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted); *see also Dubois* v. *Beaury*, No. 21-2096, 2022 WL 1701497, at *4 (2d Cir. May 27, 2022) (stating that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983" (internal quotation marks omitted)).

Claims asserted under Section 1983 against a municipal entity, such as the City, must satisfy additional pleading standards.  "[M]unicipalities may be sued directly under [Section] 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision." *Batista* v. *Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (citing *Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)).  Under *Monell* and its progeny, municipalities are not subject to liability for Section 1983 claims under a theory of *respondeat superior*, but rather on the basis that their policies or customs inflicted the alleged injuries.  *Id.*

To establish a claim for *Monell* liability, a plaintiff must show that the municipal entity "had [i] an official policy or custom that [ii] caused him to be subjected to [iii] a denial of a constitutional right." *Torcivia* v. *Suffolk Cnty., N.Y.*, 17 F.4th 342, 354 (2d Cir. 2021) (internal quotation marks and alterations omitted).  A plaintiff may show the existence of such a policy or custom by identifying any of the following: (i) an express policy or custom;

(ii) an authorization of a policymaker of the unconstitutional practice; (iii) a failure of the municipality to train its employees that exhibits a "deliberate indifference" to the rights of its citizens; or (iv) a practice of the municipal employees that is "so permanent and well settled as to imply the constructive acquiescence of senior policymaking officials." *Corley* v. *Vance*, 365 F. Supp. 3d 407, 438 (S.D.N.Y. 2019), *aff'd sub nom. Corley* v. *Wittner*, 811 F. App'x 62 (2d Cir. 2020) (summary order); *see also Outlaw* v. *City of Hartford*, 884 F.3d 351, 372-73 (2d Cir. 2018) (discussing the *Monell* predicates in greater detail).

### ii.  Due Process

Taking Plaintiff's claims in the order they are presented in the Amended Complaint, the Court begins with Plaintiff's claim that the Policy violated his due process rights under the Fourteenth Amendment.  Plaintiff advances two theories in support of his claim.  Plaintiff first asserts that 40 R.C.N.Y. § 1-10(h) — which, as noted earlier, provides that "prisoner telephone calls may be listened to or monitored only when legally sufficient notice has been given to the prisoners" — violates "the classical notice doctrine for vagueness[.]"  (AC ¶ 3).  Next, Plaintiff alleges that the City failed to provide him with the process due to him under 40 R.C.N.Y. § 1-10(i).  (*Id.* at ¶ 7).  As explained below, neither of Plaintiff's claims clears the pleading threshold.[17]

---

[17]    Plaintiff separately argues that the Policy violated his substantive due process rights by imposing restrictions that were not "reasonably related to the only legal purpose of confinement, *i.e.*, assuring attendance at trial."  (AC ¶ 2).  After the City Defendants moved to dismiss this claim (City Br. 9-11), Plaintiff abandoned it in his opposition brief.  *See Black Lives Matter* v. *Town of Clarkstown*, 354 F. Supp. 3d 313, 328 (S.D.N.Y. 2018) (explaining that "[t]he failure to oppose a motion to dismiss a claim is deemed abandonment of the claim"); *McNair* v. *Ponte*, No. 16 Civ. 1722 (LAP), 2019 WL

Plaintiff's void for vagueness challenge does not require sustained examination.  "The void-for-vagueness doctrine … guarantees that ordinary people have fair notice of the conduct a statute proscribes."  *Sessions* v. *Dimaya*, 138 S. Ct. 1204, 1212 (2018) (internal quotation marks omitted).  The doctrine "addresses concerns about [i] fair notice and [ii] arbitrary and discriminatory prosecutions."  *United States* v. *Scott*, 979 F.3d 986, 993 (2d Cir. 2020) (quoting *Skilling* v. *United States*, 561 U.S. 358, 412 (2010)).  Here, Plaintiff is challenging a regulation that imposes neither criminal nor civil penalties, but merely regulates the conditions under which the DOC may record inmates' phone calls.  As such, the regulation is not subject to a void-for-vagueness challenge.  *Cf. Dimaya*, 138 S. Ct. at 1212 (observing that the Supreme Court has used a less exacting void for vagueness standard when reviewing "enactments with civil rather than criminal penalties"); *Jordan* v. *De George*, 341 U.S. 223, 231 (1951) (applying the void-for-vagueness doctrine to a non-criminal statute "in view of the grave nature of deportation").

---

1428349, at *6 (S.D.N.Y. Mar. 29, 2019) ("This Court has deemed claims abandoned even in cases where the plaintiff was proceeding *pro se*" (collecting cites)).

In any event, the Court would dismiss Plaintiff's substantive due process claim even if he had not abandoned it.  The Court understands Plaintiff's claim to be that the Policy violates his "due process right not to be subjected to restrictions amounting to punishment."  *Almighty Supreme Born Allah* v. *Milling*, 876 F.3d 48, 59 (2d Cir. 2017). Such a claim would fail because the Policy, irrespective of the alleged motivation for it, is "reasonably related" to the legitimate governmental objective of ensuring jail security and thus is not unconstitutional "punishment."  *See Bell* v. *Wolfish*, 441 U.S. 520, 539 (1979) (holding that only "if a restriction or condition is not reasonably related to a legitimate goal" may "a court permissibly … infer that the purpose of the governmental action is punishment and may not constitutionally be inflicted upon detainees *qua* detainees").

Plaintiff's procedural due process claim fares no better.  The gravamen of Plaintiff's claim is that the City failed to provide him with the "procedural safeguards afforded" under 40 R.C.N.Y. §§ 1-10 and 1-10(i)(1)(i).  (AC ¶ 7).  According to Plaintiff, "it was never determined" that he presented "a threat to the safety or security of the facility or an abuse of written telephone regulations previously known to the inmate[.]"  (*Id.* (internal quotation marks omitted)).  Thus, Plaintiff asks, why were his "telephone records release[d] when it was absent security concerns?"  (*Id.*).

As an initial matter, the statutory provision Plaintiff identifies in the Amended Complaint is not relevant to his allegations.  (*See* AC ¶ 7).  Pursuant to 40 R.C.N.Y. § 1-10(i), "[t]he telephone rights of any prisoner may be limited only when it is determined that the exercise of those rights constitutes a threat to the safety or security of the facility or an abuse of written telephone regulations previously known to the prisoner."  Here, Plaintiff alleges only that he did not receive notice that the recordings of his calls would be disclosed to the DA's Office, not that he was prevented from accessing the phones.  Thus, 40 R.C.N.Y. § 1-10(i) and the procedures it prescribes are inapposite.  (*See* Pl. City Opp. 12 (stating that "Plaintiff agrees with counsel that the allegations made were from 'Plaintiff's misunderstanding of 40 RCNY 1-10(i)(1)'")).

Relatedly, to the extent Plaintiff asserts a procedural due process claim predicated on the theory that his recorded phone calls were shared with the DA's Office without notice, the Amended Complaint is silent as to how this alleged disclosure deprived him of "a cognizable interest in life, liberty, or

property." *de Leon-Garritt* v. *State Univ. of N.Y. at Buffalo*, 785 F. App'x 896, 898 (2d Cir. 2019) (summary order).  Nor does Plaintiff elaborate on this issue in the relevant portion of his opposition brief, which is spent repeating his earlier argument that 40 R.C.N.Y. § 1-10 is void for vagueness.  (Pl. City Opp. 11-12).  Accordingly, the Court dismisses Plaintiff's due process claims.

###           iii.          First and Sixth Amendments

Plaintiff next claims that he was denied access to the courts in violation of his First and Sixth Amendment rights.  Plaintiff alleges in connection with this claim that the City and King's enactment of the Policy precluded him from "investigat[ing] and prepar[ing] his defense, without the District Attorney's office being made aware of [his] witnesses, alibi[,] and defense."  (AC ¶ 4).  In moving to dismiss this claim, the City Defendants argue that Plaintiff was not denied access to the courts as a matter of law because he was represented by counsel at his criminal trial.  (City Br. 15).  The City Defendants further argue that Plaintiff has not alleged any concrete facts demonstrating how his defense was impeded by the recording of his nonprivileged phone calls.  (*Id.*).  The Court agrees on both counts and dismisses Plaintiff's Section 1983 claims predicated on alleged violations of the First and Sixth Amendments.

"Prisoners, including pretrial detainees, 'have a constitutional right of access to the courts[.]'"  *Bourdon* v. *Loughren*, 386 F.3d 88, 92 (2d Cir. 2004) (quoting *Bounds* v. *Smith,* 430 U.S. 817, 821 (1977)).  Generally, this right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or

adequate assistance from persons trained in the law." *Valentin* v. *Czubak*, No. 21 Civ. 4949 (LTS), 2021 WL 3292183, at *2 (S.D.N.Y. Aug. 2, 2021). That said, "prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis* v. *Casey*, 518 U.S. 343, 351 (1996) (internal quotation marks omitted). Prison authorities may also ensure appropriate access to the courts through the "provision of counsel." *Vazquez* v. *City of New York*, No. 21 Civ. 1573 (PAE), 2021 WL 1966397, at *7 (S.D.N.Y. May 17, 2021); *Walker* v. *City of New York*, 367 F. Supp. 3d 39, 58 (S.D.N.Y. 2019) (stating that "the provision of counsel may obviate a claim of denial of access to the courts").

"A claim for deprivation of access to the courts requires two allegations: [i] a valid underlying cause of action separate from the right-of-access claim; and [ii] frustration or hindrance of the litigation caused by the defendant's actions." *Vazquez*, 2021 WL 1966397, at *7 (citing *Christopher* v. *Harbury*, 536 U.S. 403, 415 (2002)). Where, as here, a plaintiff was represented at all relevant times by an attorney, the second prong of this test mandates that the plaintiff "show that, on the facts of his case, the provision of counsel did not furnish him with the capability of bringing his challenges before the courts, not that he was denied effective representation in the court." *Bourdon*, 386 F.3d at 98; *see also Perry* v. *Maloney*, No. 21 Civ. 8039 (LTS), 2021 WL 6127070, at *5 (S.D.N.Y. Dec. 27, 2021) (dismissing denial-of-access claim where the plaintiff failed to "state any facts suggesting that he lacked access to his criminal

37

defense attorney, who on [his] behalf, is capable of pursuing any meritorious claim"); *United States* v. *Davis*, No. 05 Cr. 1157 (LAK), 2008 WL 1758715, at *1 (S.D.N.Y. Apr. 16, 2008) (finding that a criminal defendant "had, and continues to have, the means of obtaining constitutionally adequate access to the courts" in the form "of a qualified attorney").

Here, Plaintiff has not plausibly alleged that the City or King denied him access to the courts. To be sure, Plaintiff may have elected against discussing his pending criminal case with family and friends over the phone after learning that his conversations were being recorded.[18] But Plaintiff cannot proceed on his denial-of-access claim merely by alleging that he experienced some difficulty or inconvenience in bringing his claims or defenses before the courts. Rather, given that he was represented by a criminal defense attorney at the time, Plaintiff must plausibly allege that he was *incapable* of bringing his claims before the courts. *See Bourdon*, 386 F.3d at 98. Because Plaintiff does not allege that he was unable to speak to his attorney (whether through privileged, unrecorded phone calls or otherwise) about witnesses he wished to call or the theory of defense he wished to advance, or was prevented from mounting a defense at trial in any other way, he has not plausibly alleged that

---

[18]     As discussed in the portion of this Opinion addressing the timeliness of Plaintiff's claims, Plaintiff's challenge in this case is not directed toward the recording of his calls *per se*, but rather to the use of those recordings for law enforcement purposes. (*See* AC ¶ 1). On Plaintiff's own allegations, he did not learn that his calls would be used for such law enforcement purposes until immediately prior to the start of his trial. (*Id.* at ¶ 13). It is therefore implausible that the City's or King's alleged actions meaningfully interfered with Plaintiff's ability to mount a defense in the leadup to his trial, because Plaintiff was not aware of their ability to access his calls until the eve of trial.

the City or King denied him access to the courts in violation of the Frist and Sixth Amendments.  The Court therefore dismisses Plaintiff's claims for denial-of-access to the courts.[19]

### iv.       Equal Protection

The Court now turns to Plaintiff's claim against the City under the Equal Protection Clause of the Fourteenth Amendment.[20]  Plaintiff alleges that the City deprived "a class of persons, known as 'pre-trial detainees[,]'" of the equal protection of the laws by implementing the Policy, which has led to the collection of evidence used against "poor persons that are Black, Latin and Whites[.]"  (AC ¶ 12).  The City Defendants argue that this claim must be dismissed because a "pre-trial detainee experiencing poverty" is not a protected

---

[19]      In three separate instances in the Amended Complaint, Plaintiff alleges that the City and King violated his First Amendment rights.  (*See* AC ¶¶ 4-7).  Plaintiff's first allegation does so under the theory that the Policy denied Plaintiff access to the courts, which the Court rejects for the reasons stated above.  (*Id.* at ¶ 4).  Plaintiff's second and third claims assert only that the City and King violated the First Amendment by implementing the Policy.  (*Id.* at ¶¶ 6, 7).  Despite the City Defendants' argument that these latter two allegations fail to state a claim (*see* City Br. 15-16), Plaintiff does not address the claims in his opposition brief.  To the extent Plaintiff seeks to assert claims under the First Amendment beyond his denial-of-access claim, the Court deems such claims to have been abandoned.  *See supra* n.17 (citing legal authorities for the proposition that failure to respond to a motion to dismiss constitutes abandonment).  As before, even if the Court were to consider these claims, it would dismiss them because Plaintiff's conclusory assertion that his First Amendment rights were violated is insufficient to state a claim.  *See Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007).

[20]      The parties' briefs evince some confusion as to whether Plaintiff intended to assert an equal protection claim under the Fourteenth Amendment.  In connection with his Section 1985(3) claim, which is discussed later in this Opinion, Plaintiff alleges that the City and Vance "conspired directly" to deprive "a class of persons," including Plaintiff, "of the 'Equal Protection of the Laws[.]'"  (AC ¶ 12).  Seizing on Plaintiff's reference to equal protection, the City Defendants argue that Plaintiff has failed to state a claim under the Fourteenth Amendment.  (*See* City Br. 13 (citing AC ¶ 12)).  Plaintiff states in his opposition brief that the City Defendants' brief is "confusing" but proceeds to defend his purported claim under the Equal Protection Clause.  (Pl. City Opp. 13-15).  Given that both parties have briefed the claim, and in view of the Court's responsibility to construe Plaintiff's pleading broadly, the Court proceeds to the merits of the parties' respective arguments as to this claim.

class, and because the City has a legitimate interest in recording phone calls to ensure jail safety.  (City Br. 13).  The Court again agrees and dismisses the claim.

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne* v. *Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Generally, to state an equal protection claim, "a [Section] 1983 plaintiff must prove '[i] [that he], compared with others similarly situated, was selectively treated; and [ii] that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *Abadi* v. *City of New York*, No. 21 Civ. 8071 (PAE), 2022 WL 347632, at *7 (S.D.N.Y. Feb. 4, 2022) (quoting *Freedom Holdings, Inc.* v. *Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004)).

Preliminarily, the Court observes that Plaintiff's claim appears to rest on his allegation that pretrial detainees generally, rather than pretrial detainees of a particular race, have been denied equal protection.  Although Plaintiff references several races in his Amended Complaint, he does not allege that the Policy is racially motivated or has a racially disparate impact.  (*See* AC ¶ 12). Further, in his opposition brief, Plaintiff does not raise the issue of race whatsoever.  Instead, Plaintiff contrasts his situation with that of people who are not detained pending their criminal trial, stating, "if I'm treated the same as a bailee, you can't share a bailee[']s telephone conversations without a warrant," yet "this was part of the agreement between the DA's Office and the

40

City." (Pl. City Opp. 15).  The Court therefore considers only whether Plaintiff has plausibly alleged that pretrial detainees have been denied equal protection.

Plaintiff has not stated a plausible equal protection claim based on his status as a pretrial detainee.  "Although Plaintiff alleges that he was treated differently than people who are not in custody, 'inmates are not, by virtue of being inmates, members of a protected class[.]'"  *Gil-Cabrera* v. *Dep't of Corr.*, No. 20 Civ. 9493 (LTS) (SDA), 2021 WL 5282620, at *3 (S.D.N.Y. Sept. 27, 2021) (quoting *Lopes* v. *Westchester Cnty.*, No. 18 Civ. 8205 (KMK), 2020 WL 7029002, at *9 (S.D.N.Y. Nov. 30, 2020)), *report and recommendation adopted sub nom. Gil-Cabrera* v. *City of New York,* No. 20 Civ. 9493 (LTS) (SDA), 2021 WL 5910055 (S.D.N.Y. Dec. 14, 2021).  Further, Plaintiff has not plausibly alleged that the Policy disfavors members of the alleged class relative to others who are similarly situated or, to the extent the Policy does impose unequal burdens, that it does so for impermissible reasons.  *See Perricone-Bernovich* v. *Tohill*, 843 F. App'x 419, 421 (2d Cir. 2021) (summary order) (affirming dismissal of equal protection claim where complaint lacked "allegations showing that the Defendants treated the plaintiffs differently from others who were similarly situated"); *Gil-Cabrera*, 2021 WL 5282620, at *3 (finding that "no reasonable jury could find that Plaintiff was similarly situated to someone not in custody"); *Lopes*, 2020 WL 7029002, at *9 (finding an incarcerated plaintiff's equal protection claim "wanting for several reasons[,]" including that the plaintiff failed to allege that he was a member of a protected class, that he or any other incarcerated person was treated differently on an impermissible

41

basis, or that he was intentionally treated differently from other similarly situated individuals).  For these reasons, the Court grants the City Defendants' motion to dismiss Plaintiff's equal protection claim under Section 1983.[21]

### v.     Fourth Amendment

The Court considers next Plaintiff's claim under the Fourth Amendment. Construing his allegations in the light most favorable to him, Plaintiff alleges that the warrantless seizure and search of his recorded phone calls for reasons unrelated to jail security violated his reasonable expectation of privacy in those conversations.  The City Defendants move to dismiss this claim based on a string of cases finding that jails and prisons may reasonably record pretrial detainees' and inmates' phone calls for security purposes.  (City Br. 9-10). After reviewing the cases cited by the City Defendants, the Court agrees that Plaintiff has not stated a plausible violation of the Fourth Amendment.

"The Fourth Amendment 'protects individual privacy against certain kinds of governmental intrusion,' and it is well-established that its protections extend to prisoners and pretrial detainees."  *Holland* v. *City of New York*, 197 F. Supp. 3d 529, 542 (S.D.N.Y. 2016) (quoting *Katz* v. *United States,* 389 U.S.

---

[21]    The City Defendants argue that Plaintiff has also failed to state an equal protection claim under a "class of one" theory, which allows a plaintiff to state a claim under the Equal Protection Clause by alleging "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Analytical Diagnostic Labs, Inc.* v. *Kusel*, 626 F.3d 135, 140 (2d Cir. 2010). Although the Court does not believe that Plaintiff has attempted to state a claim under this theory given his class-based allegations, it addresses it here briefly for the sake of completeness.  In short, Plaintiff's class-of-one claim, to the extent he asserts one, "fails because [he] does not allege any similarly-situated comparators, much less comparators with an extremely high degree of similarity as is required for a class-of-one claim." *Speer* v. *Norwich Pub. Utils.*, No. 21-1353, 2022 WL 852968, at *1 (2d Cir. Mar. 23, 2022) (internal quotation marks omitted).

347, 350 (1967)).  Notwithstanding the fact that pretrial detainees maintain certain constitutional rights, "the maintenance of prison security and the preservation of institutional order and discipline are 'essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees.'"  *United States* v. *Willoughby*, 860 F.2d 15, 21 (2d Cir. 1988) (quoting *Bell* v. *Wolfish,* 441 U.S. 520, 546 (1979)).

Applying these principles, the Second Circuit has clearly and repeatedly held that jail officials may monitor and record prisoners' and pretrial detainees' phone calls for security purposes after providing sufficient notice.  *See, e.g.,* *United States* v. *Friedman*, 300 F.3d 111, 123 (2d Cir. 2002) (holding that "where a facility provides some notice to inmates that calls may be monitored, the facility's practice of automatically taping and randomly monitoring telephone calls of inmates in the interest of institutional security is not an unreasonable invasion of the privacy rights of pretrial detainees or of noninmates who receive calls from pretrial detainees" (internal quotation marks omitted)); *Willoughby*, 860 F.2d at 21 (holding that a federal jail's "practice of automatically taping and randomly monitoring telephone calls of inmates in the interest of institutional security is not an unreasonable invasion of the privacy rights of pretrial detainees"); *see also United States* v. *Laster*, No. S1 06 Cr. 1064 (JFK), 2007 WL 2872678, at *4 (S.D.N.Y. Sept. 28, 2007) (denying motion to suppress a recorded statement where "the taping of Defendant's telephone call did not violate his Fourth Amendment rights").

More to the point, several courts have considered and rejected claims predicated on the recording and disclosure of jail calls for law enforcement purposes.  *See, e.g.*, *United States* v. *Baker*, No. 21 Cr. 6042 (EAW), 2022 WL 1497963, at *3 (W.D.N.Y. May 12, 2022) (denying motion to suppress on Fourth Amendment grounds where pretrial detainee argued that his calls were recorded for the purpose of aiding a criminal investigation); *Steinhilber* v. *Kirkpatrick, M.*, No. 18 Civ. 1251 (VBJ) (CM), 2020 WL 9074808, at *19 (S.D.N.Y. Aug. 21, 2020) (finding in the habeas context that because "Petitioner was warned that his calls were being recorded, … no additional Fourth Amendment protections existed that would have prevented the jail from releasing the recordings to the district attorney"), *report and recommendation adopted sub nom. Steinhilber* v. *Kirkpatrick,* No. 18 Civ. 1251 (VB), 2021 WL 1254554 (S.D.N.Y. Apr. 5, 2021); *Hogue* v. *Superintendent of Green Haven Corr. Facility,* No. 20 Civ. 1720 (BMC), 2020 WL 4260995, at *8 (E.D.N.Y. July 24, 2020) (observing that "there is no Supreme Court precedent even remotely suggesting that the recording and use at trial of in-custody, non-privileged telephone calls violates the Fourth Amendment," and that "both the Second Circuit and the New York Court of Appeals have held that prisoners' recorded telephone calls can be used in their prosecution as long as the prisoner received notice that the call was going to be monitored"); *People* v. *Diaz*, 33 N.Y.3d 92, 100 (2019) (rejecting "defendant's argument that he retained a reasonable expectation of privacy once the calls were lawfully intercepted by DOC and hold[ing] that there were no additional Fourth Amendment

protections that would prevent DOC from releasing the recording to the [DA's] Office absent a warrant"); *see also People* v. *Williams*, 35 N.Y.3d 24, 46 (2020) (holding that "defendants who use the 'public' telephone system at Rikers Island while warned of the potential that such calls may be recorded impliedly consent to the 'taping' of those conversations").[22]

Plaintiff's allegations are insufficient to withstand this weight of authority. At the outset of his pleading, Plaintiff suggests that his calls were recorded under the Policy "in search of investigative leadings and inculpatory material." (AC ¶ 1(a)). While such a claim, if stated, might distinguish Plaintiff's case from the decisions discussed above, Plaintiff has failed to put forward sufficient non-conclusory allegations to support this claim. *Cf. United*

---

[22]    The Court has identified only one exception to this line of authority: Judge Pamela K. Chen's recent decision in *Roland* v. *City of New York*, which addressed a nearly identical Fourth Amendment claim brought by a *pro se* litigant under Section 1983. *See* 2019 WL 2357842, at *1. There, the court observed that "[t]hough the Second Circuit has upheld a prison's practice of monitoring and recording its inmates for purposes of institutional security, it has never addressed the question of whether those recordings may then be shared with the prosecutors without a warrant or subpoena, for the purpose of providing evidence for past crimes." *Id.* at *4 (citing *United States* v. *Willoughby*, 860 F.2d 15, 21 (2d Cir. 1988)). "Given the uncertainty in this area of the law," the court concluded that it would not *sua sponte* dismiss the plaintiff's claim under the PLRA and would "summarily dismiss" any motion to dismiss "for the same reason." *Id.* at *5.

Contrary to the court's observation in *Roland*, the Second Circuit has, at least implicitly, found that the Fourth Amendment does not require prosecutors to obtain a warrant before seizing and searching jail calls that were recorded pursuant to a policy aimed at ensuring jail safety. *See, e.g., United States* v. *Friedman*, 300 F.3d 111, 123 (2d Cir. 2002) (affirming denial of criminal defendant's motion to suppress recorded jail calls under the Fourth Amendment on the basis that "the facility's 'practice of automatically taping and randomly monitoring telephone calls of inmates in the interest of institutional security is not an unreasonable invasion of the privacy rights of pretrial detainees'" (quoting *Willoughby*, 860 F.2d at 21-22)). The Second Circuit has not, however, directly addressed whether jail officials may maintain a policy of recording pretrial detainees' phone calls for the sole purpose of aiding the DA's Office in uncovering and prosecuting crimes. Because Plaintiff has not plausibly alleged the existence of such a policy in this case, the Court expresses no opinion as to the constitutionality of such a policy.

*States* v. *Schulte*, No. 17 Cr. 548 (PAC), 2019 WL 5287994, at *2 n.1 (S.D.N.Y.

Oct. 18, 2019) (stating that "[p]retrial detainees, like [Plaintiff], retain Fourth

Amendment protections sufficient to challenge searches performed 'at the

instigation of non-prison officials for non-institutional security-related

reasons'" (quoting *United States* v. *Cohen*, 796 F.2d 20, 23 (2d Cir. 1986))).  As

discussed earlier, Plaintiff instead shifts his focus to the fact that DOC

disclosed his recorded phone calls to Franchini in the leadup to his trial,

alleging that DOC made this disclosure despite Franchini's lack of a warrant

and the absence of evidence that Plaintiff represented a security threat to

VCBC.  (*See* AC ¶ 5 (alleging that the City released Plaintiff's recorded phone

calls "absent and unrelated to institutional security concerns"); *id.* at ¶ 13

(alleging that Franchini initiated a warrantless search and seizure of Plaintiff's

recorded calls); *see also* Pl. City Opp. 7 (arguing that "Plaintiff has no

expectation of privacy in his outgoing non-privileged telephone calls from

DOC[ ] where security is concerned" but that "Plaintiff could properly challenge

[the calls'] unconstitutional release); *id.* at 9 (asserting that "DOC is releasing

to the DA and/or [assistant district attorney] non-privileged outgoing telephone

jail calls that are unrelated to institutional security related issues within

DOC")).[23]  For the reasons identified in the cases discussed above, this claim is

foreclosed as a matter of Second Circuit precedent.  *See Friedman,* 300 F.3d at

---

[23]     Further, certain of Plaintiff's other allegations undermine his contention that there was
no security-based rationale for recording his jailhouse phone calls.  As alleged, Plaintiff
made several complaints "regarding security, safety and criminal acts that were
occurring" by means of the unauthorized use of Plaintiff's PIN.  (AC ¶ 10(a).)

123 (affirming district court's denial of a defendant's motion to suppress jail call recordings that were shared with the assigned prosecutor and used at trial).  Thus, the Court finds that Plaintiff has failed to state a claim under Section 1983 based on the alleged violation of his Fourth Amendment rights.[24]

### vi.        Failure to Train

Plaintiff's final claim under Section 1983 asserts that the City failed to train or supervise Mello.  (AC ¶ 9).  Because Plaintiff has not plausibly alleged an "underlying constitutional violation" based on Mello's alleged actions, however, he cannot maintain a derivative failure-to-train claim based on those same acts.  *See Segal* v. *City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *see also Anilao* v. *Spota*, 27 F.4th 855, 874 (2d Cir. 2022) (stating that "a *Monell* claim [such as failure to train] cannot succeed without an independent constitutional violation"); *Lopez* v. *City of New York*, No. 19 Civ. 3887 (MKV), 2021 WL 466974, at *7 (S.D.N.Y. Feb. 9, 2021) (holding that "because Plaintiff has failed to allege a constitutional violation, his claim against the City necessarily fails"); *Yousef* v. *Cnty. of Westchester*, No. 19 Civ. 1737 (CS), 2020 WL 2037177, at *10 (S.D.N.Y. Apr. 28, 2020) (stating in the

---

[24]     Relatedly, the Court dismisses Plaintiff's claim, asserted for the first time in his opposition to the City Defendants' motion, that the recording and disclosure of his calls violated 18 U.S.C. § 2511.  (*See* Pl. City Opp. ix).  "Where a prison gives notice to inmates that their calls may be monitored, inmates' use of the prison's telephones constitutes implied consent for the purposes of Title III."  *Hill* v. *Donoghue*, 815 F. Supp. 2d 583, 588 (E.D.N.Y. 2011), *aff'd*, 518 F. App'x 50 (2d Cir. 2013) (summary order); *see also United States* v. *Levy*, No. 04 Cr. 559 (NGG), 2005 WL 2179650, at *3 (E.D.N.Y. Sept. 9, 2005) (declaring that "it is firmly established that Title III does not bar the recording of prison conversations where the recordings are made in the ordinary course of business").  Here, Plaintiff clearly alleges that he was provided notice that any calls he made at VCBC would be recorded.  (*See* AC ¶ 1 (citing Handbook 42)).  His claim therefore fails as a matter of law.

47

motion-to-dismiss context that "[t]he Court need not address *Monell* liability because the underlying constitutional claim does not survive").

Further, even if Plaintiff had stated a constitutional violation arising out of his unfruitful FOIL requests, his failure-to-train claim would still fail.  A failure-to-train claim cannot proceed "in the absence of factual allegations suggesting the City's deliberate indifference[.]"  *Dean* v. *New York City*, No. 15 Civ. 8825 (LAK) (KNF), 2017 WL 3670036, at *5 (S.D.N.Y. July 6, 2017).  Here, Plaintiff merely alleges that Mello failed to produce documents in response to his FOIL requests.  (*See* AC ¶ 9).  He does not allege any facts suggesting that the City made a deliberate choice not to train Mello, that other FOIL officers or that the City was aware of Mello's alleged violations of FOIL or Plaintiff's First Amendment rights, how Mello's alleged lack of training caused his injuries, or any other evidence suggesting the City's deliberate indifference.  *See Rodriguez* v. *City of New York*, 649 F. Supp. 2d 301, 308 (S.D.N.Y. 2009) (dismissing failure-to-train claim for these and other, similar reasons).  Accordingly, the Court dismisses Plaintiff's failure-to-train claim against the City.

*     *     *

To review, the Court finds that Plaintiff has not alleged plausible Section 1983 claims under the First, Fourth, Sixth, or Fourteenth Amendments against the City or King.  The Court therefore declines to reach the City Defendants' argument that Plaintiff has not alleged King's personal involvement in any underlying constitutional violation, and dismisses each of Plaintiff's Section 1983 claims asserted against the City Defendants.

48

### d.   Plaintiff's Conspiracy Claims Under Section 1985(3)

The City Defendants separately move to dismiss Plaintiff's claim against the City under 42 U.S.C. § 1985(3).  "A conspiracy claim under Section 1985(3) requires a plaintiff to allege: '[i] a conspiracy; [ii] for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and [iii] an act in furtherance of the conspiracy; [iv] whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'"  *Dolan* v. *Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (quoting *Britt* v. *Garcia,* 457 F.3d 264, 269 n.4 (2d Cir. 2006)).  Additionally, a plaintiff must also show that the alleged conspiracy was "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus."  *Delee* v. *Hannigan*, 729 F. App'x 25, 32 (2d Cir. 2018) (summary order) (quoting *Dolan*, 794 F.3d at 296).  "Significantly, vague and unsupported assertions of conspiracy … do not suffice."  *Roundtree* v. *NYC*, No. 19 Civ. 2475 (JMF), 2021 WL 1667193, at *5 (S.D.N.Y. Apr. 28, 2021) (citing, *inter alia*, *Webb* v. *Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003)).

Plaintiff brings his claim under Section 1985(3) against the City and Vance, alleging that their implementation of the Policy amounted to a conspiracy to deprive a class of pretrial detainees of the equal protection of the laws.  (AC ¶ 12).  Plaintiff alleges that this class had its equal protection rights violated when its "out-going non-privileged pre-trial … jail calls" were recorded and monitored by DOC and then used as evidence against class members.

49

(*Id.*).  Initially, Plaintiff suggests that this alleged conspiracy was racially

motivated, asserting that the City and Vance "harvested" the recordings "as

evidence against poor persons that are Black, Latin and Whites[.]"  (*Id.*).  But

Plaintiff later identifies a separate purpose of the alleged conspiracy, stating

that "in other words, the search[es] of telephone conversations are intended

solely to bolster the prosecution's case against a pre-trial detainee awaiting his

or her day in court."  (*Id.* (internal brackets omitted)).

Measured against the standards discussed above, Plaintiff's claim under

Section 1985 cannot withstand the City Defendants' motion to dismiss.

Plaintiff's "vague and conclusory" allegations do not plausibly allege the

existence of a conspiracy between the City and Vance, or suggest that the City

and Vance engaged in their alleged acts for the purpose of denying the putative

class equal protection of the laws, rather than furthering law enforcement

interests.  *See Roundtree*, 2021 WL 1667193, at *6 (finding the plaintiff's "bare

allegations" that defendants engaged in a conspiracy insufficient to state a

claim under Section 1985(3)) (collecting cases); *see also Doe* v. *Fenchel*, 837 F.

App'x 67, 68 (2d Cir. 2021) (summary order) (affirming dismissal of Section

1985(3) claim where plaintiff's "naked assertions" that the defendants engaged

in an impermissible conspiracy were "devoid of further factual enhancement"

(internal quotation marks and alterations omitted)); *Booker* v. *Griffin*, No. 16

Civ. 72 (NSR), 2018 WL 1614346, at *15 (S.D.N.Y. Mar. 31, 2018) (dismissing

Section 1985(3) claim where the plaintiff's allegations suggested a non-

discriminatory reason for the defendants' alleged actions); *Patterson* v. *City of*

*New York*, No. 16 Civ. 3525 (NGG) (SMG), 2017 WL 3432718, at *16 (E.D.N.Y. Aug. 9, 2017) (same), *aff'd*, 758 F. App'x 217 (2d Cir. 2019) (summary order).

Plaintiff's attempts to expand on his Section 1985(3) claims in his opposition brief are unavailing. In Plaintiff's words, "Plaintiff like many other indigent[ ] similar individuals of color, *e.g.*, Blacks, Latin and Whites, with a poor education" prefers to communicate via phone rather than the mail, because "it's easier than writing, and besides that pre-trial detainees are entitled to several free weekly phone calls per week[.]" (Pl. City Opp. 24). Plaintiff alleges that the City and Vance, recognizing the class's preference to use phones to communicate from jail, "devised a plot to share confidential material … by merely requesting the telephone conversations and other effects with friends and family[.]" (*Id.*). The Court does not question Plaintiff's preference to communicate over the phone or his assertion that the monitoring of jail calls hinders pretrial detainees' ability to speak freely about their cases or other matters. But Plaintiff cannot state a claim under Section 1985(3) merely by alleging that Defendants took an action that negatively affected him or a class of ostensibly similarly situated people. *Cf. Town of W. Hartford* v. *Operation Rescue*, 991 F.2d 1039, 1046 (2d Cir. 1993) (explaining that a "class" for Section 1985(3) purposes "connotes something more than a group of individuals who share a desire to engage in conduct that the [Section] 1985(3) defendant disfavors"). Because the Amended Complaint is devoid of factual allegations that plausibly suggest that the City and Vance conspired to implement the Policy to deprive Plaintiff's identified class of the equal

protection of the laws, Plaintiff's Section 1985(3) claims fail as a matter of law and are dismissed.

### 3.    Securus's Motion to Dismiss

In the Amended Complaint, Plaintiff asserts claims against Securus on the theory that the company acted under state authority.  (*See* AC ¶ 10(a)).  As recounted earlier, however, Plaintiff has since moved to dismiss Securus from this action.  (Dkt. #71).  The Court construes Plaintiff's motion as a notice of voluntary dismissal pursuant to Rule 41 of the Federal Rules of Civil Procedure, and deems all claims against Securus to be dismissed.  *See* Fed. R. Civ. P. 41(a)(1)(A)(i) (permitting a plaintiff to voluntarily dismiss an action without court order or the consent of the defendant so long as the opposing party has not served either an answer or a motion for summary judgment); *see also Aguiar* v. *Murray*, No. 11 Civ. 3944 (DLI) (LB), 2014 WL 1330739, at *2 (E.D.N.Y. Apr. 1, 2014) (observing that "plaintiffs proceeding *pro se* are permitted to file such notices [of voluntary dismissal under Rule 41(a)], whether styled as notices of voluntary dismissal, letters, or motions").

### CONCLUSION

For the foregoing reasons, the Court GRANTS the DANY Defendants' motion to dismiss; GRANTS the City Defendants' motion to dismiss; and deems Plaintiff's claims against Securus to be voluntarily dismissed.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.  The Clerk of Court is further directed to mail a copy of this Opinion to Plaintiff's address of record.

SO ORDERED.

Dated:     July 27, 2022
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge